ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Mark R. Bresee            State Bar No. 167346
    MBresee@aalrr.com
Brooklyn N. Robertson    State Bar No. 356391
    Brooklyn.Robertson@aalrr.com
Anthony P. De Marco      State Bar No. 217815
    ADeMarco@aalrr.com
20 Pacifica, Suite 1100
Irvine, California 92618-3371
Telephone: (949) 453-4260
Fax: (949) 453-4262

Attorneys for Defendants HUNTINGTON BEACH
UNION HIGH SCHOOL DISTRICT, CAROLEE
OGATA, SUSAN HENRY, DANIEL BRYAN,
DANIEL MORRIS, and EDWARD BEGANY,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ORANGE COUNTY DIVISION

| | |
|---|---|
| CHRISTOPHER KLUWE,<br><br>Plaintiff,<br><br>v.<br><br>HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT; CAROLEE OGATA, in her individual and official capacities as Superintendent of Huntington Beach Union High School District; SUSAN HENRY, in her individual and official capacities as President of the Board of Trustees of the Huntington Beach Union High School District; DANIEL BRYAN, in his individual and official capacities as Assistant Superintendent, Human Resources at Huntington Beach Union High School District; DANIEL MORRIS, in his individual and official capacities as Principal of Edison High School; EDWARD BEGANY, in his individual and official capacities as Assistant Principal, Supervision at Edison High School; and CHRISTIAN EPTING, an individual,<br><br>Defendants. | Case No.    8:25-CV-1648-FWS<br><br>**DEFENDANTS HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT, CAROLEE OGATA, SUSAN HENRY, DANIEL BRYAN, DANIEL MORRIS, AND EDWARD BEGANY'S NOTICE OF MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AND THIRD CAUSES OF ACTION**<br><br>**[FRCP 8(A)(2); 12(B)(1); 12(B)(6)]**<br><br>Judge:      Hon. Fred W, Slaughter<br><br>Hearing Date:    October 23, 2025<br>                    10:00 a.m.<br>                    Courtroom 10D |

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

**TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:**

Please take notice that on October 23, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10D of the United States District Court, Central District of California, Southern Division, located at 411 West Fourth Street, Santa Ana, California, before the Honorable Fred W. Slaughter, Defendants Huntington Beach Union High School District ("HBUHSD"), Carolee Ogata, Susan Henry, Daniel Bryan, Daniel Morris, and Edward Begany ("the Individual HBUHSD Defendants") will move this Court for an Order dismissing the Second and Third Causes of Action in Plaintiff's Complaint.

The Motion will be made on the following grounds:

1.    HBUHSD and the Individual HBUHSD Defendants sued in their official capacity are entitled to Eleventh Amendment immunity from the damages claimed by Plaintiff;

2.    Plaintiff's Complaint fails to provide fair notice under Federal Rule of Civil Procedure 8 as to the theories of liability asserted and the liability asserted as to each individual HBUHSD Defendant;

3.    Plaintiff's Complaint fails to establish that the application of the HBUHSD Civility Policy violated his First or Fourteenth Amendment Rights; and

4.    Plaintiff's Complaint fails to establish that HBUHSD and the Individual HBUHSD Defendants deprived Plaintiff of a constitutionally recognized liberty or property interest in violation of the Fourteenth Amendment Due Process Clause.

This motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on August 18, 2025, and in subsequent written interaction following the conference.[1]

The Motion will be based on this Notice of Motion, the Memorandum of Points

---

[1] The subsequent interaction was in writing because lead counsel for the Defendants bringing this Motion left on an overseas vacation on August 19, 2025, returning to the United States on September 4, 2025, and there was some additional interaction/conferring during the vacation.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1  and Authorities submitted herewith, and the pleadings and papers on file in this case.

2

3     Dated: September 8, 2025          ATKINSON, ANDELSON, LOYA, RUUD & ROMO

4

5

6                                      By: _____
                                            Mark R. Bresee
7                                           Brooklyn Robertson
                                            Anthony De Marco
8                                           Attorneys for Defendants Huntington
                                            Beach Union High School District,
9                                           Carolee Ogata, Susan Henry, Daniel
                                            Bryan, Daniel Morris, and Edward
10                                          Begany

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 9

II.   SUMMARY OF FACTS AND ALLEGATIONS ....................................... 11

    A.    Summary of Relevant Facts in the Complaint ................................... 11

    B.    Summary of Claims ........................................................................ 13

III.  ARGUMENT .................................................................................... 16

    A.    The Eleventh Amendment Bars Plaintiff's Damages Claims Against HBUHSD ......................................................................... 16

    B.    Plaintiff's Complaint Fails to Provide "Fair Notice" under FRCP 8(a)(2) ........................................................................................ 18

        1.    Plaintiff's Allegations Amount to Improper "Shotgun Pleading" ............................................................................ 18

        2.    Plaintiff's Individual Capacity Allegations Are Insufficient to State a Claim for Damages ........................................... 19

    C.    Plaintiff Did Not Have a Property Interest in His Employment With the District ........................................................................ 21

    D.    Plaintiff's Second Cause of Action Fails to Establish Defendants' Policy Violates Plaintiff's First or Fourteenth Amendment Rights ... 22

        1.    The Civility Policy Is Not Overbroad ................................... 22

        2.    The Civility Policy Is Not Unconstitutionally Vague ............. 23

        3.    Application of the Civility Policy to Kluwe Is Not Unconstitutional Viewpoint Discrimination ........................... 25

    E.    Plaintiff's Third Cause of Action Fails to State a Deprivation of a Property or Liberty Interest in Violation of Due Process ................... 26

        1.    Plaintiff Cannot Establish a Deprivation of a Property Interest ........................................................................... 26

        2.    Plaintiff Cannot Establish a Deprivation of His Liberty Interest ........................................................................... 26

IV.   CONCLUSION ................................................................................. 30

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*A.W. v. Santa Rose City Schools*
2025 WL 1190725 (N.D. Cal. 2025)..................................................................18

*Anderson v. District Board of Trustees*
77 F.3d 364 (11th Cir.1996)..............................................................................18

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009)......................................................................................19

*Atascadero State Hosp. v. Scanlon*
473 U.S. 234 (1985)..........................................................................................16

*Barlow v. U.S.*
32 U.S. 404 (1833)............................................................................................25

*Bd. of Regents of State Colleges v. Roth*
408 U.S. 564 (1972)..........................................................................................26

*Beco Dairy Automation, Inc. v. Global Tech Sys., Inc.*
2015 WL 5732595 (E.D. Cal. 2015)..................................................................18

