1  Daniel A. Sasse (SBN: 236234)
       DSasse@crowell.com
2  David C. Griffith (SBN: 329342)
       DGriffith@crowell.com
3  Jazmine G. Buckley (SBN: 341516)
       JBuckley@crowell.com
4  Crowell & Moring LLP
   3 Park Plaza, 20th Floor
5  Irvine, CA 92614
   Telephone:  949.263.8400
6  Facsimile:   949.263.8414

7  *Attorneys for Plaintiff Christopher Kluwe*

8

9  *(Additional Counsel Listed on Signature Page)*

10            UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12  CHRISTOPHER KLUWE,

13            Plaintiff,

14       v.

15  HUNTINGTON BEACH UNION
    HIGH SCHOOL DISTRICT;
16  CAROLEE OGATA, in her individual
    and official capacities as Superintendent
    of Huntington Beach Union High
17  School District; SUSAN HENRY, in her
    individual and official capacities as
18  President of the Board of Trustees of the
    Huntington Beach Union High School
19  District; DANIEL BRYAN, in his
    individual and official capacities as
20  Assistant Superintendent, Human
    Resources at Huntington Beach Union
21  High School District; DANIEL
    MORRIS, in his individual and official
22  capacities as Principal of Edison High
    School; EDWARD BEGANY, in his
23  individual and official capacities as
    Assistant Principal, Supervision at
24  Edison High School; and CHRISTIAN
    EPTING, an individual,

25            Defendants.

26

27

28

Case No. 8:25-cv-1648

**PLAINTIFF'S OPPOSITION TO DEFENDANT CHRISTIAN EPTING'S MOTION TO STRIKE PLAINTIFF'S "FALSE LIGHT DEFAMATION" CLAIM PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 (ANTI-SLAPP)**

Date:   October 23, 2025
Time:   10:00 a.m.
Crtrm:  10D
Judge:  Hon. Fred W. Slaughter

JURY DEMAND

CROWELL
& MORING LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

I.     FACTUAL BACKGROUND.................................................................................3

II.    ARGUMENT.....................................................................................................6

      A.     Defendant Misrepresents Case Law, Apparently Caused by AI
          Misuse .........................................................................................6

      B.     Plaintiff Does Not Contest Epting's Showing of a Protected
          Activity.......................................................................................6

      C.     Plaintiff Easily Satisfies His Showing of a Viable Defamation
          Claim .........................................................................................7

      D.     Plaintiff Asserts a Claim for Defamation (Not Invasion of Privacy),
          Which Is Sufficiently Pled .................................................................10

          1.     Plaintiff Sufficiently Pleads *Per Se* Defamatory Meaning........10

          2.     Plaintiff Sufficiently Pleads Falsity.............................................13

          3.     Plaintiff Sufficiently Pleads Actual Malice ...............................17

          4.     Plaintiff Sufficiently Pleads Causation......................................21

          5.     Civil Code §48a Does Not Apply................................................22

III.   CONCLUSION................................................................................................22

CROWELL
& MORING LLP
ATTORNEYS AT LAW

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aeroplate v. Arch Ins.*,
2006 WL 3257487 (E.D. Cal. Nov. 9, 2006) ..................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................ 13, 14, 28

*Avina v. Patenaude & Felix*,
2021 WL 5990037 (S.D. Cal. Dec. 17, 2021) ..................................................... 15

*Balla v. Hall*,
59 Cal.App.5th 652 (2021) ............................................................ *passim*

*Barnes v. Sea Haw. Rafting*,
493 F.Supp.3d 972 (D. Haw. 2020), *aff'd*, 2022 WL 501582 (9th
Cir. Feb. 18, 2022) ............................................................ 16

*Burnett v. Nat'l Enquirer*,
144 Cal.App.3d 991 (1983) ............................................................ 17, 28

*Cepeda v. Cowles Mags. & Broad.*,
328 F.2d 869 (9th Cir. 1964) ............................................................ 18

*Church of Scientology of Cal. v. Dell Pub.*,
362 F.Supp. 767 (N.D. Cal. 1973) ............................................................ 25

*Condit v. Nat'l Enquirer*,
248 F.Supp.2d 945 (E.D. Cal. 2002) ............................................................ 18, 28

*CoreCivic v. Candide Grp.*,
46 F.4th 1136 (9th Cir. 2022) ............................................................ 13

*Crane v. Ariz. Republic*,
972 F.2d 1511 (9th Cir. 1992) ............................................................ 21

*Denney v. Lawrence*,
22 Cal.App.4th 927 (1994) ............................................................ 28

*Elias v. Rolling Stone*,
872 F.3d 97 (2d Cir. 2017) ............................................................ 28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

OPPOSITION TO MOTION TO STRIKE;
CASE NO. 8:25-CV-1648

*Franklin v. Dynamic Details*,
116 Cal.App.4th 375 (2004) ........................................................................ 17

*Freeman v. Stater Bros. Mkts.*,
2024 WL 5416669 (C.D. Cal. Nov. 26, 2024) ............................................. 15

*GlobalTranz Enters. v. Shipper's Choice Glob.*,
2017 WL 11609546 (D. Ariz. Feb. 23, 2017) .............................................. 13

*Good Gov't Grp. of Seal Beach v. Super. Ct.*,
22 Cal.3d 672 (1978) ........................................................................ 20, 22, 25

*Gralow v. City of Palos Verdes Ests.*,
2024 WL 3001475 (C.D. Cal. May 22, 2024) ............................................. 15

*Grant v. Long Beach*,
96 F.4th 1255 (9th Cir. 2024) ..................................................................... 12

*Gunn v. Drage*,
65 F.4th 1109 (9th Cir. 2023) ..................................................................... 14

*Harrell v. George*,
2012 WL 3647941 (E.D. Cal. Aug. 22, 2012) ............................................ 15

*Hawran v. Hixson*,
209 Cal.App.4th 256 (2012) ................................................................. 17, 18

*Herring Networks v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) ....................................................................... 13

*Hicks v. Bradford*,
2022 WL 20689541 (C.D. Cal. Dec. 13, 2022) .......................................... 28

*Huntington Beach City Council v. Super. Ct.*,
94 Cal.App.4th 1417 (2002) ....................................................................... 21

*Jasperson v. Schaefer*,
366 F.Supp.3d 1035 (E.D. Cal. 2018) .................................................. 12, 19

*Jones v. Hollywood Unlocked*,
2022 WL 18674459 (C.D. Cal. Nov. 22, 2022) .......................................... 15

*Kapellas v. Kofman*,
1 Cal.3d 20 (1969) ...................................................................................... 19

CROWELL
& MORING LLP
ATTORNEYS AT LAW

iii

OPPOSITION TO MOTION TO STRIKE;
CASE NO. 8:25-CV-1648

*Khawar v. Globe Int'l,*
    19 Cal.4th 254 (1998) ................................................................. 23, 26

