William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
**FREEDOM X**
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018

Counsel for Defendant, *Christian Epting*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER KLUWE,<br><br>Plaintiffs,<br><br>vs.<br><br>HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT; ET AL.,<br><br>Defendants. | Case No. 8:25-cv-1648 FWS (JDEx)<br><br>*Hon. Fred W. Slaughter*<br><br>**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   October 23, 2025<br>Time:  10:00 a.m.<br>Ctrm:  10D<br><br>Compl. Filed: August 8, 2025 |

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

INTRODUCTION ..............................................................................1

ARGUMENT ..................................................................................2

I.     PLAINTIFF CONCEDES PRONG ONE – EPTING'S SPEECH IS
       PROTECTED .........................................................................2

II.    RULE 56 APPLIES BECAUSE BOTH SIDES RELY ON
       EVIDENCE AND PLAINTIFF FILED NO RULE 56(d)
       DECLARATION ......................................................................3

III.   EVEN UNDER 12(B)(6), PLAINTIFF'S DEFAMATION PER SE
       CLAIM HAS NO POSSIBILITY OF SUCCESS ON THE MERITS ..........5

       A.    Defendant's Statement Must Be Defamatory On Its Face To
             Qualify As Per Se ...........................................................5

       B.    Plaintiff Cannot Establish Falsity .....................................15

       C.    Plaintiff Does Not Allege Actual Malice..............................16

             1.    Plaintiff's Timeline Allegations Are Speculative And
                   Self-Defeating.......................................................16

             2.    Plaintiff's "Failure To Correct" Theory Is Legally
                   Insufficient...........................................................18

             3.    Political Hostility Does Not Establish Malice..........19

             4.    Epting's Post Is Protected Opinion, So Malice Cannot Be
                   Inferred ................................................................20

       D.    Plaintiff Fails to Plausibly Allege Causation....................20

             1.    Plaintiff's Presumed-Damages Premise Fails Without
                   Actual Malice ........................................................20

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

2. No Duty Exists To Investigate Or "Correct" Social-Media Threads ...................................................21

3. The "Substantial Factor" Label Cannot Replace Federal Plausibility ...................................................22

4. Even Under California's Standard, The Alleged Chain Of Causation Is Speculative.................................22

5. Plaintiff's CACI/Case Critiques Do Not Cure the Defect........23

IV. Plaintiff's "AI Misuse" Detour Is Misplaced; Any Sanctions Request Should Be Denied or Narrow and Proportional ............................24

A. Case Law On Alleged "AI-Tainted" Filings Is Limited And Fact-Specific ..................................................24

B. Precedent Shows Courts Use Targeted, Deterrent Remedies ............24

C. Plaintiff's Request To Deny The Entire Anti-Slapp Motion Is Out Of Step With These Authorities ..................................25

D. Any Isolated Errors Were Inadvertent And Promptly Curable ..........25

E. Standing-Order Compliance Is, At Most, A Curable Procedural Formality—Not A Bar To Anti-SLAPP Relief ..................................26

F. Plaintiff's § 425.16 (c) Sanctions Request Is Premature And Meritless ..................................................26

V. CONCLUSION ..................................................27

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

# TABLE OF AUTHORITIES

**Federal Cases**

*Balla v. Hall*
59 Cal.App.5th 652 (2021) ...........................................................................19

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)...............................................................17, 22, 23

*Garrison v. Louisiana*
379 U.S. 64 (1964) .........................................................................................19

*Gertz v. Robert Welch, Inc.*
418 U.S. 323 (1974)..........................................................................19, 21, 23

*Grant v. City of Long Beach*
96 F.4th 1255 (9th Cir. 2024) ...................................................................24

*Greenbelt Coop. Publ'g Ass'n v. Bresler*
398 U.S. 6 (1970) ..........................................................................................14

*Gunn v. Drage*
65 F.4th 1109 (9th Cir. 2023) ..............................................................3, 4, 5

*Hardin v. Wal-Mart Stores, Inc.*
813 F.Supp.2d 1167 (E.D. Cal. 2011).....................................................22

*Hubicki v. ACF Industries, Inc.*
484 F.2d 519 (3d Cir. 1973).......................................................................3

*Information Control v. Genesis One Computer Corp.*
611 F.2d 781 (9th Cir. 1980).....................................................................13

*Lacey v. State Farm Gen. Ins. Co.*
No. CV 24-5205 FMO (MAAx), 2025 WL 1363069 (C.D. Cal. May
5, 2025) .................................................................................23, 24, 25, 26

*Line One Laboratories Inc. v. Wingpow Intl. Ltd.*
No. CV 22-02401-RAO, 2025 WL 1114018 (C.D. Cal. Feb. 28, 2025)....6, 7

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

*McDowell v. Price*
    731 F.3d 1053 (10th Cir. 2013)...................................................................22

*Milkovich v. Lorain Journal Co.*
    497 U.S. 1 (1990)........................................................................................19

*New York Times Co. v. Sullivan*
    376 U.S. 254 (1964)..............................................................................11, 16

*Obsidian Finance Group, LLC v. Cox*
    740 F.3d 1284 (9th Cir. 2014)....................................................................18

*Piping Rock Partners, Inc. v. David Lerner Associates*, Inc.
    946 F. Supp. 2d 957 (N.D. Cal. 2013), aff'd, 609 Fed. Appx. 497 (9th
    Cir. 2015)...................................................................................................13