*Belanger v. Madeira Unified Sch. Dist.*
963 F.2d 248 (9th Cir. 1992)....................................................................16,17,18

*Bell Atlantic Corp v. Twombly*
550 U.S. 544 (2007)......................................................................................18,26

*Bernstein v. Lopez*
321 F.3d 903 (9th Cir. 2003) (abrogated on other grounds)..............................21

*Bishop v. Wood*
426 U.S. 341 (1975)..........................................................................................27

*Bollow v. Federal Reserve Bank of San Francisco*
650 F.2d 1093 (9th Cir. 1981)............................................................................27

*Butler v. Elle*
281 F.3d 1014 1023............................................................................................16

*Byrne v. Nezhat*
261 F.3d 1075 (11th Cir. 2001)......................................................................18,19

*Campanelli v. Bockrath*
100 F.3d 1476 (9th Cir. 1996)............................................................................27

*Chaudhry v. Aragon*
68 F.4th 1161 (9th Cir. 2023)............................................................................26

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Pages**

*Chuman v. Wright*
  76 F.3d 292 (9th Cir. 1996) .................................................................. 20

*Conley v. Gibson*
  355 U.S. 41 (1957) ............................................................................... 18

*Diaz v. Messer*
  742 Fed.Appx. 250 (9th Cir. 2018) ..................................................... 23

*Donaghe v. Sherman Heights Elementary*
  2024 WL 3883510 (S.D. Cal. 2024) .................................................... 18

*Eberhard v. California Highway Patrol*
  73 F.Supp.3d 1122 (N.D. Cal. 2014)................................................... 27

*Esteem v. City of Pasadena*
  2007 WL 4270360 (C.D. Cal. 2007) .................................................... 20

*F.C.C. v. Fox Television Stations, Inc.*
  567 U.S. 239 (2012) ............................................................................. 25

*George v. Grossmont Cuyamaca Community College District*
  2022 WL 17330467 (S.D. Cal. 2022) .................................................. 18

*Jablon v. Trustees of California State Colleges*
  482 F.2d 997 (9th Cir. 1973) ............................................................... 27

*Jones v. Williams*
  297 F.3d 930 (9th Cir. 2002) ............................................................... 19

*Jordan v. De George*
  341 U.S. 223 ......................................................................................... 23

*K.J. by and through Johnson v. Jackson*
  127 F.4th 1239 (9th Cir. 2025).............................................................. 17

*Kohn v. State Bar of California*
  87 F.4th 1021 (9th Cir. 2023)................................................... 16,17,18

*Llamas v Butte Community College Dist.*
  238 F.3d 1123 ....................................................................................... 28

*Maldonado v. Morales*
  556 F.3d 1037 (9th Cir. 2009) ............................................................. 23

*Mitchell v. Los Angeles Community College Dist.*
  861 F.2d 198 (9th Cir. 1998) ............................................................... 17

*Mitchell v. Washington*
  818 F.3d 436 (9th Cir. 2016) ...................................................... 16,17

6

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Moss v. U.S. Secret Service*
  675 F.3d 1213 (9th Cir. 2012) (amended on rehearing, 711 F.3d 941
  (9th Cir. 2013))........................................................................................................25

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*
  429 U.S. 274 (1977) ...............................................................................................16

*Olivieri v. Rodriguez*
  122 F.3d 406 (7th Cir. 1997) .................................................................................28

*Porto v. City of Newport Beach*
  2011 WL 2470128 (C.D. Cal. May 20, 2011)........................................................23

*Price v. Tamalpais Union High School District*
  2025 WL 1046644 (N.D. Cal 2025) .......................................................................17

*Puerto Rico Ports Authority v. Federal Maritime Com'n*
  531 F.3d 868 (D.C. Cir. 2008)................................................................................17

*Ramirez v. Oakland Unified School District*
  2025 WL 1507092 (N.D. Cal. 2025) .......................................................................17

*Sato v. Orange County Dep't of Education*
  861 F.3d 923 (9th Cir. 2017) .................................................................................16

*Seminole Tribe of Fla. v. Florida*
  517 U.S. 44 (1996) .................................................................................................16

*Sollberger v. Wachovia Securities, LLC*
  2010 WL 2674456 (C.D. Cal. 2010) ..................................................................18,19

*T.L. v. Orange Unified School District*
  2024 WL 305387 (C.D. Cal. 2024) ........................................................................17

*Terpin v. AT And T Mobility LLC*
  118 F.4th 1102 (9th Cir. 2024)..............................................................................21

*Tibbetts v. Kulongoski*
  567 F.3d 529 (9th Cir. 2009) .................................................................................27

*U.S. v. Lee*
  183 F.3d 1029 (9th Cir. 1999) ...............................................................................23

*U.S. v. Szabo*
  760 F.3d 997 (9th Cir. 2014) .................................................................................23

*U.S. v. Williams*
  553 U.S. 285 (2008) ...........................................................................................22,23

7

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*United States v. David H.*
29 F.3d 489 (9th Cir. 1994) ................................................................. 23

*Will v. Michigan Dep't of State Police*
491 U.S. 58 (1989) .............................................................................. 16

**STATE CASES**

*Dyna-Med, Inc. v. Fair Employment and Housing Comm'n*
43 Ca1.3d 1379, 1392 (1987) ............................................................. 21

*Fleice v. Chualar Union Elementary School Dist.*
206 Cal.App.3d 886 (1988) ................................................................. 22

*G.D. Searle & Co. v. Superior Court*
49 Cal.App.3d 22 (1975) ..................................................................... 21

*Miller v. State*
18 Cal.3d 808 (1977) ........................................................................... 21

*Summerfield v. Windsor Unified School Dist.*
95 Cal.App.4th 1026 (2002) ............................................................... 22

**FEDERAL CODES/STATUTES**

42 U.S.C. § 1983 ........................................................................ 13,16,19

**STATE CODES/STATUTES**

California Civil Code § 3294 ............................................................... 21

California Education Code § 44919, subd. (b) ..................................... 21

**OTHER AUTHORITIES**

Eleventh Amendment ................................................................... passim

Fourteenth Amendment ............................................................... passim

Central District of California Local Rule 7-3 ......................................... 2

Federal Rule of Civil Procedure 8 ............................................... 2,10,21

Federal Rule of Civil Procedure 8(a)(2) ............................................. 18

Federal Rule of Civil Procedure 12(b)(6) ........................................... 16

U.S. Const. Amendment XIV § 1 .................................................... 2,10

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

# I.  <u>INTRODUCTION</u>

Plaintiff Christopher Kluwe ("Kluwe") filed this lawsuit against Defendants Huntington Beach Union High School District ("HBUHSD"), and HBUHSD officials Carolee Ogata, Susan Henry, Daniel Bryan, Daniel Morris, and Edward Begany ("the Individual HBUHSD Defendants") in their official and individual capacities, asserting several violations of his constitutional rights arising out of his termination from his at-will position as a seasonal, assistant coach of the freshman football team at a HBUHSD school.