*Lacey v. State Farm Gen. Ins.,*
    2025 WL 1363069 (C.D. Cal. May 5, 2025) .................................... 12

*MacLeod v. Trib. Pub.,*
    52 Cal.2d 536 (1959) ................................................................. 17, 19

*Masson v. New Yorker Mag.,*
    501 U.S. 496 (1991) ...........................................................*passim*

*Mavy v. Comm'r of Soc. Sec. Admin.,*
    2025 WL 2355222 (D. Ariz. Aug. 14, 2025) .................................... 12

*Metabolife Intern v. Wornick,*
    264 F.3d 832 (9th Cir. 2001) ........................................................ 13

*New York Times v. Sullivan,*
    376 U.S. 254 (1964) ..................................................................... 20

*Nirschl v. Schiller,*
    91 Cal.App.5th 386 (2023) ........................................................... 12

*Penrose Hill v. Mabray,*
    479 F.Supp.3d 840 (N.D. Cal. 2020) .............................................. 15

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress,*
    890 F.3d 828 (9th Cir. 2018) .................................................. 13, 15

*Pope v. Chronicle Publ'g,*
    95 Cal.App.3d 607 (1979) ...................................................... 12, 28

*Portland Retail Druggists v. Kaiser Found. Health Plan,*
    662 F.2d 641 (9th Cir. 1981) ........................................................ 16

*Price v. Stossel,*
    620 F.3d 992 (9th Cir. 2010) ........................................................ 21

*Reader's Digest v. Super. Ct.,*
    37 Cal.3d 244 (1984) .............................................................. 23, 28

*Rogers v. Home Shopping Network,*
    57 F.Supp.2d 973 (C.D. Cal. 1999) ...................................... 13, 14, 15

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Rutherford v. Owens–Illinois,*
    16 Cal.4th 953 (1997) ................................................................................ 28

*se. Tilkey v. Allstate Ins.,*
    56 Cal.App.5th 521 (2020) ...................................................................... 17

*Selleck v. Globe Int'l,*
    166 Cal.App.3d 1123 (1985) ........................................................ 16, 17, 18

*Silverstein v. E360Insight,*
    2008 WL 1995217 (C.D. Cal. May 5, 2008) .......................................... 15

*Solano v. Playgirl,*
    292 F.3d 1078 (9th Cir. 2002) ................................................................ 16

*Soo Park v. Thompson,*
    851 F.3d 910 (9th Cir. 2017) ............................................................ 13, 26

*Soule v. Gen. Motors,*
    8 Cal.4th 548 (1994) ................................................................................ 28

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ................................................................ 13

*Time v. Pape,*
    401 U.S. 279 (1971) ................................................................................ 27

*United States v. Hayes,*
    763 F.Supp.3d 1054 (E.D. Cal. 2025) .................................................... 12

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) .................................................................. 14

*Verizon Del. v. Covad Commc'ns,*
    377 F.3d 1081 (9th Cir. 2004) ................................................................ 29

*Walter v. Drayson,*
    538 F.3d 1244 (9th Cir. 2008) ................................................................ 14

*Washburn v. Wright,*
    261 Cal.App.2d 789 (1968) .................................................................... 18

*Weller v. Am. Broad. Cos.,*
    232 Cal.App.3d 991 (1991) .............................................................. 17, 27

*Yow v. Nat'l Enquirer*,
    550 F.Supp.2d 1179 (E.D. Cal. 2008) ................................................................ 18

**Statutes**

Cal.Civ.Code §45 ........................................................................................ 16, 17, 18

Cal. Penal Code §422 ....................................................................................... 17, 18

Civil Code §48(a) ...................................................................................................... 28

Civil Code §48a ........................................................................................... 8, 28, 29

**Other Authorities**

CACI 430 .................................................................................................................... 28

CACI 431 .................................................................................................................... 28

CACI 1700 ............................................................................................................ 27, 28

Fed.R.Civ.P. 8 ...................................................................................................... 7, 13

Fed.R.Evid. 1001-1004 ............................................................................................ 23

CROWELL
& MORING LLP
ATTORNEYS AT LAW

OPPOSITION TO MOTION TO STRIKE;
CASE NO. 8:25-CV-1648

The Complaint—with its 58 pages, 354 allegations, 32 exhibits, and citations to case law—easily satisfies Fed.R.Civ.P. 8 pleading standard. That is all that's required to prevail against Defendant Chris Epting's Anti-SLAPP Motion ("ASM") seeking to strike the Fourth Cause of Action for defamation. Epting's error-riddled ASM should be denied for the following reasons:

First, the pervasiveness of the ASM's misrepresentations about what cases say and citations to two fabricated cases compel the conclusion that Epting's counsel irresponsibly relied on Artificial Intelligence ("AI") or is simply lying to the Court. For this reason alone, Epting's ASM should be denied.

Second, by selectively referencing Ninth Circuit cases governing Anti-SLAPP motions in federal court, Epting misrepresents what those cases make clear: The Rule 12(b)(6) standard applies to his motion, not the Rule 56 summary judgment standard. Thus, Epting's self-serving Declaration should be disregarded. So too should his absurd contention that Plaintiff Christopher Kluwe can only prevail by responding with "admissible evidence to overcome all applicable privileges and defenses" (ASM at 11)—*before any discovery has occurred*.

Third, under the proper 12(b)(6) standard, Epting's ASM must be denied if the Complaint, construed in the light most favorable to Kluwe, pleads a factual basis from which to plausibly infer that Epting is liable for defamation. The Complaint's robust factual allegations satisfy every element of this claim:

(1) *falsity* is satisfied by allegations that Epting's Facebook post (that attached a screenshot of only part of Kluwe's original Bluesky post) was different than Kluwe's post, and the difference materially altered the meaning of Kluwe's original post (*Masson v. New Yorker Mag.,* 501 U.S. 496, 517-520 (1991));

(2) *knowledge of falsity* (i.e., *actual malice*) is satisfied by allegations that Epting knew his post differed from Kluwe's original post (*see id.*), including allegations reflecting Epting's ill-will toward Kluwe, that Epting knew Kluwe did not mean to literally promote violence, about the timing and appearance of Epting's

Facebook post, and about Epting's inaction after observing that his post was interpreted by many as conveying that Kluwe literally promoted violence (*see Balla v. Hall,* 59 Cal.App.5th 652, 683-85 (2021)); and

(3) ***defamatory meaning*** is apparent on the face of Epting's Facebook post, which, unlike Kluwe's original Bluesky post, was susceptible to an interpretation that Kluwe had literally promoted violence (*see id.* at 685).

Because the proper pleading of these elements is all that is required for Kluwe to prevail, the ASM should be denied.