*Planned Parenthood of the Columbia/Willamette, Inc. v. American* Coalition
    *of Life Activists*
    290 F.3d 1058 (9th Cir. 2002)......................................................................8

*R.A.V. v. City of St. Paul*
    505 U.S. 377 (1992)......................................................................................8

*Reno v. ACLU*
    521 U.S. 844 (1997)....................................................................................18

*United States v. Hayes*
    763 F. Supp. 3d 1054 (E.D. Cal. 2025)..........................................24, 25, 26

*Virginia v. Black*
    538 U.S. 343 (2003)......................................................................................8

*Watts v. United States*
    394 U.S. 705 (1969)......................................................................................8


**Federal Rules**

Fed. R. Civ. P. 8 ...............................................................................................3

Fed. R. Civ. P.11 .............................................................................................23

Fed. R. Civ. P.12(b)(6) ............................................................................passim

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

Fed. R. Civ. P.56 ................................................................................3, 4, 5, 24

**California Cases**

*Barnes-Hind Inc. v. Superior Court*
    181 Cal.App.3d 377 (1986).................................................................5, 12

Beck v. County of San Mateo
    154 Cal.App.3d 374 (1984)......................................................................20

*Christian Research Inst. v. Alnor*
    148 Cal.App.4th 71 (2007) ......................................................................19

*Collier v. Harris*
    240 Cal. App. 4th 41 (2015) ......................................................................2

*Dickinson v. Cosby*
    37 Cal. App. 5th 1138 (2019) .................................................................7, 8

*Ferlauto v. Hamsher*
    74 Cal. App. 4th 1394 (1999) ....................................................................9

*Franklin v. Dynamic Details, Inc.*
    116 Cal.App.4th 375 (2004) ....................................................................17

*Good Gov't Grp. of Seal Beach v. Super. Ct.*
    22 Cal.3d 672 (1978) ...............................................................................13

*Gregory v. McDonnell Douglas Corp.*
    17 Cal. 3d 596 (1976) ................................................................................9

*Grenier v. Taylor*
    234 Cal. App. 4th 471 (2015) ....................................................................7

*John Doe 2 v. Super. Ct.*
    1 Cal. App. 4th 1300 (2016) ..................................................................7, 8

*MacLeod v. Trib. Pub. Co.*
    52 Cal. 2d 536 (1959) ................................................................................6

*Nirschl v. Schiller*
    91 Cal. App. 5th 386 (2023) ....................................................................23

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

FREEDOM X
11500 OLYMPIC BLVD, SUITE #400
LOS ANGELES, CA 90064

*Reader's Digest Ass'n v. Super. Ct.*
    37 Cal.3d 244 (1984) ........................................................................15, 17, 19

*Rutherford v. Owens-Illinois, Inc.*
    16 Cal.4th 953 (1997) .........................................................................................19

*Smith v. Maldonado*
    72 Cal. App. 4th 637 (1999) .............................................................................12

*Soule v. General Motors Corp.*
    8 Cal.4th 548 (1994) ..........................................................................................19

*Weller v. American Broadcasting Cos.*
    232 Cal.App.3d 991 (1991).............................................................................18, 20


**California Statutes**

Civ. Code § 45a .........................................................................................................5, 12

Code Civ. Proc. § 425.16 ..............................................................................2, 23, 24

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff's counsel has launched an unusually aggressive—if not desperate—attack on undersigned counsel, accusing him of failing to properly meet and confer, of relying on artificial intelligence to research case law, and of making frivolous arguments. This unseemly scorched-earth tactic regrettably diverts attention from the substantive issues, but ultimately underscores Plaintiff's inability to meet his burden on this anti-SLAPP motion.

After all, Plaintiff boasts of vilifying his political opponents, whom he identifies as "MAGA."[1] He calls them "Nazis" and "fascists."[2] He takes morbid pleasure in celebrating the assassination of a First Amendment martyr, Charlie Kirk.[3] And in this case, he shamelessly alleges that a statement he posted online about blowing up business establishments was unimaginably misinterpreted while absurdly contending that Epting's anodyne call to reject such rhetoric led to actionable harm. Few claims could be more frivolous, more wasteful of judicial

---

[1] *See* Opp'n Br., Sasse Decl., Exh. 1, Becker letter (detailing numerous examples).
[2] *See*, *e.g.*, Dkt. No. 1, Complaint, ¶¶ 163-164, Exh. 18.
[3] Upon reports of Charlie Kirk's assassination, Kluwe posted on his Bluesky account that "this rules," celebrating Kirk being shot; when another user criticized the post as being in poor taste, Kluwe defended it by claiming Kirk wanted to deport his family and eradicate trans people, and concluded, "Fuck Charlie Kirk. I'm tired of coddling Nazis." (Bluesky, Sept. 21, 2025, approximately two hours after news reports). Becker Decl., ¶ 8:5 - ¶ 10:12.

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

resources, or more revealing of Plaintiff's malicious intent to punish protected speech.

Plaintiff's claim is not just meritless; it is retaliatory litigation aimed at silencing protected speech, the very abuse the anti-SLAPP statute was designed to prevent. And because Plaintiff cannot make the required prima facie showing under Prong Two, the statute compels dismissal with an award of attorneys' fees. Plaintiff's double-standard—free speech for me but not for thee—must be condemned and dismissed.

## ARGUMENT

## I.    PLAINTIFF CONCEDES PRONG ONE – EPTING'S SPEECH IS PROTECTED

Plaintiff does not dispute that Epting has satisfied the first step of the anti-SLAPP analysis by showing that his Facebook post constitutes a "protected activity" under Code Civ. Proc. § 425.16 (e). *See* Opp'n. at 6:24-27. This concession ends the Prong One inquiry.