Kluwe, a self-proclaimed public figure and political activist, was employed each year as a seasonal, "walk on" coach beginning in 2019, and was dismissed from his part-time, seasonal position shortly after urging his 180,000 social media followers to "go blow up" the workplaces of Huntington Beach City Council members:

> Also, PSA, and I can't believe I have to say this: Stop fucking with the library. That's what the city council is doing. The library is great, as are the people who work there. Go fuck with the city council. Find where they work, and blow *those* places up.

Immediately following his dismissal, Kluwe announced to all of his social media followers his opinion that he had been dismissed not for the above-recited post but for his political views and activities:

> Just got fired from being a freshman football coach, if you want to know what MAGA does to communities. They don't care about what helps people, because the school is certainly not going to find an ex-NFL player willing to coach there at that level, they only care about trying to hurt people.

Kluwe intended to and did convey broadly, resulting in substantial local, state, and national media attention, that his termination was based on his political views.[2]

---

[2] Kluwe emphasizes that he has been politically active for many years, taking consistent and very public positions on social and political issues. Not explained anywhere in the Complaint, however, is why HBUHSD re-employed him every football season beginning in 2019, i.e. in 2019, 2020, 2021, 2022, 2023, and 2024, if HBUHSD considered his (or any other employee's) social and political views relevant to employment status.

1    Kluwe does not downplay his decision to place the issue of his termination into

2  the public spotlight. Instead, he highlights throughout his Complaint and in the

3  voluminous attached exhibits the publicity he orchestrated through his social media

4  posts and other activities, with most of the voluminous comments accepting his

5  assumption regarding the reason for HBUHSD's decision. Faced with an onslaught

6  of derision arising from Kluwe's public campaign, HBUHSD issued a press release

7  rejecting Kluwe's supposition regarding the reason for the action, briefly explaining

8  its decision.

9    In this lawsuit, having created the media storm that necessitated the HBUHSD

10 press release, Kluwe seeks to impose liability on the HBUHSD Defendants for finding

11 his highly public post did not promote civility in accordance with HBUHSD policy

12 and expectations of its students, parents, and employees. Further, Kluwe seeks to

13 impose liability on HBUHSD Defendants for seeking to clarify Kluwe's highly public

14 misrepresentation of the reason for his termination, an action which would not have

15 occurred had Kluwe not put inaccurate information into the local, state, and national

16 media.

17    HBUHSD Defendants bring this Motion to Dismiss because:

18    1.    HBUHSD and the Individual HBUHSD Defendants sued in their official

19 capacity are entitled to Eleventh Amendment immunity from the damages claimed by

20 Plaintiff;

21    2.    Plaintiff's Complaint fails to provide fair notice under Federal Rule of

22 Civil Procedure 8 as to the theories of liability asserted and the liability asserted as to

23 each Individual HBUHSD Defendant;

24    3.    Plaintiff's Complaint fails to establish that the application of the

25 HBUHSD Civility Policy violated his First or Fourteenth Amendment Rights; and

26    4.    Plaintiff's Complaint fails to establish that HBUHSD and the Individual

27 HBUHSD Defendants deprived Plaintiff of a constitutionally recognized liberty or

28 property interest in violation of the Fourteenth Amendment Due Process Clause.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

DEFENDANTS' POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
U.S.D.C. Case No. 8:25-CV-1648-FWS

1    For the reasons explained herein, HBUHSD and the Defendants respectfully

2    request the Court grant this Motion to Dismiss.

3    **II.    SUMMARY OF FACTS AND ALLEGATIONS**

4    **A.    SUMMARY OF RELEVANT FACTS IN THE COMPLAINT**

5    Kluwe was hired as an Assistant Coach for the Edison High School ("EHS")

6    freshman football team in 2019. (ECF 1, ¶¶ 51-55). Kluwe's only employment with

7    the District was as an assistant coach, an at-will position. Kluwe is also a self-

8    proclaimed high-profile figure, as a result of both his football career and his outspoken

9    advocacy for civil rights. (ECF 1, ¶ 51-54, 64).

10    In February 2025, Kluwe spoke at the Huntington Beach City Council meeting

11    against the Council and its proposed central public library plaque containing an

12    acrostic reading "MAGA." (ECF 1, ¶ 79, 102-104). Following his remarks, Kluwe

13    stated he would then "engage in the time-honored American tradition of peaceful,

14    civil disobedience," walked around the podium toward the City Council members,

15    and was subsequently arrested. (ECF 1, ¶¶ 105-107). As Kluwe notes, his "protest and

16    arrest on February 18 received significant media attention." (ECF 1, ¶ 111).

17    Kluwe continued to speak about the City Council and proposed library plaque

18    on social media. (ECF 1, ¶¶ 122-135). On February 23, 2025, Kluwe made a "PSA

19    post" on the social media platform Bluesky, reading:

20    Also, PSA, and I can't believe I have to say this: Stop fucking with the
      library. That's what the city council is doing. The library is great, as are
21    the people who work there. Go fuck with the city council. Find where
      they work, and blow *those* places up. [ECF 1, ¶ 135].
22

23    Kluwe's post quickly gained attention and was reposted to local community

24    social media pages. (ECF 1, ¶¶ 146, 149). Viewers accused Kluwe of threatening

25    violence, and his post gained the attention of the Huntington Beach Police

26    Department. (ECF 1, ¶¶ 158-160). Kluwe subsequently deleted his post from personal

27    Bluesky page. (ECF 1, ¶ 162).

28    On February 27, 2025, Kluwe alleges Defendant Begany informed him he was

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

being terminated from his position as an assistant coach "due to the current attention the school was getting." (ECF 1, ¶ 173). Kluwe was given the opportunity to resign in lieu of termination, but he declined. (ECF 1, ¶ 174). Kluwe alleges "Begany told [him] he appreciated Kluwe remaining civil and that he supported Kluwe, but that it wasn't really his choice." (ECF 1, ¶ 175).

Later that day, Kluwe made a post on Bluesky alleging he was fired for his political beliefs, stating:

> Just got fired from being a freshman football coach, if you want to know what MAGA does to communities. They don't care about what helps people, because the school is certainly not going to find an ex-NFL player willing to coach there at that level, they only care about trying to hurt people. [ECF 1, ¶¶ 176-177].