<u>Fourth</u>, this conclusion is not altered by the ASM's substantial reliance on irrelevant arguments and evidence:

- Epting seeks dismissal of a non-existent "false light invasion of privacy" claim, although he was informed that the Complaint pleads only false light *defamation*.

- The ASM contends that Civil Code §48a required Kluwe to seek a retraction of Epting's defamatory Facebook post, but that provision expressly applies only to publications "***in a daily or weekly news publication***." Epting's Facebook post does not qualify.

- The ASM's recitation of extrinsic material about Kluwe's so-called "provocative and incendiary statements" (ASM at 7) is irrelevant to the proper pleading of Kluwe's defamation claim. The section's sole purpose is to try to smear Kluwe by painting him as a threatening provocateur—but succeeds only in depicting him as interested in *non-violent* pranks and shenanigans and as having a potty mouth.

- The viability of Kluwe's defamation claim does not depend on pleading that Epting's conduct caused actual damages. The pleading of actual malice triggers presumed damages. In any event, the Complaint adequately pleads that Epting's misconduct was a substantial factor in Kluwe's reputational injury, pain and suffering, and economic losses.

Contrary to Epting's court filings—and ongoing social media rants—Kluwe is not trying to squelch constitutionally-protected speech, does not care that Epting disagrees with his politics, has no ulterior motives for suing Epting, and is not part of any conspiracy targeting Epting. Epting is named in this lawsuit for one reason:

The pre-Complaint investigation into why Kluwe was contacted by the police and fired from his coaching job for promoting violence led directly to Epting. Far from "frivolous," the case against Epting is well-founded—and certainly survives his unconvincing, error-ridden challenge to the pleadings.

## I.    FACTUAL BACKGROUND

Until February 2025, Christopher Kluwe, a former NFL punter, was a high school football coach at Edison High School ("EHS") in MAGA-dominated Huntington Beach ("HB"). Kluwe has a long history of social activism for liberal causes under John Lewis' "good trouble" flag. Compl.¶¶64-68. Consistent with this, on February 18, 2025, Kluwe appeared at a city council meeting to protest the proposed installation of a MAGA plaque at the local library. Kluwe detailed why he refers to MAGA as "a Nazi movement." At the close of his speech, he announced his intent to engage in "peaceful, civil disobedience." He then approached the dais where the city council members were seated, and he was arrested. Compl.¶¶102-110.

Nine days later, on February 27, 2025, EHS school officials fired Kluwe. They gave Kluwe no explanation other than the school was "getting too much attention." Compl.¶¶173,306.

A public outcry erupted, accusing EHS of unlawfully firing Kluwe for his city council protest. In response, on March 3, the Huntington Beach Union High School District ("HBUHSD") and EHS issued a press release to "clarify" the situation. Kluwe was discharged, it said, not for his city council appearance, but because he promoted violence on social media. It embedded the offending social media post, which was a screenshot of only part of a post that Kluwe had originally published on Bluesky. Compl.¶¶176-183,192-198. This altered version of Kluwe's post, the Complaint alleges, was *per se* defamatory and was created and published on Facebook by Epting.

Kluwe's original Bluesky post was a "quote post" in which he reshared a

CROWELL
& MORING LLP
ATTORNEYS AT LAW

post originally published by Pride at the Pier (PATP, a non-profit supporting the local LGBTQ community) on February 23. That PATP post attached a video of Kluwe and others encouraging people to stop harassing the innocent librarians about the MAGA plaque and, instead, channel their displeasure toward the city council. In the video, Kluwe suggested that people "find out where the council members work [and] go review bomb that." Compl.¶¶124-136. PATP's original Bluesky post—with the closed-caption video clearly displaying words like "review bomb"—is available online. Compl.,Ex.8:

https://bsky.app/profile/prideatthepier.bsky.social/post/3livjg5dezk2q.

The text of PATP's post asked people to stop attacking the librarians and to "please direct your concerns to the council members." Compl.¶130,Ex.8. In Kluwe's quote post of this PATP post, he added his own text. It started with the words "And PSA" (referred to in the Complaint as the "PSA" post) and encouraged people to stop harassing the librarians and, instead: "Go fuck with the city council. Find out where they work, and blow *those* places up." Compl.¶¶134-35.

On February 26, 2025, after days of ridiculing Kluwe on Facebook on various topics (Compl.¶¶120-121,137-145), Epting published a screenshot of the top part of Kluwe's full Bluesky PSA post—which contained only Kluwe's text that ended with the phrase "blow *those* places up." Epting added a short message to his post: "I hope the library renounces this kind of language and behavior." Epting published his post on a conservative Facebook community page called HB Insider. Compl.¶¶146-156. A side-by-side comparison of Kluwe's original Bluesky post and Epting' HB Insider post appears in the Complaint and is included below. Compl.¶¶152-155,Exs.14-15.

In other words, Epting's version detached the PATP message and video that Kluwe had quote posted and encouraged people in a conservative Facebook group to interpret the now-altered post as representing a real threat that needed to be taken seriously.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



19    Epting's alteration to Kluwe's Bluesky made it susceptible to an interpretation

20    that Kluwe had literally promoted violence. And such interpretations quickly

21    materialized. Comments on Epting's HB Insider post accused Kluwe of literally

22    promoting violence, threatening terrorism, and being unfit to coach high school.

23    Group members also said they forwarded Epting's post to the police and to EHS.

24    Compl.¶¶157-159,Ex.13. Within several hours of Epting publishing his HB Insider

25    post, the HB police department called Kluwe and pressured him to remove his

26    Bluesky post. Compl.¶¶160-61. The very next day, EHS fired him.

27

28

## II.    ARGUMENT

### A.    Defendant Misrepresents Case Law, Apparently Caused by AI Misuse

The numerous misrepresentations in Epting's ASM strongly suggest reliance on AI to generate parts of the brief without checking the integrity of the cites. The ASM cites two cases that do not exist (*Pope* and *Jasperson*); they appear to be AI hallucinations. We identified over 20 examples of false quotes and propositions, which are summarized in Exhibit A.

Where generative AI is used to create any portion of a brief, this Court's Standing Order requires a declaration certifying that counsel has verified the accuracy of AI-generated content and compliance with Rule 11. Defendant's failure to do so justifies denial of his Motion. *See Grant v. Long Beach*, 96 F.4th 1255, 1257 (9th Cir. 2024) (striking AI-tainted briefs and dismissing appeal); *Mavy v. Comm'r of Soc. Sec. Admin.,* 2025 WL 2355222, at *9 (D.Ariz. Aug. 14, 2025) (striking AI-tainted opening brief); *Lacey v. State Farm Gen. Ins.*, 2025 WL 1363069, at *4 (C.D.Cal. May 5, 2025) (striking AI-tainted briefs); *see also United States v. Hayes,* 763 F.Supp.3d 1054 (E.D.Cal. 2025) (reviewing types of sanctions imposed for misrepresentations stemming from AI-generated briefs). At a minimum, all mispresented case citations should be stricken. The AI misuse exacerbates the already-frivolous ASM and a pattern of flouting rules—including the Standing Order, Local Rules, and ethical code. Sasse Decl.¶¶ 3,13-20. Sanctions also may be warranted under C.C.P. §425.16(c) for any portion of the ASM found to be frivolous. *Nirschl v. Schiller*, 91 Cal.App.5th 386, 408-409 (2023).