California courts have consistently held that when a plaintiff fails to challenge a defendant's prima facie showing under the first prong, the defendant's burden is deemed met as a matter of law. *Collier v. Harris*, 240 Cal. App. 4th 41, 51 (2015). Because Plaintiff has conceded this point, the Court should proceed to Prong Two and determine whether Plaintiff has met his burden to establish a probability of prevailing on his claim.

## II.    RULE 56 APPLIES BECAUSE BOTH SIDES RELY ON EVIDENCE AND PLAINTIFF FILED NO RULE 56(D) DECLARATION

Plaintiff argues that the second prong of the anti-SLAPP analysis must be evaluated solely under the Rule 12(b)(6) standard because discovery is incomplete. He contends that Rule 8's liberal notice pleading suffices, without need for "admissible evidence" or prohibiting "information and belief" allegations, and that Epting's declaration should be disregarded as extrinsic material improper under 12(b)(6).

This is incorrect. In *Gunn v. Drage*, 65 F.4th 1109, 1119 (9th Cir. 2023), the Ninth Circuit held that when an anti-SLAPP motion challenges the factual sufficiency of a claim and includes evidence, it must be treated as a motion for summary judgment under Rule 56, triggering discovery safeguards if needed. *Gunn* held that factual challenges allow extrinsic evidence on both anti-SLAPP prongs, and courts must convert to Rule 56 where evidence is presented, unless the nonmovant shows under Rule 56(d) why more discovery is essential.

Here, the motion challenges evidentiary sufficiency (e.g., via Epting's declaration disputing malice and falsity), and Plaintiff has included scores of evidence in the Complaint itself (e.g., numerous exhibits, screenshots), making Rule 56 applicable. *Cf. Hubicki v. ACF Industries, Inc*., 484 F.2d 519 (3d Cir. 1973) (where facts before court on defendant's motion for summary judgment were those contained in complaint and plaintiff's opposing affidavit which were

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

insufficient to show cause of action, court properly granted summary judgment

rather than dismissal). Plaintiff has also commenced discovery (serving document

requests with responses due before the hearing), satisfying the "opportunity" for

discovery required before Rule 56 treatment. Becker Decl., ¶ 12:1-6.

Moreover, Plaintiff's own filings put matters outside the pleadings before

the Court by attaching and citing materials (including counsel's correspondence) as

proof of disputed facts. Becker Decl., ¶ 15. Having invited consideration of

extrinsic evidence while declining to submit a Rule 56(d) declaration, Plaintiff

cannot cabin this motion to Rule 12(b)(6); Rule 56 governs the prong-two analysis.

Critically, under Rule 56(d), if the nonmoving party submits an affidavit or

declaration explaining specific reasons why he cannot present essential facts to

oppose a motion, the court may defer ruling, allow time for discovery, or enter

another appropriate order. Yet here, Plaintiff's counsel has not invoked Rule 56(d)

via affidavit identifying what discovery is "essential" to oppose the motion, as

*Gunn* requires. His declaration focuses solely on meet-and-confer efforts and

alleged misrepresentations in Defendant's briefs, without requesting deferral or

more time for discovery. Instead, Plaintiff's attorneys boast that the Complaint

contains "58 pages, 354 allegations, 32 exhibits, and citations to case law." Dkt.

No. 1, 1:1-2.) It is hard to imagine what essential discovery could conceivably be

missing.

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

FREEDOM X
11500 OLYMPIC BLVD, SUITE #400
LOS ANGELES, CA 90064

In short, the baseline Rule 12(b)(6) standard applies where no discovery has occurred, but this case is past that point. Plaintiff has obtained all relevant documents, the operative exhibits are attached to his own pleading, and no further discovery is essential. Under *Gunn*, this Court should evaluate the motion under Rule 56, disabusing Plaintiff of his conclusory narrative and confirming on the undisputed record that the Fourth Cause of Action fails as a matter of law.

## III. EVEN UNDER 12(B)(6), PLAINTIFF'S DEFAMATION PER SE CLAIM HAS NO POSSIBILITY OF SUCCESS ON THE MERITS

### A. Defendant's Statement Must Be Defamatory On Its Face To Qualify As Per Se

Under Civ. Code § 45a, a statement is libelous per se only if its defamatory character is apparent from the face of the communication, "without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." If extrinsic facts are needed to supply the defamatory meaning, the claim sounds in libel per quod and the plaintiff must plead and prove special damages. *Barnes-Hind Inc. v. Superior Court*, 181 Cal.App.3d 377, 382-86 (1986). Plaintiff's theory rests on Epting's brief comment—"I hope the library renounces this kind of language and behavior"—coupled with a verbatim quote of Plaintiff's own words ("Find where they work and blow *those* places up").

A statement that depends on context or admits of an innocent meaning cannot, by definition, be libel per se and must be pleaded, if at all, as libel per

quod. *Line One Laboratories Inc. v. Wingpow Intl. Ltd.*, No. CV 22-02401-RAO, 2025 WL 1114018, at 4 (C.D. Cal. Feb. 28, 2025). "If a reader of a statement 'would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence or common sense,' then there is defamation per se." *Id.* "On the other hand, if a recipient of a statement 'would be able to recognize a defamatory meaning only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons,' then the statement is defamatory per quod." *Id.* "The court determines 'whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact.'" *Id.* "Even though a defamatory implication is shown upon the face of a publication, if it is also subject to innocent interpretation the language is said to be equivocal, and the publication thereof is not libelous per se." *MacLeod v. Trib. Pub. Co.*, 52 Cal. 2d 536, 562 (1959).