Kluwe's discharge, and his asserted reasons for it, "received significant local and national media attention" in the following days, with social media users calling for individuals to "object to Kluwe's firing for speaking out at a City Council meeting," and U.S. Representative Dave Min noting his concern that Kluwe was fired for speaking at the City Council meeting in a letter to HBUHSD. (ECF 1, ¶¶ 197-183).

On March 3, 2025, in response to the massive public messaging that HBUHSD's decision was based on Kluwe's political views generally and his speaking at a City Council meeting, HBUHSD released a public statement clarifying that Kluwe was terminated due to his suggestion of violence in his "PSA post". (ECF 1, ¶ 192-194; Ex. 29). HBUHSD's statement noted Kluwe had "not acknowledged that the post was the reason for his separation from the school," and that "[w]hile HBUHSD values the right to free speech, the district does not condone or tolerate language that promotes or suggests violence in any form." (ECF 1, ¶ 196). HBUHSD indicated it could not provide further comment on the personnel matter. (ECF 1, ¶ 196).

Kluwe submitted a Public Records Act request to HBUHSD on June 4, 2025, seeking "a copy of the 'standards for professionalism and appropriate conduct' that

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

was referenced in the March 3 press release." (ECF 1, ¶ 207). HBUHSD responded, citing District Board Policy 1313 – "Civility." (ECF 1, ¶ 207). The Civility Policy emphasizes that staff should treat parents and other members of the public respectfully, keeping schools and administrative offices free of disruptions, mutual respect, civility, and orderly conduct, District employees serving as role models to the children of the District, and positive communication that discourages volatile, hostile, or aggressive actions. (ECF 1, ¶ 208.) The Policy also explicitly states it is not intended to deprive individual of their freedom of expression. (*Ibid.*)

**B.    SUMMARY OF CLAIMS**

Kluwe asserts two causes of action against HBUHSD Defendants at issue in the instant Motion to Dismiss. Kluwe's Second Cause of Action asserts an "as applied" challenge to the Civility Policy in violation of his First and Fourteenth Amendment rights against HBUHSD and all HBUHSD Defendants in their official and individual capacities under 42 U.S.C. section 1983.

Kluwe alleges, "[a]ccording to the HBUHSD Defendants' press release," he was terminated for violating the Civility Policy. (ECF 1, ¶ 253). He asserts the policy, as applied, is "unconstitutional on three grounds: (1) overbreadth, (2) vagueness, and (3) viewpoint discrimination." (ECF 1, ¶ 255).

With respect to Kluwe's allegations of overbreadth, he alleges he published the PSA post "during nonworking hours and off-campus," he "had no policy-making authority at EHS or HBUHSD," "no job functions within the school administration and rarely interacted with administrative personnel or parents," and "no teaching duties at EHS." (ECF 1, ¶¶ 257-261). He alleges the PSA post "reflected that the topic of the post was not work-related," and that it "did not target any EHS student or employee." (ECF 1, ¶¶ 262-263). Kluwe asserts the Civility Policy "extends well beyond speech in which the HBUHSD Defendants have any legitimate administrative interests in regulating to avoid workplace disruption." (ECF 1, ¶ 264).

Kluwe claims, as applied to him, "HBUHSD Defendants appear to interpret the

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1   Civility Policy as prohibiting Kluwe from engaging in uncivil or disrespectful speech

2   on matters of public concern made in his capacity as a private citizen," ignoring the

3   Civility Policy's "carve-out for individual' 'right[s] to freedom of expression[.]'"

4   (ECF 1, ¶ 267). Kluwe asserts he was not given notice of HBUHSD Defendants'

5   interpretation and "an opportunity to tell his side of the story." (ECF 1, ¶ 266).

6        With respect to Kluwe's contention the Civility Policy is unconstitutionally

7   vague, he alleges he had no actual notice of the Civility Policy until after his

8   termination, and even if he had notice, its "purported ban on any disrespectful or

9   uncivil speech … that may detract from a 'safe, harassment-free workplace,' offered

10  Kluwe no discernible standard from which to determine what types of speech would

11  subject him to discipline." (ECF 1, ¶¶ 273-274). He alleges he "had no notice that off-

12  duty, off-campus, political speech about nonwork topics would subject him to

13  discharge without notice, any hearing, or progressive discipline. (ECF 1, ¶ 275).

14       Kluwe's final claim in his multi-claim Second Cause of Action is that

15  HBUHSD's application of the Civility Policy constitutes unlawful viewpoint

16  discrimination. (ECF 1, ¶ 276). Kluwe contends that HBUHSD Defendants "singl[ed]

17  out his messages for disfavor because of the politically liberal views expressed in

18  those messages," motivated by HBUHSD Defendants' "disagreement with Kluwe's

19  political viewpoints expressed in his public statements between February 18 and

20  March 2, 2025." (ECF 1, ¶ 279-281). Kluwe alleges "HBUHSD Defendants would

21  not have taken the same actions against an HBUHSD employee who criticized

22  Democrats or other liberal-leaning ground or who had spoken in favor of Trump or

23  MAGA or all it stands for." (ECF 1, ¶ 283).

24       Kluwe's Third Cause of Action contains two distinct claims – deprivations of

25  property and liberty interests without due process in violation of his Fourteenth

26  Amendment rights against HBUHSD and individual HBUHSD Defendants in their

27  official and individual capacities.

28       Kluwe alleges he was deprived of a protected liberty interest when HBUHSD

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

"publish[ed] stigmatizing statements about him in connection with his discharge, the accuracy of which Kluwe contests, and which harmed his 'good name, reputation, honor, or integrity.'" (ECF 1, ¶ 294). Kluwe alleges HBUHSD published the reasons for his termination in the March 3, 2025 press release, which "implied that Kluwe was lying when he complained that he was discharged for his protected political speech," and "imposed a stigma of moral turpitude that has seriously damaged Kluwe's reputation as a desirable, safe football coach fit to work as a high school freshman coach[.]" (ECF 1, ¶¶ 297-300). Kluwe also asserts that HBUHSD Defendants deprived him of a "protected property interest by discharging him 'during the term of [his] contract[.]'" (ECF 1, ¶ 301). Kluwe contends he had a property interest in his coaching job based on representations from EHS football head coaches and District policy. (ECF 1, ¶¶ 302-303).

Kluwe asserts that HBUHSD Defendants deprived him of his liberty and property rights when they "discharged and defamed him without providing a pre-termination hearing … an oral or written notice of the charges, an explanation of their evidence, and an opportunity to present his side of the story." (ECF 1, ¶ 304).