### B.    Plaintiff Does Not Contest Epting's Showing of a Protected Activity

Kluwe does not contest that Epting satisfied the first step of the Anti-SLAPP analysis by articulating a protected activity under C.C.P. §425.16(e).

### C. Plaintiff Easily Satisfies His Showing of a Viable Defamation Claim

In the second step of the Anti-SLAPP analysis, the Court evaluates the viability of Kluwe's defamation claim using the Rule 12(b)(6) standard. *CoreCivic v. Candide Grp.,* 46 F.4th 1136, 1143 (9th Cir. 2022); *Herring Networks v. Maddow*, 8 F.4th 1148, 1155-56 (9th Cir. 2021); *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress,* 890 F.3d 828, 832-35 (9th Cir. 2018); *Rogers v. Home Shopping Network,* 57 F.Supp.2d 973, 983 (C.D.Cal. 1999) (approved in *Planned Parenthood*, 890 F.3d at 834 and *Metabolife Intern v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)). Thus, the sole question before the Court is whether the Complaint states a claim for defamation—which it clearly does.

As *Rogers* underscores, at the pleading stage, Anti-SLAPP motions fail if the complaint satisfies Federal Rule 8's liberal notice standard. 57 F.Supp.2d at 982-83. Rule 8 does not require "detailed factual allegations" or a "probability" of success on the merits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (Rule 8(a) "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the allegations"). It certainly does not require "admissible evidence to overcome all applicable privileges and defenses" (ASM at 11) or ban allegations made on "information and belief" (*Id*. at 10,11,14), which the Federal Rules permit. *Soo Park v. Thompson,* 851 F.3d 910, 928 (9th Cir. 2017); *GlobalTranz Enters. v. Shipper's Choice Glob.*, 2017 WL 11609546, at *2-3 (D.Ariz. Feb. 23, 2017).[1] A claim need only have "facial plausibility," which is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts construe the Complaint in the light most favorable to plaintiff and take all

---

[1] Defendant wrongly contends (ASM at 14) that allegations made upon information and belief are not allowed, citing an inapplicable state court case (*Evans*) and a federal case that says nothing about such pleadings (*Chamndany*). *See* Ex.A.

allegations and reasonable inferences as true. *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008). Because Kluwe has met this standard, the ASM must be denied.

Trying to avert this outcome, the ASM improperly attached Epting's Declaration, most of which is irrelevant. In paragraph 8, however, Epting tries to refute the Complaint's allegations of actual malice—disputed facts at the heart of the defamation claim—with bald assertions, free from cross-examination, and without essential discovery. *Rogers,* 57 F.Supp.2d at 981 (particularly when issues of motive and malice are material, discovery is essential before dispositive motions are considered). Because the Court may not consider any material beyond the pleadings under the 12(b)(6) standard, Epting's Declaration should be disregarded. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003); *see Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) (extrinsic evidence supporting Anti-SLAPP motion must be excluded without conversion to summary judgment).

The Court likewise should disregard Epting's bogus espousal of a summary judgment standard. While a summary judgment-like standard applies in ***state court*** at the pleading stage, the Rule 12(b)(6) standard applies here. Seeking a different outcome, Epting selectively quotes federal cases setting forth the standard for judging Anti-SLAPP motions in federal court and contends that a summary judgment standard applies. His argument is simply wrong (if not AI-generated). It conflicts with the Ninth Circuit's clear instructions on this point. While Anti-SLAPP attacks on plaintiffs' ***proof*** are judged by a summary judgment standard, that standard applies only after Rule 56's procedural safeguards have been fulfilled—including discovery. *See Gunn,* 65 F.4th at 1119 (where an Anti-SLAPP motion "asserts 'a factual challenge,' courts must treat the motion to strike as 'a motion for summary judgment,' triggering discovery"); *Planned Parenthood,* 890 F.3d at 833-834 (Anti-SLAPP provisions that eliminate Rule 56's procedural safeguards do not apply in federal court); *Rogers,* 57 F.Supp.2d at 982 (if an Anti-

SLAPP motion challenges the sufficiency of proof, "federal standards regarding discovery and the timing of motions seeking judgments on the facts" apply).

Consistent with the Ninth Circuit's instructions, district courts routinely refuse to consider Anti-SLAPP motions under the Rule 56 standard before discovery has occurred. *See e.g.*, *Silverstein v. E360Insight,* 2008 WL 1995217, at *2 (C.D.Cal. May 5, 2008) (because the Anti-SLAPP motion was filed "prior to the completion of discovery, the standards governing a motion to dismiss pursuant to Rule 12(b)(6) apply"); *Gralow v. City of Palos Verdes Ests*., 2024 WL 3001475, at *5 (C.D.Cal. May 22, 2024) (rejecting defendant's declaration attached to Anti-SLAPP motion and refusing to convert from 12(b)(6) to summary judgment standard without discovery and Rule 56 safeguards); *accord Aeroplate v. Arch Ins.*, 2006 WL 3257487, at *4-5 (E.D.Cal. Nov. 9, 2006); *Penrose Hill v. Mabray*, 479 F.Supp.3d 840 (N.D.Cal. 2020); *Freeman v. Stater Bros. Mkts.,* 2024 WL 5416669, at *8 (C.D.Cal. Nov. 26, 2024); *Jones v. Hollywood Unlocked*, 2022 WL 18674459, at *6 (C.D.Cal. Nov. 22, 2022); *Harrell v. George*, 2012 WL 3647941, at *3 (E.D.Cal. Aug. 22, 2012).

Even if Epting had forthrightly asked the Court to consider his Declaration and convert his ASM to a summary judgment standard under Rule 12(d) (*rather than simply pretending that standard applies)*, conversion would be improper. Courts consistently refuse conversion from a 12(b)(6) to a summary judgment standard when discovery is in its early stages. *Avina v. Patenaude & Felix,* 2021 WL 5990037, at *7 (S.D.Cal. Dec. 17, 2021) (defendant's submission of a "simple declaration" with "bare attestations" seeking to dispute material facts in the complaint "prior to the commencement of discovery is the "paradigmatic" circumstance "in which courts…decline conversion under Rule 12(d)") (collecting cases); *Barnes v. Sea Haw. Rafting*, 493 F.Supp.3d 972, 976 n.2 (D.Haw. 2020) (courts have "found cases in the early stages with little discovery between the parties and scant evidence submitted by the parties to be inappropriate for

conversion under Rule 12(d)" (collecting cases)), *aff'd*, 2022 WL 501582 (9th Cir. Feb. 18, 2022); *see also Portland Retail Druggists v. Kaiser Found. Health Plan*, 662 F.2d 641, 645-646 (9th Cir. 1981).