Use of the urged application of a "totality of the circumstances" test comes into play only to distinguish whether the alleged defamatory statement constitutes an actionable statement of fact or non-actionable opinion. "[S]tatements cannot form the basis of a defamation action if they cannot be reasonably interpreted as stating actual facts about an individual. Thus, rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt and language used in a

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

loose, figurative sense will not support a defamation action." *Grenier v. Taylor*, 234 Cal. App. 4th 471, 486 (2015), *accord Line One Laboratories*, *supra* (finding statements accusing plaintiff of theft, drug dealing, drug smuggling, and being a self-confessed felony child abuse were sufficient to form the basis of defamation claims).

The dispositive question is "whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Id.*; *accord Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1163 (2019). To make this determination, courts apply a totality-of-the-circumstances test. *Id.* (Quotation marks omitted.) They first examine the language of the statement itself to determine whether it could reasonably be understood in a defamatory sense— specifically, whether the purported opinion discloses the facts on which it is based and does not imply there are other, unstated facts which support the opinion." *Id.* (Quotation marks omitted.) They then evaluate the context, considering the audience, the forum, and the identity of the speaker. *Id.* (Quotation marks omitted.); *Id.* at 1164. "[W]hen a communication identifies nondefamatory facts underlying an opinion, or the recipient is otherwise aware of those facts, a negative statement of opinion is not defamatory." *John Doe 2 v. Super. Ct.*, 1 Cal. App. 4th 1300, 1314 (2016).

Case No. 8:25-cv-1648 FWS (JDEx)

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

In *Virginia v. Black*, 538 U.S. 343 (2003), the Supreme Court considered a statute banning cross burning with intent to intimidate. The Court held that cross burning done with such intent may constitutionally be proscribed as a "true threat," explaining:

> True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. See *Watts v. United States*, 394 U.S. 705, 708 (1969) ('political hyperbole' is not a true threat); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992). The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.' Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Id.* at 359–60.

Similarly, in Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists, 290 F.3d 1058 (9th Cir. 2002) (en banc), the Ninth Circuit held that anti-abortion activists' "wanted" posters and website postings listing doctors' names and addresses were unprotected true threats. The court emphasized that the materials were "reasonably understood as a threat of bodily harm" when viewed against the backdrop of prior murders and assaults on abortion providers, and that an objective standard governs: "whether a reasonable person would foresee that the statement would be interpreted by those to whom the

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

maker communicates the statement as a serious expression of intent to harm." *Id*. at 1075–76.

This case is on all fours with those precedents: Kluwe's statement constitutes a true threat under these standards. His post, with or without the video embed, is not a call for lawful petition or grievance at City Hall. The asterisks around the word "those" are intended to emphasize that word, underscoring that the instruction is not generic but specifically targets the workplaces of city council members. This is important because it sharpens the focus of the threat, making it clear that the speaker is directing readers to identify and target particular locations connected to specific individuals. Thus, the post explicitly urges readers to "go find out where [city council members] work and blow *those* places up."

The directive to "find out where they work" can have only one reasonable interpretation: it is a call to research and locate the workplaces of named public officials, thereby enabling harm to them or to others at those locations. While many have focused on the phrase "blow *those* places up," which could be spun as figurative language, the instruction to "find out where they work" carries a clear and explicit meaning and is what makes the statement particularly dangerous. Rather than clarifying his intent, Kluwe's accompanying video—which states "find out where the council members work" and advocates "review bombing"— reestablished Kluwe's call to target city council members.

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

"Review bombing" is not the same as calling phone lines, which is also alleged (Comp., ¶¶ 9, 136, 214, 325); it is a coordinated campaign of harassment to damage a business' reputation and does not require personally visiting or calling the businesses at all. By combining a directive to locate council members' workplaces with a call to action, Kluwe's message invited doxxing and harassment of third parties, including innocent employees with no connection to the library dispute. Epting later expressed concern that this reckless statement could lead to attacks on local businesses, and he cautioned the library to distance itself from such open, hostile, and dangerous rhetoric. A responsible approach by Kluwe would have been to direct individuals to contact city council members through established City Hall channels to express their concerns appropriately.

While Kluwe's words constitute an actionable "true threat," Epting's do not, and nothing he said distorted a reasonable interpretation of Kluwe's language, with or without the video. An objectively reasonable person would interpret Kluwe's words as a serious call to target council members and their workplaces for harassment or violence, placing the speech squarely within the "true threat" category and outside the protection of the First Amendment.

Epting's statement ("I hope the library renounces this kind of language and behavior") is a classic example of protected opinion because it discloses the very facts on which it is based. By reposting Kluwe's PSA verbatim, including the

10                                    Case No. 8:25-cv-1648 FWS (JDEx)

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

statement urging readers to "find where [the council members] work, and blow

\*those\* places up," Epting gave his audience the complete factual predicate for his

reaction and invited them to form their own view. His caption does not assert that

Kluwe committed a crime or threatened violence; it simply expresses disapproval

of the language and wishes for an institutional response. Because the underlying

facts were disclosed and available for the audience to evaluate, Epting's remark

cannot reasonably be read as implying undisclosed *New York Times Co. v. Sullivan*

defamatory facts. Under *John Doe 2* and *Dickinson*, such a disclosed value

judgment is constitutionally protected opinion. Plaintiff's reliance on audience

reactions, police involvement, or employment consequences does not transform

this opinion into a provably false factual assertion; it merely shows that some

readers interpreted the post differently, which is not enough to strip the statement

of its constitutional protection.