Kluwe seeks declaratory and injunctive relief against HBUHSD and the Individual HBUHSD Defendants in their official capacities, compensatory damages against HBUHSD and the Individual HBUHSD Defendants in their individual capacities, and punitive damages against the Individual HBUHSD Defendants in their individual capacities. (ECF 1, ¶¶ 289-291; 312-314; Prayer for Relief).

//
//
//
//
//
//

- 15 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

## III.  **ARGUMENT**

### A.  THE ELEVENTH AMENDMENT BARS PLAINTIFF'S DAMAGES CLAIMS AGAINST HBUHSD

The Eleventh Amendment to the U.S. Constitution immunizes states from suit in federal court by both citizens and non-citizens of the state, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996), prohibits actions for damages against state agencies when Congress has failed to express a contrary intent, *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985), and extends to suits against an "arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Thus, "arms of the state" are immune under the Eleventh Amendment from suits for private damages and suits for injunctive relief brought in federal court. *Sato v. Orange County Dep't of Education*, 861 F.3d 923, 928 (9th Cir. 2017). Further, "arms of the state" are not "persons" within the meaning of Section 1983, which provides for private suit against a "person" who deprives another of federal rights. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Whether an entity is an arm of the state within the meaning of the Eleventh Amendment is a question of law and is appropriately raised in a motion under FRCP 12(b)(6). *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023); *Sato*, 861 F.3d at 927.

It has been clearly established that California public school districts are state agencies for purposes of Eleventh Amendment immunity. *Belanger v. Madeira Unified Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992); *Sato v. Orange County Dep't of Education*, 861 F.3d 923, 934 (9th Cir. 2017). As to individual defendants, "[t]he Eleventh Immunity bars claims for damages against a state official acting in his or her official capacity," *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016), since they "are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014 1023 n.8 (9th Cir. 2002).

Recently, in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023), the Ninth Circuit, *en banc*, reshaped the analysis of whether an agency is an "arm of the

state" under the Eleventh Amendment after 40 years of following the five-part test set out in *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201-02 (9th Cir. 1998), based on more recent U.S. Supreme Court Eleventh Amendment decisions. In *Kohn*, the Ninth Circuit adopted the D.C. Circuit's three-part test as set forth in *Puerto Rico Ports Authority v. Federal Maritime Com'n*, 531 F.3d 868, 873 (D.C. Cir. 2008), which considered three factors, none of which is dispositive on its own: "(1) the [s]tate's intent as to the status of the entity, including the functions performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the state treasury." *Kohn*, 87 F.4th at 1031.

Kluwe notes that Defendant "HBUHSD is properly included as a defendant" so that the Court can determine whether *Belanger*'s conclusion affording school districts Eleventh Amendment immunity should be revisited. However, citing *Kohn*'s statement that the newly adopted test "is unlikely to lead to different results in cases that previously applied the *Mitchell* factors and held an entity is entitled to immunity," courts have consistently declined to disturb *Belanger* in favor of finding that public school districts are indeed arms of the state and entitled to Eleventh Amendment immunity. *See, e.g.*, *T.L. v. Orange Unified School District*, 2024 WL 305387 *8 (C.D. Cal. 2024) (following *Belanger* in finding the Defendant school district an "'arm of the state' entitled to sovereign immunity under the Eleventh Amendment"); *K.J. by and through Johnson v. Jackson*, 127 F.4th 1239, 1251 n.8 (9th Cir. 2025) (reiterating that the Ninth Circuit has consistently held public school districts are entitled to Eleventh Amendment immunity, and declining to take a position on whether that immunity should be revisited); *Ramirez v. Oakland Unified School District*, 2025 WL 1507092 *6 (N.D. Cal. 2025) (concluding that "all three *Kohn* factors indicate that the district is a state entity" and "the court's holding is consistent with prior treatment of school districts under the *Kohn* factors"); *Price v. Tamalpais Union High School District*, 2025 WL 1046644 *2 (N.D. Cal 2025) (finding that under *Kohn*, "as an 'arm of the state,' Defendant school district enjoys Eleventh

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

Amendment immunity"); *A.W. v. Santa Rose City Schools*, 2025 WL 1190725 *5 (N.D. Cal. 2025) (following *Belanger*'s conclusion that "school districts are state agencies that are afforded Eleventh Amendment immunity"); *Donaghe v. Sherman Heights Elementary*, 2024 WL 3883510 *6 n. 5 (S.D. Cal. 2024) (finding *Kohn* did not intend to disturb the recognized Eleventh Amendment immunity for school districts and individuals acting in their official capacity).

Accordingly, neither *Kohn* nor any subsequent case presented with the issue indicates that Defendant HBUHSD and individual defendants sued in their official capacities should not be entitled to Eleventh Amendment immunity pursuant to *Belanger*.

## B. PLAINTIFF'S COMPLAINT FAILS TO PROVIDE "FAIR NOTICE" UNDER FRCP 8(A)(2)

### 1. Plaintiff's Allegations Amount to Improper "Shotgun Pleading"

FRCP 8(a)(2) requires a pleading to contain "a short and plain statement of the claims showing that the pleader is entitled to relief," and its primary purpose is to ensure the pleading "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Several forms of pleading practices can deny a defendant fair notice, warranting dismissal under Rule 8(a)(2), one being "shotgun pleading."[3] "[S]hotgun pleadings generally do not provide fair notice" because they "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Beco Dairy Automation, Inc. v. Global Tech Sys., Inc.*, 2015 WL 5732595, at *11 (E.D. Cal. 2015); *Sollberger v. Wachovia Sec., LLC*, 2010 WL

---

[3] Courts in California, including in this district, have found "[s]hotgun pleadings … unacceptable." *Sollberger v. Wachovia Securities, LLC*, 2010 WL 2674456 at *4 (C.D. Cal. 2010) (citing *Anderson v. District Board of Trustees*, 77 F.3d 364, 366–67 (11th Cir.1996), and *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001)); *George v. Grossmont Cuyamaca Community College District*, 2022 WL 17330467, at *15 (S.D. Cal. 2022)

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

2674456, at *4 (C.D. Cal. 2010).

As the court in *Sollberger* explained, "[o]ne common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong. Another type is where the plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then 'each count incorporates every antecedent allegation by reference[.]" *Sollberger*, 2010 WL 2674456 at *4 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) (overruled on other grounds)).