Under the proper 12(b)(6) standard, Plaintiff has properly pled the elements of the defamation claim, requiring denial of Epting's ASM.

### D.    Plaintiff Asserts a Claim for Defamation (Not Invasion of Privacy), Which Is Sufficiently Pled

The Complaint's Fourth Cause of Action asserts "False Light Defamation" under California Civil Code §§45 and 45a, not "invasion of privacy." *See* Compl.¶316. The upshot of Epting's intentional mislabeling of Kluwe's defamation claim as asserting "invasion of privacy" is that much of his Motion (*e.g.*, sections II.C.1. & C.3) is irrelevant.

False light claims stemming from a defamatory writing are equivalent to libel claims governed by Cal.Civ.Code §§45 and 45a. *Selleck v. Globe Int'l,* 166 Cal.App.3d 1123, 1133-34 (1985); *Solano v. Playgirl*, 292 F.3d 1078, 1083 n.2 (9th Cir. 2002). Such claims "involve[] the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Balla,* 59 Cal.App.5th at 675. If Kluwe is deemed a public figure, he also will need to establish Epting's "actual malice." *Id.* at 676. The Complaint adequately pleads all these elements.

### 1.    Plaintiff Sufficiently Pleads *Per Se* Defamatory Meaning

Kluwe sufficiently pleads that Epting's HB Insider post was *per se* defamatory. A publication is defamatory if it exposes another "to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal.Civ.Code §45. It is defamatory on its face—or *per se* defamatory—if a reader "could understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter." *Balla,* 59 Cal.App.5th at 685; Cal.Civ.Code §45a.

Whether a publication is *susceptible* to a defamatory interpretation "is a question for the court and, if so, whether or not it was so understood is a question for the jury." *MacLeod v. Trib. Pub.,* 52 Cal.2d 536, 546 (1959). To judge such susceptibility, courts analyze the "totality of the circumstances," including the nature and full content of the communication, the context in which the statement was made, and the "knowledge and understanding of the audience to whom the publication was directed." *Hawran v. Hixson*, 209 Cal.App.4th 256, 290 n. 11 (2012); *Franklin v. Dynamic Details,* 116 Cal.App.4th 375, 390 n.1 (2004). Courts review "not only the actual language used, but the sense and meaning that may be fairly presumed to have been conveyed to those who read it." *Selleck,* 166 Cal.App.3d at 1331.

Even if a defamatory insinuation leaves room for an innocent interpretation, the question is whether the statement "reasonably convey[ed] a defamatory meaning…to those to whom it was published." *Selleck,* 166 Cal.App.3d at 1130-311; *see Weller v. Am. Broad. Cos.,* 232 Cal.App.3d 991, 1002 (1991) (if the publication could be reasonably understood as implying a defamatory or innocent meaning, a jury must decide how it was ultimately understood); *accord Burnett v. Nat'l Enquirer,* 144 Cal.App.3d 991, 1013-14 (1983).

Here, Epting's publication of only part of Kluwe's PSA post was obviously susceptible to a defamatory meaning on its face: It created the false impression that Kluwe literally promoted violence against city council members (as opposed to "blowing up" their phone lines). Implied accusations that a person behaved in a violent or threatening manner, advocated for violence, or committed a crime by making violent threats (*see* Cal. Penal Code §422) constitute libel *per se. Tilkey v. Allstate Ins.,* 56 Cal.App.5th 521, 552 (2020) (defamation *per se* where "the gist or sting" of defendant's statement was that plaintiff "behaved in a physically violent or threatening manner"); *Washburn v. Wright*, 261 Cal.App.2d 789, 796 (1968) (a statement that by innuendo accused an organization of "advocating obnoxious ends

or the use of illegal violence" would constitute libel *per se*); *Yow v. Nat'l Enquirer*, 550 F.Supp.2d 1179, 1183 (E.D.Cal. 2008) (under California law, "[s]tatements which falsely impute the commission of a crime are libelous on their face").

The implied accusation that Kluwe promoted violence also "ha[d] a tendency to injure him in his occupation" (Cal.Civ.Code §45) by its insinuation that he is unfit to coach young men in high school. *See Cepeda v. Cowles Mags. & Broad.*, 328 F.2d 869, 870 (9th Cir. 1964) (a sportswriter's statements that a professional baseball player was a slacker, not a team player, and has "doghouse status" for being temperamental and uncooperative were *per se* defamatory). It also subjected him to "contempt, opprobrium, ridicule, and humiliation" (Cal.Civ.Code §45) by suggesting "loss of control." *Condit v. Nat'l Enquirer,* 248 F.Supp.2d 945, 960, 968-69 (E.D.Cal. 2002) (false implication that plaintiff had become "upset, enraged, and engaged in a heated phone screamfest" was reasonably susceptible to defamatory meaning on its face).

Additionally, the Complaint's allegations about what Epting's Facebook audience understood him to mean (*Hawran,* 209 Cal.App.4th at 290 n.11; *Selleck,* 166 Cal.App.3d at 1331) confirms that his post was defamatory *per se*. Many of the 100+ comments on Epting's HB Insider post reflected interpretations that Kluwe was literally "promoting violence," made a "Penal code section 422 terrorist threat" and "credible terrorist threats"; should be arrested, reported to the police, and "belongs in jail"; is "deranged," a "nutcase," a "sicko," and an "unstable" person who "needs to be fired" and is unfit to be a high school coach or be around children. Compl.¶¶157-159,332,Ex.13. Likewise, the HBUHSD Defendants interpreted the cropped post as promoting violence. The California Supreme Court's guidance in *MacLeod* is apt here:

> It would be a reproach to the law to hold that a defendant intent on destroying the reputation of a political opponent by falsely labeling him [with a politically-charged epithet] could achieve his purpose without liability by casting his defamatory language in the form of an

CROWELL & MORING LLP
ATTORNEYS AT LAW

insinuation that left room for an unintended innocent meaning.
52 Cal.2d at 551 (considering the political climate and context, insinuating that
plaintiff was a Communist was defamatory *per se*). In short, the Complaint
sufficiently pleads that Epting's post was *per se* defamatory.

Nothing in Epting's ASM alters this conclusion. The thin argument (ASM at
29-30) that his HB Insider post is not *per se* defamatory is refuted by all the
foregoing.[2] He cites *Balla* for the defamation *per se* standard, but that case's
analysis of out-of-context statements favors Kluwe. He cites *Jasperson v. Schaefer*,
366 F.Supp.3d 1035 (E.D.Cal. 2018), which does not exist. He misrepresents
*Kapellas v. Kofman*, 1 Cal.3d 20 (1969) (which did *not* address whether defamation
*per se* had been properly pleaded or say anything about interpreting "plaintiff's own
words, without distortion or addition") and *Flowers*, 310 F.3d at 1133 (which did
*not* hold that "republication of a plaintiff's own words, without distortion or
addition, cannot support a claim for defamation per se"). *See* Ex.A.