Plaintiff's lengthy discussion of the political climate and the alleged hostility

between conservatives and liberals only underscores that this case arises out of

core political speech at the heart of First Amendment protection. The Supreme

Court has made clear that "debate on public issues should be uninhibited, robust,

and wide-open," even when it includes "vehement, caustic, and sometimes

unpleasantly sharp attacks. *New York Times* at 270. Disputes over libraries, city

councils, and cultural issues are paradigmatic matters of public concern, and

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

commentary on them is entitled to the highest constitutional protection. That some

readers in a politically charged forum found Kluwe's rhetoric offensive and called

for his firing does not transform Epting's repost and comment into actionable

defamation; it simply reflects the reality that political speech provokes strong

reactions. The First Amendment does not permit liability merely because political

opponents criticize one another forcefully or because speech leads to reputational

consequences in a politically divided community. Because Plaintiff's claims target

protected political expression on a matter of public concern, they must satisfy the

heightened showing required to survive an anti-SLAPP motion, a burden Plaintiff

has not met.

As *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401–02 (1999), explains,

part of the totality-of-the-circumstances analysis is whether the challenged

statements were made in an adversarial setting. In such settings, where the

audience expects advocacy and "epithets, fiery rhetoric or hyperbole," language

that might otherwise appear factual is often understood as opinion. *Id.* (citing

*Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601–02 (1976)). Because

public controversies typically involve sharp differences of opinion and "vehement

adherence to one side or the other," courts recognize a broad zone for heated

expression without civil liability. *Gregory*, 17 Cal. 3d at 602. The same principle

has been applied in other contexts: disparaging comments exchanged by business

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

litigants are generally viewed not as factual allegations but as predictable expressions of one side's position. *Information Control v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980).

The HB Insider forum and the surrounding controversy over library governance were precisely such a setting: a political dispute where participants expected passionate disagreement and moral judgment. In that context, Epting's statement ("I hope the library renounces this kind of language and behavior") would be understood as partisan advocacy and value judgment, not as a literal accusation that Kluwe committed a crime.

In addition to considering "the medium by which the statement is disseminated and the audience to which it is published," applying a "totality of the circumstances" test in order to distinguish actionable fact from opinion requires that the Court consider "all the words used, not merely a particular phrase or sentence" and "give weight to cautionary terms [if any] used by the person publishing the statement." *Piping Rock Partners, Inc. v. David Lerner Associates*, Inc., 946 F. Supp. 2d 957, 970 (N.D. Cal. 2013), aff'd, 609 Fed. Appx. 497 (9th Cir. 2015) (unpublished) (interpolation added).

Here, Epting's words were themselves cautionary and anodyne. By prefacing his comment with "I hope," Epting signaled that he was expressing a personal wish rather than asserting a verifiable fact. His statement does not accuse

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

FREEDOM X
1150 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

Kluwe of committing a crime or threatening violence; instead, it communicates a normative judgment that the library should disapprove of the rhetoric and distance itself from it. The phrase "this kind of language and behavior" is general and evaluative, not a declaration of any specific misconduct. Taken together, Epting's words are mild, non-accusatory, and invite readers to make their own judgment, reinforcing that the post is opinion rather than a defamatory factual assertion.

If surrounding circumstances, audience reactions, or political climate must be considered to find a defamatory implication, then by definition the statement is equivocal and not per se defamatory. At most, Plaintiff proceeds under a per quod theory, where context supplies the alleged defamatory meaning. But even under that more searching standard, Epting's statement remains non-actionable because it is an opinion based on disclosed facts, not a provably false factual assertion.

When considered in its full social-media context, Epting's post is plainly part of a robust public debate over political speech and community standards. Courts have consistently held that heated rhetoric and figurative language in public controversies are not actionable as defamation per se. *See Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (term "blackmail" in public debate was rhetorical hyperbole, not accusation of crime). Epting's brief comment is exactly the type of constitutionally protected expression that the anti-SLAPP statute is designed to safeguard.

Because Plaintiff's theory depends on extrinsic facts and audience interpretation, the claim sounds in defamation per quod. To survive prong two, Plaintiff must present admissible evidence not only of falsity and actual malice but also of special damages and causation. *See* Civ. Code § 45a; *Barnes-Hind*, 181 Cal.App.3d at 386. Plaintiff's Complaint does not meet this heightened burden, and his opposition offers no admissible evidence tying Epting's single post to his alleged job loss. Under the anti-SLAPP framework, this failure requires the claim to be stricken.

## B.    <u>Plaintiff Cannot Establish Falsity</u>

Falsity is an essential element of a defamation claim, and the plaintiff bears the burden of proving that the challenged statement is not "substantially true." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 646–47 (1999) (truth is a complete defense; the statement need only be "substantially true" in its gist or sting). Plaintiff's opposition devotes disproportionate space to conflating the element of falsity with the separate requirement of actual malice, while conceding that the reposted words were his own — a concession that forecloses any showing that Epting published a materially false statement about him. Moreover, although Plaintiff acknowledges that the "totality of the circumstances" test governs, his analysis strays into extended discussions of cases arising in markedly different factual contexts, none of which support a finding of defamation on these facts.