The Complaint exhibits both forms of shotgun pleading described. Kluwe asserts at least six distinct theories of recovery across the three causes of action against HBUHSD Defendants, failing to clearly identify facts applying to each theory and incorporating all prior allegations into each cause of action. Kluwe's conclusory allegations and incorporation by reference of all prior paragraphs, without further clarification, including allegations related solely to the Fourth Cause of Action against a non-HBUHSD defendant, along with assertions of multiple claims within single causes of action, requires Defendants to guess as to the legal and factual basis of his claims. Furthermore, as addressed below, Kluwe fails to identify specific acts of individual HBUHSD Defendants on which it alleges liability, including punitive damage allegations, failing to provide the Individual HBUHSD Defendants with fair notice.

## 2. Plaintiff's Individual Capacity Allegations Are Insufficient to State a Claim for Damages

It is well settled that "[g]overnment officials may not be held liable for the unconstitutional conduct… under a theory of respondeat superior." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Courts have concluded that proving section 1983 liability on the part of an individual Defendant requires a showing of "personal participation in the alleged rights violation…." *Jones v. Williams*, 297 F.3d 930, 934

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1   (9th Cir. 2002).

2      Accordingly, courts have expressly barred plaintiffs from alleging liability on

3   a "team effort" theory.  *See*, *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996)

4   ("The underlying problem with a 'team effort' theory is that it … removes individual

5   liability as the issue and allows a jury to find a defendant liable on the ground that

6   even if the defendant had no role in the unlawful conduct, he would nonetheless be

7   guilty if the conduct was the result of a 'team effort'.... [T]he 'team effort' standard

8   allows the jury to lump all the defendants together, rather than require it to base each

9   individual's liability on his own conduct."); *Esteem v. City of Pasadena*, 2007 WL

10  4270360 *14 (C.D. Cal. 2007) ("Plaintiffs cannot hold an officer liable because of his

11  membership in a group without a showing of individual participation in the unlawful

12  conduct....").

13     Kluwe asserts a claim for damages against all HBUHSD Defendants in their

14  individual capacities pursuant to each cause of action against them. Yet here, after

15  Kluwe's section of the Complaint titled "The Parties" (ECF 1, ¶¶ 30-47), no

16  HBUHSD Defendant is individually alleged to have actually engaged in *any* act,

17  except for Defendant Begany. Even then Kluwe alleges only that "Begany told Kluwe

18  that…they had no choice but to let him go," that "Begany offered Kluwe an option of

19  resigning," and that "Begany told Kluwe that he appreciated Kluwe remaining civil

20  and that he supported Kluwe." (EFC 1, ¶¶ 172-174). However, Kluwe does not

21  contend that the mere act of *informing* him of his termination, as Begany is alleged to

22  have done, violated any constitutional right.

23     Rather, Kluwe's allegations better reflect an attempt to put forth individual

24  liability on a kind of "team effort" theory, alleging that each HBUHSD Defendant, as

25  a member of the "team" of school site and District officials, must necessarily be liable

26  for all alleged acts. This does not suffice to establish a claim of personal liability

27  against each HBUHSD Defendant.

28     Nor does Kluwe adequately plead entitlement to punitive damages. Under

- 20 -

California Civil Code section 3294, a plaintiff must plausibly allege facts supporting an inference that defendants engaged in "oppression, fraud, or malice." *See Terpin v. AT And T Mobility LLC*, 118 F.4th 1102, 1112 (9th Cir. 2024). Punitive damages are not favored, they are granted only "with the greatest caution," (*Dyna-Med, Inc. v. Fair Employment and Housing Comm'n*, 43 Ca1.3d 1379, 1392 (1987)), and they must be pled with specificity. *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 32-33 (1975) Even in light of Rule 8's liberal pleading standard, Kluwe's conclusory assertions of malice are insufficient when unsupported not only by no facts indicating malicious intentions, but no facts indicating individual liability at all.

## C. PLAINTIFF DID NOT HAVE A PROPERTY INTEREST IN HIS EMPLOYMENT WITH THE DISTRICT

A fundamental premise underlying Kluwe's entire Complaint is his assertion he had a property interest in his seasonal position with HBUHSD, entitling him to notice, an opportunity to be heard, progressive discipline, and legal cause for HBUHSD's decision to not return him to a seasonal coaching position for the 2025 season. This is erroneous. Kluwe had no property interest in his continued employment.[4]

"Public employment in California is, in general, regulated by statute, the rights of a public employee are statutory, and 'no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law.'" *Bernstein v. Lopez*, 321 F.3d 903, 905-906 (9th Cir. 2003) (abrogated on other grounds) (quoting *Miller v. State*, 18 Cal.3d 808, 813 (1977)). California

---

[4] In the meet and confer process Kluwe's counsel acknowledged that Kluwe had no property interest in his continued employment. Accordingly, Kluwe through counsel stated he will not pursue the property interest portion/claim embedded in the Third Cause of Action. Counsel declined to amend the Complaint to reflect this change, taking the position that stipulating to not pursuing it sufficed. Defendants disagree, emphasizing the importance of clear pleadings that give clear notice. Because, under the operative Complaint, Kluwe's property interest claim remains at issue, and to the extent that Kluwe's other causes of action rely in part on Kluwe's assertion that he had a property interest in his continued employment, Defendants include this argument in this Motion.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

Education Code section 44919, subdivision (b), provides, "[g]overning boards shall classify as temporary employees persons, other than substitute employees, who are employed to serve in a limited assignment supervising athletic activities of pupils...." Additionally, a California school district has no power to award permanent status (i.e. a property interest in employment) contrary to statute, even if it wants to. *See, Fleice v. Chualar Union Elementary School Dist.*, 206 Cal.App.3d 886 (1988) (an employer cannot by contract grant tenure to teachers after only one year of service, thereby waiving the mandates of the Education Code); *see also*, *Summerfield v. Windsor Unified School Dist.*, 95 Cal.App.4th 1026 (2002).

Accordingly, Plaintiff has no property interest in his employment and cannot state a claim arising out of such an interest.

## D. PLAINTIFF'S SECOND CAUSE OF ACTION FAILS TO ESTABLISH DEFENDANTS' POLICY VIOLATES PLAINTIFF'S FIRST OR FOURTEENTH AMENDMENT RIGHTS

Kluwe's Second Cause of Action incorporates three distinct claims arising out of Defendants' alleged application of the Civility Policy to Kluwe. Kluwe claims the Civility Policy, as applied, is overbroad, vague, and constitutes viewpoint discrimination in violation of Kluwe's First and Fourteenth Amendment rights. For the reasons discussed below, Plaintiff fails to state a claim on each point.