### 2.    Plaintiff Sufficiently Pleads Falsity

Kluwe also sufficiently pleads ***falsity***, which is established where efendant's
statement "declares or implies a provably false factual assertion." *Balla,* 59
Cal.App.5th at 678. Courts review the totality of the circumstances to judge
whether the "gist or sting" of the publication was false. *Id.*

The related element of ***knowledge of falsity*** (*i.e.,* ***actual malice***) requires a
showing that defendant "knew the statement was false or acted with reckless
disregard of whether or not it was false." *Good Gov't Grp. of Seal Beach v. Super.
Ct.,* 22 Cal.3d 672, 510 (1978); *see New York Times v. Sullivan*, 376 U.S. 254, 279-
280 (1964). These elements are interrelated, and both are sufficiently pled here.

Epting's primary argument against falsity, knowledge of falsity, and all other

---

[2] It also contradicts Epting's prior position that "[t]here is nothing ambiguous about
that language" of the truncated PSA post, which "is the language of violence,
directed at identified political opponents." Sasse Decl. ¶ 21.

elements of the defamation claim, is that his repost simply quoted verbatim Kluwe's original Bluesky post. Purporting to repost content on social media is analogous to using quotation marks around a statement—which "indicates to the reader that the passage reproduces the speaker's words verbatim." *Masson,* 501 U.S. at 511. The U.S. Supreme Court's decision in *Masson* governs the analysis of falsity and actual malice in such contexts.

In *Masson*, the plaintiff claimed that an author's purported quotes either altered plaintiff's original words or removed context that plaintiff argued affected the statements' meaning. According to the Court, altered quotations "may be a devastating instrument for conveying false meaning." *Id.* at 511-512. In such contexts, the test for **falsity** requires a showing of (a) a difference between the plaintiff's original statement and the defendant's purported quotation of it and (b) a material change in meaning between the two. *Id.* at 513-517. **Actual malice** is established by showing that the defendant knew that his quotation differed from the original or acted with reckless disregard of a difference. *Id.* at 517-520.

Applying this standard, *Masson* found that the plaintiff proffered enough evidence from which a reasonable jury could find that (a) many of the published quotes were alterations of what plaintiff actually said—as judged by a comparison with the author's audio recordings of the interviews, (b) "the published passages differ materially in meaning from the tape-recorded statements," and (c) the author published the quotations "with knowledge or reckless disregard of the differences between what [the plaintiff] said and what was quoted." *Id.* at 520-521. Thus, summary judgment for defendant was improper on the questions of falsity and actual malice.

In *Price v. Stossel*, 620 F.3d 992, 1002 (9th Cir. 2010), the Ninth Circuit applied *Masson* to judge the falsity of a video clip. A news program ran a story about self-serving religious leaders. It included a video clip of part of a minister's sermon in which he appeared to brag about his own wealth. In context, however,

the minster clearly was telling a parable about a hypothetical rich man to teach that material wealth is no substitute for spiritual fulfillment. Relying on *Masson,* the Ninth Circuit held that, because the news program indisputably took the video clip out of context, and the manner in which it did so materially altered the minister's original meaning, the minister established falsity—even though the clip had reproduced the minister's exact words and even though he was, in fact, wealthy. *Id.* at 1000-03. The court emphasized "the special qualities of quotations as a literary convention" and that "when quotations are used, loyalty to the speaker's intended meaning is more important than a precise reproduction of the words spoken." *Id.* at 1001. The court observed that "an exact quotation out of context can distort meaning, although the speaker did use each reported word." *Id.* at 1002 (quoting *Masson*, 501 U.S. at 515); *see also Huntington Beach City Council v. Super. Ct.,* 94 Cal.App.4th 1417, 1432 (2002) ("context may show that a statement that, in one sense, can be said to be literally true can still be materially misleading").

Similarly, in *Balla*, in a campaign advertisement, a political candidate accurately quoted a statement he lifted from an appreciation certificate that the city mayor had given him and others to thank them for their volunteer service. He did so in a way that implied (falsely) that the mayor supported his candidacy for office. Relying on *Masson*, the court found that the tactic suggested knowledge of falsity. *Balla,* 59 Cal.App.5th at 665, 688-89; *see also Crane v. Ariz. Republic*, 972 F.2d 1511, 1524 (9th Cir. 1992) (newspaper's accurate quote created the false impression that plaintiffs were lying by omitting key contextual information, creating a jury question about actual malice).

Here, the Complaint sufficiently pleads falsity under *Masson*'s two-pronged inquiry. First, it alleges a difference between what was actually said and what was quoted through a side-by-side comparison of Kluwe's original Bluesky post and Epting's HB Insider post. Compl.¶¶152-154,Exs.14,15. The difference is indisputable.

Second, this indisputable difference materially changed the meaning of Kluwe's Bluesky post. Kluwe's post was a "quote post"—a Bluesky feature that permits users to share someone else's content while adding their own text or commentary. Compl.¶¶133-134. Because the whole point of Kluwe's quote post was to comment on PATP's message and video, the detachment of that quoted material fundamentally altered his post's content, context, and meaning.

Moreover, the text that Epting added to his HB Insider post—*i.e.,* "I hope the library renounces this kind of language and behavior"—encouraged people to interpret the cropped PSA post as representing a real threat (rather than as simply hyperbolic language) that needed to be taken seriously and addressed. Epting's post was "calculated to induce the audience to which [it was] addressed to conclude that [it was] factual"—*i.e.,* that Kluwe literally promoted violence in his PSA post. *Good Government,* 22 Cal.3d at 681.

The truncated version of Kluwe's original post, along with Epting's note, changed the original post's meaning—which was unmistakably about non-violent "review bombing" and "blowing up" phone lines to object to the city council's planned MAGA plaque—by altering it in a way that made it susceptible to an interpretation that Kluwe had literally promoted violence. If there is any question about the materiality of the change in meaning, it is a jury issue. *See Masson*, 501 U.S. at 520-525. Thus, both elements of falsity are sufficiently pled here.

As with other parts of Epting's ASM, his challenge to the falsity element is riddled with misrepresentations. He misstates what *Fellows* says about the standard governing false light claims (ASM at 15, 20)—which is irrelevant in any event because Kluwe does not assert such a claim. His representations about *Khawar* and *Flowers* (ASM at 16) also are grossly inaccurate. *See* Ex.A.