Case No. 8:25-cv-1648 FWS (JDEx)

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

As already argued, Epting's comment ("I hope the library renounces this kind of language and behavior") did not convey a provably false assertion of fact. "[W]here a publication cannot reasonably be interpreted as stating actual facts about an individual, it is not actionable." *Ferlauto*, 74 Cal. App. 4th at 1401 (Internal quotation marks omitted.) Epting's statement was an opinion expressing disapproval of language the audience could read for itself.

## C.    <u>Plaintiff Does Not Allege Actual Malice</u>

Even assuming arguendo that Plaintiff has sufficiently pled falsity (which he has not), his claim fails because the Complaint does not allege facts showing that Epting published with "actual malice," i.e., knowledge of falsity or reckless disregard for the truth. *New York Times Co. v. Sullivan*, at 279–80; *Good Gov't Grp. of Seal Beach v. Super. Ct.*, 22 Cal.3d 672, 684 (1978) (requiring facts showing defendant's subjective awareness of probable falsity). Plaintiff's opposition fails to cure this defect, instead relying on speculation, political animus, and a legally baseless "failure to correct" theory. None of these allegations satisfy the demanding constitutional standard.

### 1.   **Plaintiff's Timeline Allegations Are Speculative And Self-Defeating**

Plaintiff's malice theory depends on a tight chronology that he cannot consistently allege. In one breath, he ties the "original PSA" to February 23 (by equating his quote-post with the underlying Pride at the Pier content from that

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

date); in another, he relies on a "2d" timestamp to place his own post on February 25—only to assert that Epting reposted on February 26. This internal inconsistency (Feb. 23 vs. Feb. 25) is pleaded nowhere with nonconclusory facts showing what Epting actually saw, when he saw it, or that he knew of any "original" context at the time of his post. What is consistent from Plaintiff's own telling is that Epting posted on February 26 in HB Insider, and that police contacted Plaintiff later that day, followed by his termination the next day—facts that are equally compatible with authorities reacting to Plaintiff's still-public post (the one he later deleted) rather than to Epting's repost, defeating any inference of knowing falsity or purposeful truncation. At most, Plaintiff alleges temporal proximity and infers causation, a classic *post hoc ergo propter hoc* fallacy insufficient to plead malice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("sheer possibility" of misconduct not enough); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Just as plausibly, one of Plaintiff's many followers (100,000+) could have captured or reposted a truncated version independently, which Epting then shared without knowledge of any "original" context. Plaintiff offers no facts linking the screenshot's creation to Epting personally. And Plaintiff's own allegations confirm that both the alleged "original" post and the reposted screenshot coexisted online at the time police contacted him, meaning the authorities could just as easily have been reacting to the still-public "original" post, not Epting's repost. This

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

alternative explanation defeats Plaintiff's malice theory under *Iqbal* because an "obvious alternative explanation" breaks any plausible inference of knowing falsity. *Id.* at 682.

### 2. Plaintiff's "Failure To Correct" Theory Is Legally Insufficient

Plaintiff also argues that Epting's failure to intervene in HB Insider comment threads shows malice. But actual malice cannot be inferred from inaction or silence. Courts have repeatedly rejected attempts to impose a duty to investigate or correct third-party speech absent "obvious reasons to doubt" the truth. *Reader's Digest Ass'n v. Super. Ct.*, 37 Cal.3d 244, 258 (1984). Here, Epting had no legal obligation to "police" the direction of online threads or rebut other users' opinions. Social media comment sections are dynamic, open forums entitled to full First Amendment protection. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). Imposing a duty to correct would chill online participation, as speakers would face liability not just for what they post but for failing to monitor and moderate others. The law does not require that result. *See Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284, 1292 (9th Cir. 2014) (blogger not liable for others' critical opinions absent provably false factual assertion).

Moreover, Epting's statement ("I hope the library renounces this kind of language and behavior") is pure opinion, expressing a normative judgment about speech the audience could read for itself. Because pure opinion contains no

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

provably false factual connotation, it cannot form the basis for a finding of actual malice. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974).

### 3.    Political Hostility Does Not Establish Malice

Plaintiff devotes pages to alleging that Epting is an "active denigrator of political liberals" and opposed to Kluwe's views, pointing to OC Weekly's "scariest people" label. This is an attempt by Plaintiff to characterize Epting's motivations as political rather than cautionary. But political hostility and viewpoint disagreement are not evidence of knowing falsity. As the Supreme Court explained, the actual malice standard is not satisfied by "vehement, caustic, and sometimes unpleasantly sharp attacks" in political debate. *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964). If political disagreement or "ill will" were enough, nearly every partisan exchange would become actionable — including Kluwe's own caustic posts about conservatives — a result that would eviscerate First Amendment protections.

California courts agree that circumstantial factors like hostility, ignoring comments, or using biased sources are relevant only if they show subjective doubt about the truth. *Balla v. Hall*, 59 Cal.App.5th 652, 683–84 (2021); *Reader's Digest*, 37 Cal.3d at 258. Plaintiff alleges no facts showing that Epting doubted the accuracy of the reposted screenshot or knew of an "original" version that would

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

make his post misleading. His claim that Epting "purposefully transferred" the post

from Bluesky to HB Insider to "exploit" hostility is speculation, not fact. *Iqbal*,

556 U.S. at 678.

### 4.    Epting's Post Is Protected Opinion, So Malice Cannot Be Inferred

Ultimately, all of Plaintiff's malice theories falter for a more fundamental

reason: Epting's post is non-actionable opinion based on disclosed facts. Where a

statement lacks falsity, there is nothing "known" to be false and no basis to infer

malice. *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375, 385 (2004). The

totality-of-circumstances test, including the political context of the HB Insider

forum, confirms that readers would perceive Epting's statement as advocacy and

value judgment, not as a factual report about criminal conduct. Because Plaintiff

fails to allege facts that plausibly suggest Epting acted with knowledge of falsity or

reckless disregard, the claim fails as a matter of law.