### 1. The Civility Policy Is Not Overbroad

Under the overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *U.S. v. Williams*, 553 U.S. 285, 292 (2008). To strike a balance between imposing regulations with lawful applications and protecting constitutionally protected speech, the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* at 292-293.

As an initial note, Plaintiff purports to challenge the Civility Policy only as

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

applied to himself, and does not assert the policy is *facially* overbroad. The law does not appear to recognize a distinct as-applied challenge to a law based on overbreadth. *See, e.g.*, *Diaz v. Messer*, 742 Fed.Appx. 250, 253 (9th Cir. 2018) ("a litigant cannot make an as-applied overbreadth argument; an overbreadth challenge must be addressed to the facial validity of a statute"); *U.S. v. Szabo*, 760 F.3d 997, 1003-1004 (9th Cir. 2014) ("A constitutional challenge based on overbreadth is a challenge to the facial validity of a statute or regulation."). Cases finding that a statute is or is not overbroad as applied to a particular defendant have not analyzed the issue of overbreadth separately from that of vagueness. *See, e.g., U.S. v. Lee*, 183 F.3d 1029, 1033 (9th Cir. 1999). Accordingly, to the extent an as-applied overbreadth claim may be stated, it necessarily rises or falls with a plaintiff's claim of vagueness.

### 2. The Civility Policy Is Not Unconstitutionally Vague

As an initial matter, it should be noted that "[t]he standard for unconstitutional vagueness is whether the statute provide[s] a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorized or encourages seriously discriminatory enforcement.'" *Maldonado v. Morales*, 556 F.3d 1037, 1045 (9th Cir. 2009) (quoting *U.S. v. Williams*, 553 U.S. 285, 304 (2008). The void-for-vagueness doctrine arises out of the criminal context, as a result of due process concerns where individuals were subjected to criminal penalties without fair notice of the conduct criminal statutes prohibited. *See, e.g., Jordan v. De George*, 341 U.S. 223, 230 ("The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct"). Since its inception, the doctrine has been extended to civil prohibitions. However, the void-for-vagueness doctrine does not apply to statutes that do not prohibit any conduct. *See United States v. David H*., 29 F.3d 489, 491 (9th Cir. 1994); *Porto v. City of Newport Beach*, , 2011 WL 2470128, at *8 (C.D. Cal. May 20, 2011), report and recommendation adopted, 2011 WL 2462555 (C.D. Cal. June 21, 2011), aff'd, 509 F. App'x 665 (9th Cir. 2013) (stating that an ordinance "plainly does not prohibit any conduct and therefore falls

outside the purview of the void-for-vagueness doctrine"). The Civility Policy does not, by its terms, prohibit any conduct, and thus does not offend due process rights on grounds of vagueness.

Kluwe, rather, asserts that the Civility Policy, as applied to him, effectuates a "ban on any disrespectful or uncivil speech … that may detract from a 'safe, harassment-free workplace,'" which "offered Kluwe no discernible standard from which to determine what types of speech would subject him to discipline and no explicit standards to prevent arbitrary and capricious application." (ECF 1, ¶ 274). Specifically, Kluwe contends that "[h]e had no notice that off-duty, off-campus, political speech about nonwork topics would subject him to discharge without notice, any hearing, or progressive discipline."

As an initial matter, Defendants again note that as an at-will employee, Kluwe was not, under any circumstance, entitled to "notice that off-duty, off-campus, political speech about nonwork topics would subject him to discharge without notice, any hearing, or progressive discipline." Stated differently, HBUHSD was not required to point to *any* policy, law, contract, or other source giving rise to a constitutionally-protected property interest invoking due process rights – when HBUHSD conveyed in response to Kluwe's national media campaign that it was "the district's standards for professionalism and appropriate conduct" to "maintain[] a safe, respectful, and professional environment for all students, staff, and community members" that led to the decision, HBUHSD was not required to have a written policy underlying its expectations for at-will employees.

That aside, even if Kluwe could establish that the Civility Policy, as applied, constitutes a prohibition on speech, he cannot establish it was unconstitutionally vague as applied to him. Under Kluwe's theory, the Civility Policy clearly indicates that *any* conduct that may detract from a safe and harassment-free workplace does not align with the policy, but that is not what it says and "a regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

unclear as to what fact must be proved." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). As applied to Kluwe, as alleged, the Civility Policy was applied to speech that, on its face, was reasonably interpreted as a school employee promoting violence.

Moreover, Kluwe's contention that he had no notice of the Civility Policy, and thus, its application to his conduct offended his due process rights is without merit. In addition to the repeated faulty assertion that Kluwe had a property interest due process rights in his position, all District employees can be expected to comply with District policy. An employee's own ignorance of the existence of a policy, especially a policy publicly available on the District's website, is no excuse for an employee's failure to comply with its terms. *See, e.g.*, *Barlow v. U.S.*, 32 U.S. 404, 411 (1833) ("It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally[.]")

### 3. <u>Application of the Civility Policy to Kluwe Is Not Unconstitutional Viewpoint Discrimination</u>

"A restriction on speech is viewpoint-based if (1) on its face, it distinguishes between types of speech or speakers based on the viewpoint expressed; or (2) though neutral on its face, the regulation is motivated by the desire to suppress a particular viewpoint." *Moss v. U.S. Secret Service*, 675 F.3d 1213, 1224 (9th Cir. 2012) (amended on rehearing, 711 F.3d 941 (9th Cir. 2013)), (on a motion to dismiss, any explanation for differential treatment between groups with opposing viewpoints "would have to be so obviously applicable as to render the assertion of unconstitutional viewpoint discrimination implausible.").

Yet even in light of this burden, Plaintiff's allegations fail to rise "above the speculative level," and thus do not state a claim of viewpoint discrimination. Kluwe asserts that the application of the Civility Policy to Kluwe's speech "was unlawfully motivated by [HBUHSD Defendants'] disagreement with Kluwe's political viewpoints expressed in his public statements," and not based on Kluwe's promotion

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

of violence as the District's statements reflect. *Twombly*, 550 U.S. at 555; ECF 1, ¶ 281. Plaintiff speculates that "HBUHSD Defendants would not have taken the same actions against a HBUHSD employee who criticized Democrats or other liberal-leaning groups or who had spoken in favor of Trump or MAGA and all it stands for," but does not base its contention on anything further than "information and belief." (ECF 1, ¶¶ 283-284). This does not suffice to state a claim.[5]

## E. PLAINTIFF'S THIRD CAUSE OF ACTION FAILS TO STATE A DEPRIVATION OF A PROPERTY OR LIBERTY INTEREST IN VIOLATION OF DUE PROCESS

### 1. Plaintiff Cannot Establish a Deprivation of a Property Interest

As addressed above, Plaintiff has no property interest in his continued employment with the District. Plaintiff has acknowledged this fact and represented it will not pursue this theory. In light of such agreement, Defendants refer to its arguments in Section C and do not readdress this point here, except as to request the Court formally dismiss Plaintiff's property interest claim.