Apparently realizing the impossibility of refuting falsity, Epting contends that Kluwe will be unable to **prove** the difference between his original Bluesky post and Epting's HB Insider post (and Epting's knowledge of the difference) because

Kluwe deleted the original post. ASM at 23. However, the original PATP post that

Kluwe quote posted still exists, and Kluwe deleted his Bluesky quote post only

after the police contacted him shortly after Epting published his HB Insider post.

Compl.¶155. The Federal Rules permit other evidence of a writing's contents when

an original is not available. Fed.R.Evid. 1001-1004. Kluwe is not required to

proffer such proof at the pleadings stage.

### 3.    Plaintiff Sufficiently Pleads Actual Malice

Under *Masson*, the Complaint also sufficiently alleges actual malice—*i.e.,*

that Epting knew that his HB Insider post differed from Kluwe's original Bluesky

post or that Epting acted with reckless disregard of whether they were different or

not. 501 U.S. at 517-520.

Notably, actual malice is almost always proven by circumstantial evidence

due to the rarity of defendants' admission of knowledge of falsity. *Balla,* 59

Cal.App.5th at 683. Among factors considered are anger and hostility toward the

plaintiff, animosity due to political differences, ignoring clarifying comments,

relying on unreliable sources, and relying on sources known to be biased against the

plaintiff. *Id.* at 683-84; *Reader's Digest v. Super. Ct.,* 37 Cal.3d 244, 258 (1984).

Here, the factual allegations reveal Epting as an active denigrator of political

liberals generally (indeed, he was named one of *OC Weekly's* "scariest people" for

this reason) and Kluwe specifically. Compl.¶¶83-94,120-121,138-145. They reflect

that Epting strongly disagreed with Kluwe's political messages and was disgusted

that any HB residents would want him to run for city council. The allegations also

reasonably suggest that Epting purposefully transferred Kluwe's PSA post from an

audience friendly to Kluwe (Bluesky) to an audience Epting knew would be hostile

to Kluwe's liberal politics (HB Insider) because he wanted to exponentially

increase the likelihood that any susceptibility to misinterpretation of the post would

be exploited to harm Kluwe. *See* Compl.¶¶82,114-121,137-146,326,339-41. The

factual allegations reasonably imply that Epting's ill-will for Kluwe eclipsed any

commitment to truthfulness.

The Complaint also alleges facts from which to plausibly infer that Epting saw Kluwe's original PSA post and is the person who first created the truncated version of it. Specifically, after Kluwe published his original PSA post on Bluesky on February 23, 2025 to his 100K+ followers, nothing remarkable occurred for several days. Then, in the morning of February 26, 2025 (at 8:01 am PT and 9:24 am PT), Epting posted the screenshot of only part of Kluwe's PSA post on HB Insider for the first time. Within several hours of that post, the local police contacted Kluwe (at 1:46 pm PT) to pressure him to remove his Bluesky post. Compl.¶¶146-161. Within 24 hours (at 8:25 am on February 27), EHS summoned Kluwe to a meeting where he was fired. Compl.¶172. No such commotion had occurred until shortly after Epting's HB Insider post.

Additionally, the screenshot of Kluwe's PSA post published by Epting displayed "2d" in the upper right-hand corner. Compl.¶156; Ex.14. The "2d" signifies that the screenshot was taken two days after Kluwe originally posted it—or on February 25, 2025. In other words, the screenshot was taken just one day before Epting's early-morning post on HB Insider. The short time-frame between when the truncated screenshot was captured and when Epting posted it suggests that he was the one who first captured and posted it.

Further corroborating this inference are allegations that Epting's HB Insider post was the first occasion that this version of Kluwe's PSA post appeared on social media. All other reposts of the cropped version of the PSA post uncovered during our investigation and referenced in the Complaint occurred after Epting's. And all look identical to Epting's HB Insider post—with the same crop lines and the "2d" in the upper right-hand corner. *See* Compl.¶¶185,321,Exs.26,29.

Further evidence that Epting had seen Kluwe's original PSA post and knew its meaning differed from Epting's HB Insider post is his ultimate ***admission*** that he never thought Kluwe meant to literally promote violence. Compl.¶¶191,203,

335,Ex.28. (Notably, these admissions came on March 2 and 3—only *after* Kluwe's February 27th termination—and were buried in comment threads of other people's Facebook posts.)

At the time of Epting' HB Insider post on February 26, despite knowing that Kluwe did not mean to promote violence, Epting facilitated and encouraged others to believe just that by posting a screenshot of only part of Kluwe's full PSA post accompanied by a deliberately equivocal statement—"I hope the library renounces this kind of language and behavior" (Compl.¶151)—"in the hope of insinuating a defamatory import to the reader" or with knowledge or "reckless disregard of whether his words would be interpreted by the average reader as defamatory statements of fact." *Good Government,* 22 Cal.3d at 685.

Further, comments on Epting's post signaled that HB Insider group members interpreted Epting's post as he surely intended—they disparaged Kluwe for literally promoting violence. Compl.¶¶157-58,332,Ex.13. Did Epting step in to correct these supposedly wrong interpretations, clarify his post, or remove it altogether after these interpretations began quickly appearing? No. Did Epting inform the group that Kluwe had published three clarifying posts and that he *believed* Kluwe's assertion that he was not promoting violence? No. *Cf. Church of Scientology of Cal. v. Dell Pub.,* 362 F.Supp. 767, 770 (N.D.Cal. 1973) (continued publication of libelous writing after request for retraction and information indicating falsity can be considered as circumstantial evidence of actual malice).

Instead, later on February 26, Epting went to Kluwe's Bluesky account yet again, took a screenshot of only one of Kluwe's clarifying posts (in which Kluwe said that the "Nazis" had "deliberately taken [his PSA post] wildly out of context"), reposted it on HB Insider, and added a snide remark: "'Nazis'? Let me guess, 'context.'" Compl.¶166,Ex.20. Following Epting's lead, others discounted Kluwe's clarification that his original post had been "taken out of context" as a disingenuous, post hoc rationalization to cover his back. Compl.¶190 ("So why

would he need to post this after his original post if his original post wasn't so wrong. He intended for people to take it the wrong way otherwise he wouldn't have posted that."); Ex.13 (referring to Kluwe as a "coward and a hypocrite" for trying to back-track from his violent language after he got in trouble).

Conspicuously absent from the ASM (and meet and confer communications) is any indication about *where* Epting supposedly obtained the cropped version of the PSA post if he did not create it himself. If he acquired it from another source, who was it? Were they reliable? Did Epting check Kluwe's Bluesky account to confirm the accuracy of the image? *See Khawar v. Globe Int'l,* 19 Cal.4th 254, 277 (1998) (evidence of inaction suggesting a deliberate decision not to acquire knowledge of facts to confirm probable falsity of statements is probative of actual malice). Epting's silence on these questions leaves in place the strong implication that he, in fact, captured the image himself on Kluwe's Bluesky account. And when Epting did so, he must have seen Kluwe's full PSA quote post—which is the only version Kluwe ever posted.