### D.    <u>Plaintiff Fails to Plausibly Allege Causation</u>

### 1.    Plaintiff's Presumed-Damages Premise Fails Without Actual Malice

Plaintiff's causation theory on page 21 hinges on the assertion that actual

malice is adequately pled, thereby permitting presumed damages without proof of

injury or causal nexus. That premise is incorrect. Presumed damages for

defamation involving a public figure or matter of public concern are available only

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

upon proof of actual malice. *Weller v. American Broadcasting Cos*., 232 Cal.App.3d 991, 1014–15 (1991); *Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974). As shown above, the Complaint alleges no nonconclusory facts establishing Epting's subjective knowledge of falsity or reckless disregard. Conclusory phrases like "Epting knew" are the very "threadbare recitals" *Iqbal* rejects. *Iqbal*, 556 U.S. at 678. Without actual malice, presumed injury is unavailable, and Plaintiff must plausibly allege that Epting's post was a legal cause of his harms.

### 2.    No Duty Exists To Investigate Or "Correct" Social-Media Threads

Plaintiff's theory effectively imposes a duty on Epting to verify completeness or to "correct" commenters' interpretations—an obligation the law does not recognize and that would chill ordinary social-media use. Users routinely share snippets or screenshots without tracing original sources or context; absent "serious doubts" or "obvious reasons to doubt" truth, a failure to investigate does not establish malice or causation. *Reader's Digest* at 258; *Christian Research Inst. v. Alnor*, 148 Cal.App.4th 71, 85 (2007). Because malice is not plausibly pled, Plaintiff must allege actual injury and a causal nexus—which he does not.

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

### 3. The "Substantial Factor" Label Cannot Replace Federal Plausibility

Plaintiff invokes California's "substantial factor" rubric (e.g., *Soule v. General Motors Corp.*, 8 Cal.4th 548, 572 (1994); *Rutherford v. Owens-Illinois, Inc.*, 16 Cal.4th 953, 978 (1997); CACI Nos. 1700, 430, 431). But state jury instructions do not displace federal pleading standards. Federal courts apply state substantive law and federal procedural rules; CACI may be informative but is not binding at Rule 12(b)(6). *See McDowell v. Price*, 731 F.3d 1053, 1059 (10th Cir. 2013) (state substance/federal procedure); *Hardin v. Wal-Mart Stores, Inc.* 813 F.Supp.2d 1167 (E.D. Cal. 2011) (CACI "not binding"). Plaintiff must still allege facts that render causation plausible under *Twombly*/Iqbal.

### 4. Even Under California's Standard, The Alleged Chain Of Causation Is Speculative

Even crediting the "substantial factor" formulation, the allegations do not show that Epting's post contributed more than negligibly to any injury. The theory rests on sequential inferences: that Epting must have altered Plaintiff's words; that Epting's repost—not Plaintiff's own still-public PSA—prompted police contact; and that the same repost caused termination. Plaintiff's papers acknowledge the "original" PSA remained online until he deleted it at police request, making it at least as plausible that any reaction flowed from Plaintiff's own post rather than Epting's. Allegations "merely consistent with" liability do not cross the plausibility

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

line. *Twombly* at 557 (2007); *Iqbal* at 678. California law likewise rejects causation pled by speculation or hindsight. *Beck v. County of San Mateo*, 154 Cal.App.3d 374, 379 (1984).

### 5. Plaintiff's CACI/Case Critiques Do Not Cure the Defect

Plaintiff's assertions that the ASM misstates certain authorities (Opp. 24–26) and the reference to a non-existent *Pope v. Chronicle Publishing Co*. are immaterial. The cited, controlling cases support the propositions at issue: *Weller* and *Gertz* limit presumed damages to proven malice; *Twombly*/*Iqbal* require plausible, fact-based causation; *Beck* bars speculative causal pleading. Reliance on CACI underscores Plaintiff's procedural detour rather than supplying the necessary factual linkage.

Because presumed damages are unavailable absent actual malice and because Plaintiff has not plausibly alleged that Epting's post—rather than Plaintiff's own publicly visible PSA—was a substantial factor in any cognizable injury, causation is insufficiently pled. The claim should be dismissed or stricken at prong two.

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

## IV.   PLAINTIFF'S "AI MISUSE" DETOUR IS MISPLACED; ANY SANCTIONS REQUEST SHOULD BE DENIED OR NARROW AND PROPORTIONAL

### A.   Case Law On Alleged "AI-Tainted" Filings Is Limited And Fact-Specific

Recent decisions addressing alleged AI misuse turn on case-specific

circumstances; there is no per se rule that a brief is stricken or a motion denied

simply because AI tools were used. *See Lacey v. State Farm Gen. Ins. Co*., No. CV

24-5205 FMO (MAAx), 2025 WL 1363069, at *6 (C.D. Cal. May 5, 2025)

(Special Master Wilner) (describing "bogus AI-generated research," striking only

the tainted supplemental discovery briefs, and awarding limited fees); *United

States v. Hayes*, 763 F. Supp. 3d 1054, 1056–57, 1066–67 (E.D. Cal. 2025)

(finding counsel knowingly relied on a fictitious case and imposing a $1,500

sanction, emphasizing proportionality). By contrast, the Ninth Circuit's *Grant v.