### 2. Plaintiff Cannot Establish a Deprivation of His Liberty Interest

Kluwe contends that "HBUHSD Defendants deprived [him] of a liberty interest by publishing stigmatizing statements about him in connection with his discharge … and which harmed his 'good name, reputation, honor, or integrity.'" (ECF 1, ¶ 294 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972); *Chaudhry v. Aragon*, 68 F.4th 1161 (9th Cir. 2023)).

In *Roth*, the Supreme Court explained that an employee's liberty interest is not impaired "when he simply is not rehired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 575. Courts have explained that "when the

---

[5] To reiterate, Kluwe admits that "each year, typically in the Spring" after first coaching in 2019, he was contacted about his continued interest in coaching in the following year (ECF 1, ¶¶ 59-60), and he was invited to and did coach in 2020, 2021, 2022, 2023, and 2024. But, he claims, he can just state "on information and belief," "disagreement with [his] political viewpoints expressed in his public statements" motivated the decision regarding 2025. More is necessary, especially when asserting one is entitled to punitive damages from public employees about whom only "information and belief" assertions are made.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1100-1101 (9th Cir. 1981). "To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." *Id.* at 1101. The Ninth Circuit "has described the stigma that infringes liberty interests as that which 'seriously damages a person's reputation or significantly forecloses his freedom to take advantage of other employment opportunities,'" such as allegations of "moral turpitude." *Bollow*, 650 F.2d at 1101 (quoting *Jablon v. Trustees of California State Colleges*, 482 F.2d 997, 1000 (9th Cir. 1973)). Further, any stigmatizing allegation must be publicized, as "[u]npublicized accusations do not infringe on constitutional liberty interests because, by definition, they cannot harm 'good name, reputation, honor, or integrity.'" *Bollow*, 650 F.2d at 1101 (quoting *Bishop v. Wood*, 426 U.S. 341, 348 (1975)).

Courts have grappled with the issue of determining when allegedly stigmatizing accusations are published "in connection with" an employee's termination, with many courts, including the Ninth Circuit, holding that the "requirement may be met when defamatory statements are so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." *Campanelli v. Bockrath*, 100 F.3d 1476, 1482 (9th Cir. 1996). In the years following, courts considered various factors that weigh on the "in connection with" requirement, including, for example, temporal proximity (*e.g., Campanelli* ("seven- to nine-day interval" sufficient to establish statements were "in connection with" discharge); *Tibbetts v. Kulongoski*, 567 F.3d 529, 538 (9th Cir. 2009) (finding sixteen month gap between termination and publication "too remote"), and the identity of actors (*e.g., Eberhard v. California Highway Patrol*, 73 F.Supp.3d 1122, 1131-1132 (N.D. Cal. 2014) (no connection where "different actors were responsible for the alleged stigma and plus factors"). In

short, precedent indicates that while there is no distinct standard, factors that may attenuate the connection between the employee's termination and publication of allegedly stigmatizing accusations may prevent the establishment of a liberty interest violation.

Although Defendants find no binding precedent addressing a factual circumstance analogous to that surrounding Kluwe's termination and the District's subsequent statement clarifying reasons for his termination, it does not cleanly follow from case law that a plaintiff such as Kluwe can manufacture a liberty interest claim following their termination. For example, the Ninth Circuit has rejected arguments that the "publication" requirement can be met where the employee "self-publishes" the reasons for his disclosure. *Llamas v Butte Community College Dist.*, 238 F.3d 1123, 1131 ("to allow the potentially stigmatized party to satisfy the publication prong by disseminating the details surrounding his termination would contradict the purposes of the publication requirement[.]") In support of its conclusion, *Llamas* cites *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997), which explained:

> The principle of self-defamation, applied in a case such as this, would encourage [plaintiff] to apply to a job to every police force in the nation, in order to magnify his damages; and to blurt out to each of them the ground of his discharge in the most lurid terms, to the same end. Most states … reject self-defamation as a basis for a tort claim, and it would be odd for federal constitutional law to embrace this questionable doctrine.

*Oliveri* also notes that "[t]he public employer who goes out of his way to publicize the ground of the dismissal is deliberately taking measures to make it difficult or impossible for the employee to obtain comparable employment, and is thus acting with intent to infringe a constitutionally protected liberty." (*Id.* at 409).

It is undisputed that HBUHSD did not issue the brief press release regarding Kluwe's termination until *after* Kluwe himself made a social media post asserting he was terminated for his political views and activity, and after he actively perpetuated his opinion regarding why he was terminated through the media. An at-will employee like Kluwe is only entitled to a due process "name clearing" hearing where the

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

employee is terminated for reasons that impair his good name, reputation, honor, or integrity, and the employer publicizes the reasons for that termination. At the time of Kluwe's termination, the District is not alleged to have intended to, nor any reason to believe it would need to, say anything to anyone about Kluwe's termination. Thus, the District had no reason to believe that there may be any offense to Kluwe's liberty interest that would have entitled him to a hearing at the time of his termination.

Nor should HBUHSD be prohibited from making a public statement to correct a highly public statement proclaiming incorrect reasons for an employee's termination that, if unaddressed, would cast an unfairly damaging light on HBUHSD, solely because the employee—who was not otherwise entitled to due process—was not afforded the right to a hearing. Just as *Oliveri* recognized that permitting an employee from manufacturing a liberty interest hearing through self-publication would turn the law on its head, permitting Kluwe to maintain a liberty interest claim under in these circumstances would permit *any* terminated at-will public employee to publicize disparaging, inaccurate information regarding their termination and render the employer powerless to contribute to the public issue and discussion the *employee* intentionally created.

Accordingly, where, as here, a plaintiff publicizes reasons for their termination, and the employer simply responds only as a result of the plaintiff putting it at issue, that action should not be deemed "in connection with" the plaintiff's termination, offending due process.

//
//
//
//
//
//

## IV.  <u>CONCLUSION</u>

For the reasons described above, Defendants respectfully request the Court grant Defendants' Motion to Dismiss Plaintiff's Second and Third Causes of Action.

Dated: September 8, 2025          ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: _____

Mark R. Bresee
Brooklyn N. Robertson
Anthony P. De Marco
Attorneys for Defendants

DEFENDANTS' POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
U.S.D.C. Case No. 8:25-CV-1648-FWS