Read in the light most favorable to Kluwe, the Complaint alleges a more than plausible factual basis for asserting Epting's actual malice—particularly given that the relevant "facts are peculiarly in the possession and control" of Epting. *See Soo Park,* 851 F.3d at 928. A strong case for Epting's knowledge of falsity already appears on the face of the Complaint, and we expect it to be bolstered by discovery.[3] In the unlikely event that discovery reveals that Epting is just an innocent bystander in these events, Plaintiff will drop the defamation claim against him. But the claim is properly pled.

Epting's efforts to suggest otherwise fail. He blatantly misrepresents *Barger* (ASM at 16-17, 23), which did *not* "hold[] no malice where publisher relied on

---

[3] For example, despite Epting's effort to obfuscate the issue in his improper Declaration, he already has admitted that he captured Kluwe's PSA post on Bluesky. *See* Sasse Decl. ¶ 22 (quoting Becker: "Mr. Epting…simply reposted the screenshot as it appeared on Bluesky").

plaintiff's own words and left readers to judge." *See* Ex.A. Epting appears to cite *Time v. Pape*, 401 U.S. 279 (1971) (ASM at 22) for the proposition that, if he rationally interpreted the ambiguous PSA post to literally promote violence—*which he indisputably did not do*—then actual malice is absent. Putting aside that fatal distinction, *Time* was not decided on the pleadings. There, a police officer sued *Time* journalists for defamatory statements in an article about police brutality based on a government report. At ***trial***, substantial evidence demonstrated that the authors had carefully read and investigated the government report to verify their interpretation. The same is obviously not true of Epting at the pleading stage.

### 4.    Plaintiff Sufficiently Pleads Causation

Epting's challenge to Kluwe's pleading of causation has no merit. Because Kluwe has adequately pled actual malice, injury is presumed. No additional pleading or proof of injury or damages are required. *Weller v. Am. Broad. Co.,* 232 Cal.App.3d 991, 1014-15 (1991) (recovery of presumed damages is available if plaintiff proves knowledge of falsity or reckless disregard for the truth, whether or not he recovers actual damages); *see* CACI 1700.

Nonetheless, Kluwe adequately pleads that Epting's defamatory Facebook post was a "substantial factor" in producing Kluwe's reputational harm, pain and suffering, and economic losses (Compl.¶¶345-347)—which is the proper test for causation under California law. *See Soule v. Gen. Motors,* 8 Cal.4th 548, 572 (1994) ("[a] tort is a legal cause of injury" when it is "a substantial factor in producing the injury"); CACI 1700 (liability for defamation per se imposed where it is a "substantial factor" in causing plaintiff's harm); CACI 430 (defining "substantial factor" in causing harm); CACI 431(a defendant "cannot avoid responsibility just because some other person…was also a substantial factor in causing" plaintiff's harm); *Rutherford v. Owens–Illinois,* 16 Cal.4th 953, 978 (1997) (the "substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical").

Epting's ASM does nothing to refute this conclusion and continues to misrepresent case law. For all cases cited at pages 24-26 (other than *Iqbal*), Epting misrepresents what they say. *See* Ex.A. As for *Pope v. Chronicle Publ'g*, 95 Cal.App.3d 607 (1979), it does not exist.

### 5.    Civil Code §48a Does Not Apply

Epting argues that, under Cal.Civil Code §48a, Kluwe must plead special damages because he failed to demand a retraction of Epting's Facebook post. For libel claims, Section 48a expressly applies only to publications "***in a daily or weekly news publication.***" Its "coverage extends only to those whose daily occupation it is to communicate the news rapidly." *Condit,* 248 F.Supp.2d at 960; *see Denney v. Lawrence,* 22 Cal.App.4th 927, 939 (1994) ("section 48a was intended to protect only those engaged in the *business* of news dissemination"); *Burnett*, 144 Cal.App.3d at 1001-1005 (magazines are not covered by the retraction requirement unless they qualify "as a newspaper…within the contemplation of section 48a). Epting's Facebook post is clearly not covered by Section 48a. *See Hicks v. Bradford,* 2022 WL 20689541, at *7 (C.D.Cal. Dec. 13, 2022) (Section 48a did not apply to a libelous Facebook post).

To support his frivolous argument to the contrary, Epting continues to misrepresent cases. *Reader's Digest*, 37 Cal.3d at 244 and *Elias v. Rolling Stone,* 872 F.3d 97 (2d Cir. 2017) (ASM at 27) do not address (or even mention) the applicability of §48a. *See* Ex.A.

## III.    CONCLUSION

For the foregoing reasons, the ASM should be denied, and sanctions in the form of attorneys' fees should be awarded to Plaintiff, if the Court deems them proper. If the Court finds that any aspect of the defamation claim is not properly pleaded, Plaintiff requests that the Court defer a decision on Epting's Anti-SLAPP motion until after an opportunity to amend the Complaint. *See Verizon Del. v. Covad Commc'ns,* 377 F.3d 1081, 1091 (9th Cir. 2004).

1    Dated:  September 18, 2025                    CROWELL & MORING LLP

2

3                                                  By: */s/ Daniel A. Sasse*
                                                   _____
4                                                  Daniel A. Sasse
                                                   David C. Griffith
                                                   Jazmine G. Buckley
5
                                                   *Attorneys for Plaintiff Christopher*
6                                                  *Kluwe*

7    Dated:  September 18, 2025                    LAW PRACTICE OF ANNE
8                                                  BRAFFORD

9

10                                                 By: */s/ Anne M. Brafford*
                                                   _____
11                                                 Anne M. Brafford

                                                   *Attorneys for Plaintiff Christopher*
12                                                 *Kluwe*

13

14   Dated:  September 18, 2025                    ACLU Foundation of Southern California

15

16                                                 By: */s/ Peter Eliasberg*
                                                   _____
17                                                 Peter Eliasberg
                                                   Jonathan Markovitz
18
                                                   *Attorneys for Plaintiff Christopher*
19                                                 *Kluwe*

20                                                 *Please be advised that the ACLU*
                                                   *Foundation of Southern California*
21                                                 *represents Plaintiff Kluwe solely in*
                                                   *connection with his First-Third*
22                                                 *Causes of Action asserted against*
                                                   *the HBUHSD Defendants. The*
23                                                 *ACLU does not represent Plaintiff*
                                                   *Kluwe in connection with the Fourth*
24                                                 *Cause of Action asserted against*
                                                   *Defendant Epting.*

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Christopher Kluwe, certifies that this brief contains 6,919 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 18, 2025          /s/ Daniel A. Sasse
                                                        Daniel A. Sasse

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to Counsel for all Parties, who are CM/ECF registrants.

*/s/ Daniel A. Sasse*
Daniel A. Sasse