City of Long Beach*, 96 F.4th 1255, 1256–57 (9th Cir. 2024) involved rule-

compliance defects warranting striking an opening brief and dismissing the

appeal—again, a remedy tailored to the filers' noncompliance, not a merits penalty

based on mere tool use.

### B.   Precedent Shows Courts Use Targeted, Deterrent Remedies

In *Lacey*, the Special Master struck the tainted supplemental discovery

briefs, denied the associated relief, and shifted $31,100 (costs + a modest fee) to

deter recurrence—no case-dispositive sanction. *Lacy* at 6 (C.D. Cal. May 5, 2025).

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

In *Hayes*, despite explicit findings of knowing reliance on a fictitious case, the sanction remained $1,500 against counsel personally—again, proportionate and not client-punitive. *Hayes* at 1056–57, 1066–67.   Both decisions underscore that sanctions must be "limited to what suffices to deter" and calibrated to the conduct. *Lacey* at 6.

### C.    <u>Plaintiff's Request To Deny The Entire Anti-Slapp Motion Is Out Of Step With These Authorities</u>

Neither *Lacey* nor *Hayes* endorses using an AI-related dispute to dispose of a merits motion on First Amendment issues. Lacey targeted only the defective submissions and then shifted fees; it did not punish the merits. *Lacy* at 6.   Hayes likewise tailored the remedy to counsel's conduct without prejudicing the client's case. *Hayes* at 1066–67.   If Plaintiff believes any citation here is inaccurate or immaterial, the appropriate remedy is narrow: disregard or strike that citation and proceed to the merits.

### D.    <u>Any Isolated Errors Were Inadvertent And Promptly Curable</u>

This record bears no resemblance to *Hayes* (knowingly fictitious "primary" authority) or *Lacey* (re-filing after warning with fabricated citations still embedded). *See Hayes*, 763 F. Supp. 3d at 1056–57, 1066–67; *Lacey*, 2025 WL 1363069, at 6.   The undersigned is a solo attorney without staff, operating under severe time constraints (trial preparation for the week of September 16, a four-day family wedding, and imminent long-scheduled travel). The filing was prepared

**DEFENDANT CHRISTIAN EPTING'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

using conventional research (Westlaw) along with drafting tools; citations were checked, and to the extent one or two were later flagged, the undersigned withdraws reliance on any non-essential reference. That is not "AI misuse"; it is an ordinary, curable citation issue. Rule 11's certification is judged as "reasonable under the circumstances," and any sanction must be proportionate with consideration of less severe alternatives first. *See Hayes*, 763 F. Supp. 3d at 1066–67.

### E.    Standing-Order Compliance Is, At Most, A Curable Procedural Formality—Not A Bar To Anti-SLAPP Relief

Plaintiff invokes a Standing Order requiring a declaration when generative tools are used. Even accepting that premise, the remedy in these cases was to ensure candor and impose tailored deterrence—not to bar merits adjudication of a speech-protective statute. *See Lacey* at 6 (striking only tainted discovery submissions and awarding limited fees).  If the Court wishes, the undersigned can submit a short supplemental declaration outlining verification steps and confirming withdrawal of any disputed citation the Court disfavors.

### F.    Plaintiff's § 425.16 (c) Sanctions Request Is Premature And Meritless

Section 425.16 (c)(1) awards fees to a prevailing defendant; a prevailing plaintiff may recover only if the anti-SLAPP motion is frivolous or solely intended to delay. *Nirschl v. Schiller*, 91 Cal. App. 5th 386, 408–09 (2023). Nothing about

this motion is frivolous; Plaintiff himself concedes Prong One protected activity, and Prong Two issues (falsity, opinion, context, actual malice) are substantial.

The Court should reject Plaintiff's "AI misuse" detour. Consistent with *Lacey* and *Hayes*, if the Court has concern about any particular citation, a narrow, proportionate remedy—deeming that citation withdrawn or disregarded—would more than suffice; wholesale denial or striking of the anti-SLAPP motion would be out of step with the measured deterrence those decisions endorse. *Lacey*, 2025 WL 1363069, at 6; *Hayes*, 763 F. Supp. 3d at 1066–67.

## V.    CONCLUSION

For the foregoing reasons, Defendant's special motion to strike Plaintiff's Fourth Cause of Action should be granted. The claim lacks merit, fails under both Rule 12(b)(6) and Rule 56, and serves only to chill protected speech. Plaintiff concedes Prong One and cannot carry Prong Two under any standard. He asks the Court to ignore the evidentiary record he helped create, to relax settled constitutional limits on defamation, and to punish protected political speech. The law does not permit that result. Whether analyzed under Rule 56 (as it should be) or even Rule 12(b)(6), the "False Light Defamation" claim fails on falsity, opinion, malice, and causation.

The Court should grant the special motion to strike and award Defendant his reasonable fees and costs under § 425.16(c).

**DEFENDANT CHRISTIAN EPTING'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**

Dated: September 23, 2025

Respectfully submitted,

**FREEDOM X**

By:  /s/ William J. Becker, Jr.
     William J. Becker, Jr., Esq.
     Attorney for Defendant, *Christian Epting*

**DEFENDANT CHRISTIAN EPTING'S REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE**