Daniel A. Sasse (SBN: 236234)
  DSasse@crowell.com
David C. Griffith (SBN: 329342)
  DGriffith@crowell.com
Jazmine G. Buckley (SBN: 341516)
  JBuckley@crowell.com
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone:  949.263.8400
Facsimile:   949.263.8414

*Attorneys for Plaintiff Christopher Kluwe*

*(Additional Counsel Listed on Signature Page)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER KLUWE,<br><br>Plaintiff,<br><br>v.<br><br>HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT; CAROLEE OGATA, in her individual and official capacities as Superintendent of Huntington Beach Union High School District; SUSAN HENRY, in her individual and official capacities as President of the Board of Trustees of the Huntington Beach Union High School District; DANIEL BRYAN, in his individual and official capacities as Assistant Superintendent, Human Resources at Huntington Beach Union High School District; DANIEL MORRIS, in his individual and official capacities as Principal of Edison High School; EDWARD BEGANY, in his individual and official capacities as Assistant Principal, Supervision at Edison High School; and CHRISTIAN EPTING, an individual,<br><br>Defendants. | Case No. 8:25-cv-1648<br><br>**PLAINTIFF'S OPPOSITION TO DISTRICT DEFENDANTS' MOTION TO DISMISS**<br><br>Date:  October 23, 2025<br>Time:  10:00 a.m.<br>Crtrm: 10D<br>Judge: Hon. Fred W. Slaughter<br><br>JURY DEMAND |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................... 10

II.   FACTUAL BACKGROUND.................................................................... 11

III.  RULE 12(b)(6) STANDARD................................................................... 12

IV.   ARGUMENT ........................................................................................... 13

    A.    A Determination of Eleventh Amendment Immunity Is Premature.... 13

    B.    Claims Against the Individual HBUHD Defendants Are Sufficiently Pled................................................................................................. 19

        1.    Each Defendant Is Causally Linked To The Alleged Constitutional Violations................................................................... 19

            a.    Test For Pleading Causal Links. ...................................... 20

            b.    The Complaint Sufficiently Pleads Causal Links. .......... 21

                1)    Participation in the Unlawful Discharge.............. 22

                2)    Participation in The Defamatory Press Release.... 24

            c.    Plaintiff Does Not Rely on a "Team Effort" Theory. ..... 24

        2.    The Complaint Provides Fair Notice To All Defendants That Is Not Obscured By So-Called "Shotgun Pleading." .................. 25

        3.    The Complaint Sufficiently Pleads *Monell* Liability. ............... 26

    C.    The Complaint Sufficiently Pleads Punitive Damages........................ 27

    D.    The Complaint Sufficiently Pleads the Second Cause of Action. ....... 28

    E.    The Complaint Sufficiently Pleads the Third Cause of Action. .......... 35

V.    CONCLUSION......................................................................................... 37

CROWELL & MORING LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamian v. Jacobsen*,
  523 F.2d 929 (9th Cir. 1975) ............................................................ 29, 30

*Adobe Sys. v. Blue Source Grp.*,
  125 F.Supp.3d 945 (N.D. Cal. 2015) ...................................................... 24

*AGK Sierra De Montserrat v. Comerica Bank*,
  109 F.4th 1132 (9th Cir. 2024) ............................................................ 14

*Aids Healthcare Found. v. Cal. Dep't of Health Care Servs.*,
  2023 WL 2721457 (C.D. Cal. Mar. 30, 2023) ........................................ 27

*Almont Ambulatory Surgery Ctr. v. UnitedHealth Grp.*,
  2015 WL 12777092 (C.D. Cal. Oct. 23, 2015) ........................................ 25

*Anderson v. Dist. Bd. of Trs.*,
  77 F.3d 364 (11th Cir. 1996) ............................................................... 25

*Armstrong v. Reynolds*,
  22 F.4th 1058 (9th Cir. 2022) .............................................................. 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 11

*Barefield v. Gibbs*,
  2025 WL 525073 (E.D. Cal. Feb. 18, 2025) ........................................... 25

*Barone v. Springfield*,
  902 F.3d 1091 (9th Cir. 2018) .................................................. 27, 28, 29

*Bauer v. Sampson*,
  261 F.3d 775 (9th Cir. 2001) ............................................................... 33

*Bautista v. L.A.*,
  216 F.3d 837 (9th Cir. 2000) ............................................................... 25

*Beentjes v. Placer Cnty. Air Pollution Control Dist.*,
  397 F.3d 775 (9th Cir. 2005) ............................................................... 15

CROWELL & MORING LLP
ATTORNEYS AT LAW

*Belanger v. Madera Unified Sch. Dist.*,
   963 F.2d 248 (9th Cir. 1992) ..........................................................*passim*

*Berry v. Dep't of Soc. Servs.*,
   447 F.3d 642 (9th Cir. 2006) ................................................................ 29

*Blankenhorn v. City of Orange*,
   485 F.3d 463 (9th Cir. 2007) ................................................................ 23

*Bledsoe v. Ferry Cnty.*,
   499 F.Supp.3d 856 (E.D. Wash. 2020) ................................................. 23

*Brown v. Tulsa*,
   124 F.4th 1251 (10th Cir. 2025) .......................................................... 26

*Cal. Rifle & Pistol Ass'n, Inc. v. LA Cnty. Sheriff's Dep't*,
   2025 WL 2324625 (C.D. Cal. July 21, 2025) ...................................... 15

*Cantu v. Portland*,
   2020 WL 2952972 (D. Or. June 3, 2020) ............................................ 34

*CDK Glob. v. Tekion*,
   2025 WL 1939951 (N.D. Cal. July 15, 2025) ...................................... 25

*Chaudhry v. Aragon*,
   68 F.4th 1161 (9th Cir. 2023) .............................................................. 35

*Christie v. Iopa*,
   176 F.3d 1231 (9th Cir. 1999) ............................................................. 26

*Chuman v. Wright*,
   76 F.3d 292 (9th Cir. 1996) ................................................................. 23

*Cohen v. San Bernardino Valley Coll.*,
   92 F.3d 968 (9th Cir. 1996) ................................................................. 31

*Coll. Republicans v. Reed*,
   523 F.Supp.2d 1005 (N.D. Cal. 2007) ................................................. 31

*Connick v. Myers*,
   461 U.S. 138 (1983) ............................................................................. 29

*Cree v. Tarr*,
   2017 WL 3219974 (S.D. Cal. July 28, 2017) ...................................... 25

*Ctr. for Bio-Ethical Reform v. L.A. Sheriff Dep't,*
    533 F.3d 780 (9th Cir. 2008) ........................................................................ 34

*Damiano v. Grants Pass Sch. Dist.,*
    140 F.4th 1117 (9th Cir. 2025) ................................................................... 29

*Dang v. Cross,*
    422 F.3d 800 (9th Cir. 2005) ...................................................................... 26

*Dodge v. Evergreen Sch. Dist.,*
    56 F.4th 767 (9th Cir. 2022) ...................................................................... 29

*Elias v. Navasartian,*
    2017 WL 1013122 (E.D. Cal. Feb. 17, 2017) .......................................... 27

*Equine Legal Sols. v. Buntrock,*
    2008 WL 111237 (N.D. Cal. Jan. 9, 2008) ............................................... 27

*Erickson v. Pardus,*
    551 U.S. 89 (2007) ...................................................................................... 19

*Faison v. Alameda,*
    2025 WL 2198606 (N.D. Cal. Aug. 1, 2025) ........................................... 12

*Flores v. Bennett,*
    635 F.Supp.3d 1020 (E.D. Cal. 2022) ....................................................... 33

*Giannini v. Sacramento,*
    2023 WL 6279437 (E.D. Cal. Sept. 26, 2023) .......................................... 25

*Gilbrook v. Westminster,*
    177 F.3d 839 (9th Cir. 1999) ...................................................................... 19

*United States ex rel. Giles v. Sardie,*
    191 F.Supp.2d 1117 (C.D. Cal.2000) ................................................. 10, 17

*Guffey v. Mauskopf,*
    45 F.4th 442 (D.C. Cir. 2022) ............................................................. 28, 29

*Hafer v. Melo,*
    502 U.S. 21 (1991) ...................................................................................... 19

*Harper v. L.A.,*
    533 F.3d 1010 (9th Cir. 2008) .................................................................... 36

CROWELL
& MORING LLP
ATTORNEYS AT LAW

OPPOSITION TO MOTION TO DISMISS;
CASE NO. 8:25-CV-1648

*Harris v. Mundel,*
    859 F.App'x 65 (9th Cir. 2021) ......................................................... 12

*Health Freedom Def. Fund v. Carvalho,* 104 F.4th 715, 726-727 (9th
    Cir. 2024), *reh'g en banc granted, op. vacated,* 127 F.4th 750 (9th
    Cir. 2025), *on reh'g en ban*c, 148 F.4th 1020, 1027 n.8 (9th Cir.
    2025) ................................................................................................... 17

*Hernandez v. Phx.,*
    482 F.Supp.3d 902 (D. Ariz. 2020), *aff'd in part, rev'd in part and
    remanded,* 43 F.4th 966 (9th Cir. 2022) ................................ 28, 30, 31

*Herrera v. L.A.,*
    2013 WL 12121879 (C.D. Cal. Aug. 2, 2013) ................................... 36

*Hess v. Port Auth. Trans-Hudson Corp.,*
    513 U.S. 30 (1994) ............................................................................. 18

*Hyland v. Wonder,*
    972 F.2d 1129 (9th Cir. 1992) ........................................................... 32

*Inendino v. Lightfoot,*
    2023 WL 2349909 (N.D. Ill. Mar. 3, 2023) ...................................... 26

*ITSI TV Prods. v. Agric. Ass'n,*
    3 F.3d 1289 (9th Cir. 1993) ......................................................... 12, 13

*Jensen v. Brown,*
    131 F.4th 677 (9th Cir. 2025) ...................................................... 30, 34

*Johnson v. L.A. Fire Dep't,*
    865 F.Supp. 1430 (C.D. Cal. 1994) ................................................... 30

*Johnson v. Shasta Cnty.,*
    83 F.Supp.3d 918 (E.D. Cal. 2015) ................................................... 24

*Jones v. Williams,*
    297 F.3d 930 (9th Cir. 2002) ............................................................. 36

*K.J. v. Jackson,*
    127 F.4th 1239 (9th Cir. 2025) .......................................................... 16

*Kirchmann v. Lake Elsinore Unified Sch. Dist.,*
    83 Cal.App.4th 1098 (2000) .............................................................. 18

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Kohn v. State Bar of Cal.*,
    87 F.4th 1021 (9th Cir. Dec. 6, 2023) ........................................................*passim*

*Lara v. Maywood*,
    2008 WL 11636967 (C.D. Cal. Sept. 22, 2008).................................................19

*Lytle v. Carl*,
    382 F.3d 978 (9th Cir. 2004)...........................................................................26

*Mahanoy Area Sch. Dist. v. B.L.*,
    594 U.S. 180 (2021) ........................................................................................29

*Mama Bears v. McCall*,
    642 F.Supp.3d 1338 (N.D. Ga. 2022) .............................................................33

*Marshall v. Amuso*,
    571 F.Supp.3d 412 (E.D. Pa.2021)..................................................................34

*Matal v. Tam*,
    582 U.S. 218 (2017) ........................................................................................33

*Minn. Voters All. v. Mansky*,
    585 U.S. 1 (2018) ............................................................................................32

*Mitchell v. L.A. Comm. Coll. Dist.*,
    861 F.2d 198 (9th Cir. 1988)...........................................................13, 14, 15, 17

*Moonin v. Tice*,
    868 F.3d 853 (9th Cir. 2017)......................................................................27, 29

*Mora v. Chula Vista*,
    2021 WL 4220633 (S.D. Cal. Sept. 16, 2021) .................................................27

*Mt. Healthy v. Doyle*,
    429 U.S. 274 (1977) ........................................................................................32

*Murillo v. Godfrey*,
    2023 WL 2825701 (C.D. Cal. Feb. 21, 2023)..................................................27

*Owen v. City of Indep.*,
    445 U.S. 622. (1980) .......................................................................................18

*Padre v. MVM*,
    768 F.Supp.3d 1111 (S.D. Cal. 2025) .............................................................12

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Persaud v. N.Y.C.*,
    2024 WL 2159852 (S.D.N.Y. May 14, 2024) ................................................... 26

*Pickering v. Bd. of Ed. of Twp. High Sch. Dist.*,
    391 U.S. 563 (1968) ................................................................27, 28, 29, 30

*Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*,
    479 F.3d 1175 (9th Cir. 2007) .............................................................. 19

*Reno v. Am. C.L. Union*,
    521 U.S. 844 (1997) ...................................................................... 32

*Reynolds v. EzriCare LLC*,
    700 F.Supp.3d 830 (N.D. Cal. 2023) ....................................................... 24

*Riley's Am. Heritage Farms v. Elasser*,
    32 F.4th 707 (9th Cir. 2022) .............................................................. 19

*Riley's Am. Heritage Farms v. Elsasser*,
    2024 WL 1756101 (9th Cir. Apr. 24, 2024) ................................................. 16

*Rodriguez v. L.A.*,
    891 F.3d 776 (9th Cir. 2018) .............................................................. 19

*Rosenbaum v. S.F.*,
    484 F.3d 1142 (9th Cir. 2007) ............................................................ 33

*Sanjour v. E.P.A.*,
    56 F.3d 85 (D.C. Cir. 1995) (en banc) .................................................28, 30

*Sato v. Orange Cnty. Dep't of Educ.*,
    2015 WL 4078195 (C.D. Cal. July 6, 2015) ..........................................*passim*

*Sato v. Orange Cnty. Dep't of Educ.*,
    861 F.3d 923 (9th Cir. 2017) .........................................................14, 15

*Savage v. Tweedy*,
    2012 WL 6618184 (D. Or. Dec. 13, 2012) .................................................. 24

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) .............................................................. 20

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .........................................................12, 19

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Ulrich v. S.F.*,
308 F.3d 968 (9th Cir. 2002) .................................................................. 35

*United States v. Nat'l Treasury Emps. Union*,
513 U.S. 454 (1995) ..............................................................27, 28, 29

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) .................................................... 11

*Waters v. Churchill*,
511 U.S. 661 (1994) ..........................................................22, 33

*Webb v. San Bernadino*,
2023 WL 11999208 (C.D. Cal. June 26, 2023)..........................24, 27

*Weiland v. Palm Beach Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ...................................................... 24

*Wright v. Santa Cruz*,
2014 WL 217089 (N.D. Cal. Jan. 17, 2014) .................................... 25

**Statutes**

42 U.S.C. §1983...............................................................................*passim*

Cal. Educ. Code §44040 ......................................................... 20

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## I.  INTRODUCTION

Plaintiff Christopher Kluwe's detailed, well-organized Complaint easily satisfies Rule 8's standard for pleading his three 42 U.S.C. §1983 causes of action against the Huntington Beach Union High School District ("HBUHSD") Defendants: (1) retaliation in violation of the First Amendment, (2) chilling protected speech prospectively through application of the Civility Policy in violation of the First Amendment, and (3) depriving Kluwe's liberty interest in his reputation without Due Process in violation of the Fourteenth Amendment. It is noteworthy that Defendants do not seek dismissal of the Complaint' core claim—First Amendment-based retaliation. The bases Defendants chose for challenge are unpersuasive: They target technical pleading deficiencies disfavored in the Ninth Circuit, rely on wrong legal standards, and appear preoccupied with the irrelevant fact that Kluwe was an at-will employee. They provide no basis for dismissal.

Raising an issue outside the purview of 12(b)(6), the HBUHSD seeks dismissal based on Eleventh Amendment immunity—which is an affirmative defense on which *the HBUHSD* bears the burden of proof. Dismissal based on an affirmative defense is improper when, like here, factual disputes abound. Because discovery is needed to evaluate whether the HBUHSD can satisfy the new test for arm-of-the state immunity set forth in *Kohn v. State Bar of Cal.,* 87 F.4th 1021 (9th Cir. Dec. 6, 2023) (en banc), a judgment about its immunity would be premature.

Notably, the HBUHSD knew Plaintiff would contest its immunity—indeed, footnote 1 of the Complaint said so. Nonetheless, in the meet and confer process, Defendants did *not* say their Motion would assert immunity. Perhaps due to a concern that the defense would otherwise be deemed waived, they included it anyway—but only in the most superficial way. The Motion does not address any of the complex issues involved in determining the HBUHSD's immunity under the new *Kohn* test. In a cursory, 2-page argument, Defendants simply assert the defense and cite cases. Any attempt to shore up this gaping hole with new arguments or

CROWELL & MORING LLP
ATTORNEYS AT LAW

evidence in their reply brief should be rejected. *United States ex rel. Giles v. Sardie*, 191 F.Supp.2d 1117, 1127 (C.D.Cal.2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

## II.    FACTUAL BACKGROUND

Until February 2025, Christopher Kluwe, a former NFL and UCLA punter, was a high school football coach at Edison High School ("EHS") in MAGA-dominated Huntington Beach ("HB"). Kluwe has a long history of social activism for liberal causes under John Lewis' "good trouble" flag. Compl.¶¶64-68. At a city council meeting on February 18, 2025, at the close of his speech against the proposed installation of a MAGA plaque at the local library, Kluwe announced his intent to engage in "peaceful, civil disobedience." He approached the city council's dais and was arrested. Compl.¶¶102-110. Nine days later, on February 27th, EHS school officials fired him. The only reason they gave Kluwe for his firing was that the school was "getting too much attention." Compl.¶¶173,306.

That same day, Kluwe publicly complained that MAGA loyalists had pressured EHS to fire him because of his city council speech. Compl.¶¶6,176-178. A public outcry erupted, accusing EHS of unlawfully firing Kluwe. In response, on March 3rd, the HBUHSD and EHS issued a press release to "clarify" the situation. Kluwe was discharged, it said, not for his city council speech, but because he had promoted violence in a social media post. The press release also suggested that Kluwe already *knew* the social media post was the real reason for his discharge (which was untrue), implying that *he had lied* when he complained that MAGA had pressured EHS to discharge him. Compl.¶¶179-183,192-198.

The March 3rd press release embedded Kluwe's offending social media post (referred to as the "PSA post" in the Complaint), which said:

> Also, PSA, and I can't believe I have to say this: Stop fucking with the library. That's what the city council is doing. The library is great, as are the people who work there. Go fuck with the city council. Find

CROWELL & MORING LLP
ATTORNEYS AT LAW

where they work, and blow \*those\* places up.

The image that the press release embedded captured only part of a post that Kluwe had originally published on February 23rd on Bluesky. The altered version appearing in the press release was created by Defendant Christian Epting, which he published on February 26th in a conservative Facebook group. Plaintiff's Opposition to Epting's Anti-SLAPP motion provides the details of how Epting detached a large part of Kluwe's original post that made it crystal clear that Kluwe was referring to blowing up phone lines to protest the installation of the MAGA plaque. In comments on Epting's altered version of the post, MAGA loyalists discussed forwarding it to the police and to EHS. Compl.¶¶157-159,Ex.13.

The very next day, EHS fired him—without ever mentioning the PSA post. Although they had a legal duty to investigate before firing Kluwe for speech that implicated the First Amendment, Defendants never asked Kluwe for his side of the story—not before they discharged him or before issuing the press release. Compl.¶197. Had Defendants done so, they would have discovered the truth and would have had no basis to discharge and publicly defame him.

## III.    RULE 12(b)(6) STANDARD

To satisfy Rule 8—and defeat a 12(b)(6) motion—claims need only have "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not require "detailed factual allegations" or a "probability" of success on the merits. *Id.* Courts construe complaints in the light most favorable to plaintiffs and take all allegations and reasonable inferences as true. *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008). Judging the sufficiency of pleadings is guided by two principles: (1) they "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense

of discovery and continued litigation." *Starr v. Baca,* 652 F.3d 1202, 1213-16 (9th Cir. 2011). The Complaint satisfies this standard. *See id.* (refusing dismissal of solo plaintiff's §1983 claim where allegations gave defendant notice of claims and nothing about the case's context made the plaintiff's allegations implausible).

## IV.    ARGUMENT

### A.    A Determination of Eleventh Amendment Immunity Is Premature.

The HBUSD's assertion of Eleventh Amendment immunity hinges on the defunct *Belanger* line of cases that determined California school district's sovereign immunity more than 30 years ago. HBUHSD makes no effort to explain why it still qualifies for immunity even after dramatic changes to controlling law and California school districts' funding and autonomy since *Belanger*. For multiple reasons, the immunity determination is premature.

First, Eleventh Amendment immunity is an affirmative defense that the HBUHSD must prove. *ITSI TV Prods. v. Agric. Ass'n,* 3 F.3d 1289, 1291 (9th Cir. 1993). "Affirmative defenses may not be raised by motion to dismiss unless the defense raises no disputed issues of fact." *Harris v. Mundel,* 859 F.App'x 65, 65 (9th Cir. 2021); *Padre v. MVM,* 768 F.Supp.3d 1111, 1118-1119 (S.D.Cal. 2025) (refusing dismissal based on sovereign immunity affirmative defense due to "gaping holes in the record" and disputed factual issues); *accord Faison v. Alameda,* 2025 WL 2198606, at *7 (N.D.Cal. Aug. 1, 2025). Further, *Defendant* bears the burden to show an absence of factual disputes. *Padre,* 768 F.Supp.3d at 1118-1119. As discussed below, factual disputes abound, and immunity cannot be decided in the HBUHSD's favor as a matter of law.

Second, Defendants' account of controlling precedent for the sovereign immunity defense is misleading. *Belanger*'s history demonstrates that it has been dismantled and provides no basis for a determination as a matter of law that the HBUHSD qualifies for immunity.

The Ninth Circuit's 1992 *Belanger* decision, which applied the factors set

forth in *Mitchell v. Los Angeles Community College District,* 861 F.2d 198 (9th Cir. 1988), held that the Madera Unified School District (MUSD) was an arm of the state entitled to Eleventh Amendment immunity. *Belanger v. Madera Unified Sch. Dist.,* 963 F.2d 248 (9th Cir. 1992). The five *Mitchell* factors inquired (1) whether a money judgment would be satisfied out of state funds, and whether the entity (2) performs central government functions, (3) can sue or be sued, (4) can own property, and (5) has a distinct corporate status. Notably, *Belanger* was not decided on the pleadings but on summary judgment, after "extensive discovery to obtain evidence showing that a judgment against [MUSD] would not be satisfied out of state funds"—the factor that, at that time, was "predominate" in the arm-of-the-state analysis. *Id.* at 250-251. *Kohn* not only discarded the *Mitchell* factors (as discussed below), but it also corrected *Belanger's* erroneous framing of the overall question as one of waiver or abrogation of immunity that *plaintiff* was required to prove. *See id.* at 250. According to *Kohn,* waiver and abrogation are "second-stage inquiries" that arise only after arm-of-the state immunity is established. *Kohn,* 87 F.4th at 1031. As *ITSI TV* made clear (a year after *Belanger* was decided), sovereign immunity is an affirmative defense that *defendants* must prove.

Two decades after *Belanger*, the California legislature enacted Assembly Bill 97 ("AB97"), which revolutionized school funding. Sasse Decl.¶¶3-11. In a case against the Orange County Department of Education ("OCDE"), Judge Staton considered plaintiff's arguments that AB97's "massive" financing reforms so altered the basis of *Belanger* that it should be reconsidered and reversed. *Sato v. Orange Cnty. Dep't of Educ.,* 2015 WL 4078195, at *4 (C.D.Cal. July 6, 2015). The court found "merit to Plaintiff's' argument" (at *5), but had several concerns: First, plaintiff cited no "case law that calls into question the holding in *Belanger*." *Id.* Second, plaintiff failed to show that AB97 altered centralized control of school funding. Third, AB97 had established an 8-year phase-in timeline to implement the funding reforms. The court therefore concluded that:

> [E]ven if AB 97's amendments would warrant finding that California school districts are no longer entitled to Eleventh Amendment immunity, **it would be premature for this Court to find that the reasoning and holding of *Belanger* have been undermined until all of the relevant provisions of AB 97 have been fully implemented**.

*Id.* at *6. *Belanger* is now dead, AB97 reforms have been fully implemented, and the HBUHSD has significant autonomy over spending. Sasse Decl.¶¶3-13.

The Ninth Circuit affirmed Judge Staton in *Sato v. Orange County Department of Education,* 861 F.3d 923 (9th Cir. 2017). The *Sato* court's patently crabbed (if not error-ridden) analysis of whether AB97 "upended *Belanger*" (*id.* at 929) went to great lengths to find that the new funding scheme still left state and local funds "hopelessly intertwined." *Id.* at 932. It concluded that a money judgment against the OCDE could theoretically be satisfied out of state funds—which it considered to be "the most important" factor under *Mitchell. Id.* at 929. Overall, its analysis of the *Mitchell* factors was based on its understanding of the funding scheme in 2017—not as it stands now. Further, rather than treating sovereign immunity as the OCDE's affirmative defense, the court's analysis put a thumb heavily on the scale favoring affirmance of *Belanger.* It likely felt bound to do so. *See AGK Sierra De Montserrat v. Comerica Bank,* 109 F.4th 1132, 1136 (9th Cir. 2024) (3-judge panels are bound by precedent (even if clearly wrong) unless the Ninth Circuit en banc has clearly undermined it).

In 2023, in *Kohn,* the Ninth Circuit (en banc) addressed the sovereign immunity of the California State Bar. It rendered *Belanger* and *Sato* largely obsolete by discarding the *Mitchell* factors on which they relied and adopting an entity-based test for immunity. The *Kohn* test has only three factors: intent, control, and treasury. 87 F.4th at 1030. The **intent factor** turns on how the state characterizes and treats the entity and the nature of its functions. *Id.* at 1030,1032-1034. The **control factor** focuses on how the governing body is appointed or removed and whether the state directly supervises and controls the entity's

operations. *Id.* at 1030,1035-1036. The **treasury factor** seeks to "protect[] the state's financial solvency" by focusing on the entity's overall effects on the state treasury. *Id.* at 1030. The court also adopted an **entity-based test** for analyzing immunity rather than the activity-based test evident in many prior cases. *Id.* at 1031.

*Kohn* requires a much different analysis than in *Belanger* and *Sato,* which fixated on the possibility that payment of a judgment against MUSD and OCDE might use some state dollars because state and local funds were "commingled" and "hopelessly intertwined." *Belanger*, 963 F.2d at 252; *Sato*, 861 F.3d at 932. It is unclear why "commingling" of funds made a difference under the *Mitchell* factors. *See Beentjes v. Placer Cnty. Air Pollution Control Dist.,* 397 F.3d 775 , 780 n.3 (9th Cir. 2005) (criticizing *Belanger*'s reliance on "commingling" because "[w]ere commingling of funds the only requirement for immunity from suit, there would be few limits to the doctrine of sovereign immunity"). *Kohn* has now replaced that erroneous approach that resulted in an immunity finding.

Third, in addition to *Kohn*'s dismantling of *Belanger/Sato*, the underlying factual circumstances have radically changed since those cases were decided. The AB97-created Local Control Funding Formula (LCFF) that Judge Staton referred to in *Sato* is now fully implemented. Online sources say that "the first year of full implementation" of the LCFF was 2019-2020. Sasse Decl.¶8. The LCFF "fundamentally changed" how school districts are funded, giving "districts more money *and* greater autonomy" over how to meet local needs. Id.,¶7; see also id.,¶¶3-6,8-11.

Because *Kohn*'s entity-based test means that the immunity inquiry should focus ***specifically on the HBUHSD***, an analysis of the LCFF's impact on it is essential. *See Cal. Rifle & Pistol Ass'n, Inc. v. LA Cnty. Sheriff's Dep't*, 2025 WL 2324625 (C.D.Cal. July 21, 2025) (denying 12(b)(6) dismissal based on sheriff department's assertion of sovereign immunity due to factual issues stemming from

*Kohn's* new entity-based test). Publicly available data about the HBUHSD reflects that a large percentage of its budget is derived from local sources. Sasse Decl.¶¶12-13. But without discovery, Plaintiff cannot fully assess the *Kohn* factors' applicability to the HBUHSD. Plaintiff already has served discovery to begin investigating these issues. Sasse Decl.¶14

Clearly, discovery is likely to show that the HBUHSD's funding and autonomy are much different from the MUSD's circumstances considered 33 years ago in *Belanger*—requiring discovery and a fresh look at the immunity issue.

This conclusion is not altered by the unpublished post-*Kohn* district court decisions cited by Defendants (pp. 17-18) that applied *Belanger/Sato*. None of these cases fully engaged with *Kohn* and none are controlling:

- In three of the five cases (*T.L.*, *Donaghe,* and *A.W.*), the plaintiff did not oppose immunity—likely daunted by the complexity of the issue.
- Only two of the five cases (*Price* and *Ramirez*) reviewed the *Kohn* factors—and both in a cursory way that tracked the error-ridden, factually inapposite *Belanger* and *Sato* decisions.
- Only one (*T.L.*) explicitly labelled immunity as an affirmative defense.
- None discussed whether the change in law (*Kohn*) paired with the radical change in facts (LCFF) required reconsideration of *Belanger/Sato*.
- None was decided after discovery.
- None involved *the HBUHSD* as a party—leaving *Kohn's* entity-based analysis undecided as to it.

(See Sasse Decl.¶15,Ex. 9 for a chart summarizing these issues.)

Further, none cited the post-*Kohn* Ninth Circuit cases that have waved red flags about *Belanger/Sato*. In *Riley's American Heritage Farms v. Elsasser,* 2024 WL 1756101, n.1 (9th Cir. Apr. 24, 2024), the court said: "It is not clear that *Belanger's* and *Sato's* conclusions about California school boards being arms of the state remain good law after [*Kohn*]." In *K.J. v. Jackson,* 127 F.4th 1239, 1251 n.8

CROWELL & MORING LLP
ATTORNEYS AT LAW

OPPOSITION TO MOTION TO DISMISS; CASE NO. 8:25-CV-1648

(9th Cir. 2025) the court said: "We take no position on whether [*Sato*] should be revisited given our new test [in *Kohn*] for evaluating whether an entity is an arm of the state under the Eleventh Amendment." There, the court did not need to reach the issue of the school district's immunity because plaintiff's requested relief could be obtained from the individual defendants. *Id.* Finally, Judge Nelson's concurrence in *Health Freedom Defense Fund v. Carvalho* strongly urged a reconsideration of *Belanger/Sato* for three main reasons: (1) *Kohn's* abrogation of the *Mitchell* factors and the (2) shift to an entity-based analysis and (3) enactment of AB97. He summed up his critique as follows:

> Our new entity-based test in *Kohn* seems to conflict with (and likely overrule) our reasoning in *Belanger* and *Sato*. Because of this, the district court's holding that LAUSD is an 'arm of the state' (as well as our prior holdings in *Belanger* and *Sato*) may need to be revisited.

104 F.4th 715, 726-727 (9th Cir. 2024), *reh'g en banc granted, op. vacated,* 127 F.4th 750 (9th Cir. 2025), and *on reh'g en ban*c, 148 F.4th 1020, 1027 n.8 (9th Cir. 2025) (expressly not reaching question of immunity and referencing Judge Nelson's concurrence).

Although the post-*Kohn* district court decisions all overlooked these calls for a new look at *Belanger*, a few (*Price* and *Donaghe*) seized on *Kohn's* speculation that the new test would not "substantially destabilize past decisions granting immunity." *Kohn,* 87 F.4th at 1032. *Kohn* also emphasized, however, that "each case will be decided on its own facts" (*id.*) and acknowledged that even its present decision may not result in sovereign immunity for other state bars if they differed from the California Bar. *Id.* at 1037.

Here, all of the foregoing establishes that *Kohn* **did** "destabilize" *Belanger/Sato* and that the question of the HBUHSD's immunity should be decided on its own facts. Defendants failed to address any of these pivotal issues in their opening brief and should be precluded from doing so in their reply. *Giles,* 191 F.Supp.2d at 1127 (improper to raise new issues in reply).

Finally, policy considerations strongly favor holding school districts fully accountable under §1983 for violating their employees' federal rights. *See Owen v. City of Indep.*, 445 U.S. 622, 653 n.36. (1980) (denying municipalities qualified immunity from damages liability under §1983 and stating that "the threat of liability against the city ought to increase the attentiveness with which officials at the higher levels of government supervise the conduct of their subordinates"); *Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30, 54 (1994) (Stevens, J., concurring) ("Sovereign immunity inevitably places a lesser value on administering justice to the individual than on giving government a license to act arbitrarily.") As it stands, school districts are immune from suit under §1983, not just in federal court, but also in state court. *Kirchmann v. Lake Elsinore Unified Sch. Dist.,* 83 Cal.App.4th 1098 (2000). And individual school officials can claim qualified immunity from damages liability. School district officials may thus have too little incentive to avoid violating employees' federal rights (as reflected in this case). Although the arm-of-the state analysis does not consider such factors, they do weigh in favor of a careful reconsideration of California school districts' Eleventh Amendment immunity. Therefore, Plaintiff asks the Court to permit discovery to fully develop the record relevant to the *Kohn* factors and defer the determination of immunity until summary judgment to permit a more deliberate, well-informed decision.

### B.    Claims Against the Individual HBUHD Defendants Are Sufficiently Pled.

#### 1.    Each Defendant Is Causally Linked To The Alleged Constitutional Violations.

Although the Complaint sufficiently alleges how each Defendant is linked to the alleged constitutional violations, Defendants contend that none is "alleged to

have actually engaged in any act, except for Defendant Begany." They also argue that the Complaint improperly relies on a "team effort theory." Neither is true.[1]

### a.    Test For Pleading Causal Links.

Government officials can be held liable under §1983 for monetary damages in their individual capacities when their conduct is causally linked to the alleged constitutional violations. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Such linkages are established where defendants (1) did an affirmative act (or participated in another's act) that caused the constitutional injury or (2) set in motion a series of acts by others which defendants knew or should have known would cause the constitutional injury. *Armstrong v. Reynolds,* 22 F.4th 1058, 1069 (9th Cir. 2022); *Gilbrook v. Westminster*, 177 F.3d 839, 854 (9th Cir. 1999). *Supervisors* are liable under §1983 if there's "a sufficient causal connection between [their] wrongful conduct and the constitutional violation." *Rodriguez v. L.A.*, 891 F.3d 776, 798 (9th Cir. 2018); *see Starr,* 652 F.3d at 1207-09 (supervisors are liable for "acquiescence or culpable indifference"); *Riley's Am. Heritage Farms v. Elasser,* 32 F.4th 707, 724 (9th Cir. 2022) (school board members were causally linked to constitutional violations where they failed to remedy violations of which they were aware).

To properly plead Defendants' causal connections to the §1983 violations, the Complaint "does not need to show with great specificity how each defendant contributed to the violation of [plaintiff's] constitutional rights." *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.,* 479 F.3d 1175, 1182 (9th Cir. 2007); *see also Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (reversing dismissal of §1983 claim on ground that "[s]pecific facts are not necessary"); *accord Lara v. Maywood*, 2008 WL 11636967, at *8 (C.D.Cal. Sept. 22, 2008).

Also, the identities of HBUHSD personnel involved in the alleged misconduct are matters "peculiarly in [Defendants'] possession and control." *See*

---

[1] The Motion did not challenge the pleading against Defendants in their ***official*** capacities for non-monetary relief.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Soo Park v. Thompson,* 851 F.3d 910, 928 (9th Cir. 2017) (*Twombly* "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant") (citation modified). That being so, the Complaint's allegations properly focus on each Defendant's role at the HBUHSD and the context in which Kluwe's discharge arose as a basis for plausibly inferring that they all participated in the alleged constitutional violations.

> ### b.     The Complaint Sufficiently Pleads Causal Links.

Under these standards, the Complaint sufficiently pleads that each Defendant's conduct was causally connected to the violations of Kluwe's constitutional rights. As the Complaint alleges, Kluwe is a former NFL and UCLA punter with a large following on Bluesky. Compl.¶¶54-55,122. His highly-publicized city council appearance and arrest occurred just nine days before his discharge. Compl.¶¶102-123,172-175. HBUHSD officials would have known that terminating Kluwe so quickly after his city council appearance would likely cause an uproar and accusations of First Amendment retaliation. They also would have known that an apparent tie between Kluwe's city council appearance and discharge would implicate District policy violations (Compl.¶237), Labor and Education Code violations (Compl.¶238), and criminal penalties. Cal.Educ.Code §44040 (misdemeanor for school district to invoke disciplinary action against an employee "solely because of the employee's appearance before" any "governmental board, commission or council").

After Begany told Kluwe on February 27, 2025, that he was being discharged because the school "was getting too much attention" (without mentioning the PSA post, Compl.¶306), the predictable ensued: It garnered significant attention, accusations of unlawful retaliation from Kluwe and others, and an inquiry from Representative David Min expressing concerns about the motive for the discharge. HBUHSD officials surely knew that anything they said publicly about Kluwe's

discharge at this point would be a hot topic. In what can only be regarded as vindicative, HUBHSD officials chose to issue a press release, labelling Kluwe as a violent liar. Compl.¶¶102-183,192-198.

In this context, it is *implausible* that the decisions about Kluwe's discharge and related press release central to all claims were not all-hands-on-deck events for District and EHS senior officials. Relying on publicly-available information about HBUHSD personnel's roles (including job descriptions and Board Policies) and the HBUHSD's very limited responses to Kluwe's Public Records Act requests, the Complaint targeted such high-level officials:

### 1) Participation in the Unlawful Discharge.

**Defendant Carolee Ogata** is alleged to be the HBUHSD's Superintendent and CEO of the Board of Trustees with "ultimate decision-making authority for staff employment decisions" and responsibility for "implementing the policies of the board." Compl.¶34.

**Defendant Susan Henry** is the President of the HBUHSD's Board of Trustees, which has responsibility for employing and managing personnel and conducting the HBUHSD's affairs. Compl.¶¶ 36-38.

**Defendant Daniel Morris** is the EHS Principal who "oversees all aspects of the school's operations, including supervising school staff and recommending employment and dismissal." Compl.¶¶43-44.

**Defendant Daniel Bryan** is the Assistant Superintendent of Human Resources at HBUHSD who is responsible "for developing, interpreting, and recommending application of HBUHSD policies." Compl.¶¶40-41. Kluwe's discharge was based on a determination that his conduct violated the HBUHSD's Civility Policy, that the Civility Policy could be lawfully applied to Kluwe, that no policy required any type of investigation or hearing before his discharge or subsequent issuance of the press release, and that his discharge did not violate District policies or laws related to employees' political activity and free speech

CROWELL
& MORING LLP
ATTORNEYS AT LAW

rights. Compl.¶¶197,207-208,229,237-238,267-284. Accordingly, it is plausible that Bryan provided guidance to other senior officials like Ogata, Henry, and Morris relating to Kluwe's discharge.

Based on these Defendants' positions, the high-profile nature of the discharge decision, and the implication of multiple policies and laws, the Complaint alleges upon information and belief that they all participated in Kluwe's discharge. Compl.¶¶ 35,39,42,45.

**Defendant Edward Begany,** the Assistant Principal of Supervision at EHS, "assists the Principal in his responsibilities, including staff management and administering the EHS athletic program." Compl.¶¶46-47. Because he personally informed Kluwe of the discharge decision and his position description reflects decision-making authority to do so, the Complaint sufficiently alleges his participation in Kluwe's unlawful discharge.

The Complaint also sufficiently alleges that they discharged Kluwe "because of" his First Amendment speech. Because Defendants say the PSA post was the reason for Kluwe's discharge, they all would have seen some version of it as part of their decision-making. Even Epting's cropped version of that post clearly referenced the library controversy—saying "Stop fucking with the library. That's what the city council is doing." That they all must have known (or recklessly disregarded) that the PSA post was political speech is supported by allegations that the library-related controversies were well-publicized (Compl.¶¶75-80), that Kluwe's arrest just a week earlier for his library-related protest was highly-publicized (id. at ¶¶102-112), that the HBUHSD likely received the cropped version of the post from known MAGA loyalists (id. at ¶¶81-101,159), and that HB is generally notorious for its MAGA-dominated city council and contentious political climate (id. at ¶¶70-74). They are therefore all culpable for ignoring that the PSA post's language implicated political speech, requiring greater care before using it as a basis for discipline. *Waters v. Churchill*, 511 U.S. 661, 677-78 (1994) )

(if there is a "substantial likelihood" that an at-will employee's speech implicates First Amendment protections, employers are required to "tread with a certain amount of care" by conducting a reasonable inquiry before relying on it as a basis for discharge). Their failure to do so resulted in an unconstitutional discharge decision.

### 2) Participation in The Defamatory Press Release.

After Kluwe's discharge, Ogata, Henry, and Morris all received Representative Min's letter expressing concerns that the decision was unlawful—which suggests their knowledge and involvement in post-discharge events. Compl.¶¶181-82. Also, the HBUHSD and EHS were listed as the authors of the March 3rd press release—suggesting involvement of senior officials like Ogata, Henry, and Morris. Further, the inflammatory press release not only vilified Kluwe, but it also disclosed confidential personnel information about him, apparently in violation of District policy. Compl.¶¶192-197,239,Ex.29. Given Bryan's position, he likely advised about the application of District policy for this remarkable decision. Because EHS was a joint author on the press release, it is plausible that EHS Principal (Morris) and Assistant Principal (Begany)—who were involved in the discharge decision—also participated in the press release.

### c. Plaintiff Does Not Rely on a "Team Effort" Theory.

The foregoing establishes that the Complaint sufficiently pleads that all Defendants participated in the constitutional violations or were culpable for their acquiescence in the violations committed by their subordinates.

Contrary to Defendants' contention (at 19-20), the Complaint does not rely on the debunked "team effort theory," which permitted liability for mere bystanders. *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996). The Ninth Circuit recognizes liability, however, for "integral participation" when multiple government officials act to cause a constitutional violation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007); *Bledsoe v. Ferry Cnty.*, 499

F.Supp.3d 856, 882-84 (E.D.Wash. 2020) (county commissioners' integral participation in First Amendment violation created §1983 liability); *Johnson v. Shasta Cnty.,* 83 F.Supp.3d 918, 926-927 (E.D.Cal. 2015) (allegations that did not specify conduct of each defendant in an unlawful raid sufficiently pled §1983 claim under integral participation theory). Based on this theory too, Kluwe has sufficiently pled Defendants' causal links to the constitutional violations.

## 2.    The Complaint Provides Fair Notice To All Defendants That Is Not Obscured By So-Called "Shotgun Pleading."

Defendants' contention that dismissal is required because the Complaint uses so-called "shotgun pleading" tactics is meritless. The Eleventh Circuit's shotgun pleading framework is not about imperfection-spotting for its own sake. The ultimate question is whether defendants are deprived of fair notice. *See Weiland v. Palm Beach Sheriff's Off.,* 792 F.3d 1313, 1322-45 (11th Cir. 2015) (synthesizing "shotgun pleading" line of cases and finding §1983 claims properly pled despite use of shotgun pleading tactics).

Defendants complain that the Complaint lumps them together, but whether doing so is problematic depends on the full context of the complaint, construed in the light most favorable to the plaintiff. *Adobe Sys. v. Blue Source Grp.,* 125 F.Supp.3d 945, 964-965 (N.D.Cal. 2015). Lumping defendants together may obscure notice in complex cases with multiple complicated causes of action against many distinct entities—like *Sollberger, George,* and *Byrne* cited by Defendants (at pp. 18-19). *See Savage v. Tweedy,* 2012 WL 6618184, at *5 (D.Or. Dec. 13, 2012) (distinguishing *Sollberger* because lumping defendants together did not deprive them of notice); *accord Reynolds v. EzriCare LLC,* 700 F.Supp.3d 830, 842 (N.D.Cal. 2023). But it does not do so in less complex cases, like here. *E.g., Webb v. San Bernadino,* 2023 WL 11999208, at *4 (C.D.Cal. June 26, 2023) (rejecting challenge to "lumping" three defendants together where the allegations gave them sufficient notice of the §1983 claims against them, especially given that "many of

the facts Defendants request are information that they would already know or be able to ascertain"); *accord Wright v. Santa Cruz,* 2014 WL 217089, at *3 (N.D.Cal. Jan. 17, 2014); *CDK Glob. v. Tekion*, 2025 WL 1939951, at *11 (N.D.Cal. July 15, 2025) (allegations where defendants are grouped together with parts laying out each actor's conduct gives each defendant notice of role played in alleged harm). As the discussion above demonstrates, the Complaint sufficiently informs all Defendants how they are causally linked to Kluwe's claims.

Similarly, we located no case in which incorporating prior paragraphs by reference alone warranted dismissal. *See Almont Ambulatory Surgery Ctr. v. UnitedHealth Grp.,* 2015 WL 12777092, at *5 (C.D.Cal. Oct. 23, 2015) (incorporating by reference was harmless where allegations under each count provided sufficient basis for claim); *Giannini v. Sacramento,* 2023 WL 6279437 (E.D.Cal. Sept. 26, 2023) (problem was not incorporating by reference *per se*, but "overwhelming" use of disorganized, conclusory assertions).

Defendants' detailed summary of facts and claims against them (pp. 11-15) clashes with their assertion that they don't understand those claims. If they found that "shotgun pleading" rendered the Complaint unintelligible, they were required to file a Rule 12(e) motion for a more definite statement. *Anderson v. Dist. Bd. of Trs.,* 77 F.3d 364, 366 (11th Cir. 1996). Such motions are disfavored in the Ninth Circuit, and Defendants' surely would have been rejected. *Bautista v. L.A.,* 216 F.3d 837, 843 n.1 (9th Cir. 2000) (12(e) motions are rarely granted); *Barefield v. Gibbs*, 2025 WL 525073, at *2 (E.D.Cal. Feb. 18, 2025); *Cree v. Tarr,* 2017 WL 3219974, at *8-9 (S.D.Cal. July 28, 2017).

### 3. The Complaint Sufficiently Pleads *Monell* Liability.

It's unclear whether Defendants object to the pleading of the HBUHSD's liability, so we briefly address it here. Its liability under §1983 (so-called *Monell* liability) can be established by showing that, in connection with the constitutional violations, (1) a district employee was acting pursuant to an official policy, (2) a

CROWELL
& MORING LLP
ATTORNEYS AT LAW

person with "final policymaking authority" caused the violation, or (3) a final policymaker ratified a subordinate's decision. *Christie v. Iopa,* 176 F.3d 1231, 1235-39 (9th Cir. 1999); *see Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir. 2004).

Here, Kluwe was discharged for violating the Civility Policy—an official Board Policy that creates *Monell* liability. *See Persaud v. N.Y.C.,* 2024 WL 2159852, at *9 (S.D.N.Y. May 14, 2024) (City's code of conduct and social media policy were official policies for §1983 liability purposes); *accord Inendino v. Lightfoot,* 2023 WL 2349909, at *6 (N.D.Ill. Mar. 3, 2023); *Brown v. Tulsa*, 124 F.4th 1251, 1264 & n.5 (10th Cir. 2025). Additionally, Superintendent Ogata and Board of Trustee Henry—final policymakers for the HBUHSD—are plausibly alleged to have participated in violating Plaintiff's constitutional rights or ratified those violations. Compl.¶32. Therefore, *Monell* liability is sufficiently pled.

### C.    The Complaint Sufficiently Pleads Punitive Damages.

The Complaint sufficiently pleads punitive damages under §1983—a question governed by ***federal law,*** not the California standard cited by Defendants (p. 20). Punitive damages are available against public officials in their individual capacities under §1983 if they act with malice, oppression, or with reckless or callous indifference to a plaintiff's federally protected rights. *See Dang v. Cross,* 422 F.3d 800, 806-811 (9th Cir. 2005) (defining "malice" at 809, "reckless indifference" at 809, and "oppression" at 809-810).

The Complaint sufficiently alleges that all Defendants participated in the alleged constitutional violations. Numerous allegations further imply *at least* reckless indifference to Kluwe's constitutional rights. Kluwe alleged that each Defendant intentionally or recklessly applied the unconstitutional Civility Policy to him to justify his discharge; recklessly disregarded that his PSA post constituted highly-protected political speech despite massive public attention to library-related controversies; relied on a sham or non-existent investigation that ignored Kluwe's clarifying social media posts, failed to ask him his side of the story, and considered

CROWELL
& MORING LLP
ATTORNEYS AT LAW

politically-motivated sources of information; disregarded their own policies and state law in order to justify discharging him; and issued a vindicative press release that disclosed confidential information and that labeled him a violent liar.

These allegations are more robust than punitive damages pleadings in other cases that have survived dismissal. *See Webb,* 2023 WL 11999208, at *5; *Mora v. Chula Vista*, 2021 WL 4220633, at *6 (S.D.Cal. Sept. 16, 2021); *Equine Legal Sols. v. Buntrock*, 2008 WL 111237, at *2 (N.D.Cal. Jan. 9, 2008). Accordingly, even if a 12(b)(6) motion was a proper mechanism to challenge punitive damages— which is doubtful, *e.g., Murillo v. Godfrey*, 2023 WL 2825701 (C.D.Cal. Feb. 21, 2023); *Elias v. Navasartian*, 2017 WL 1013122, at *4 (E.D.Cal. Feb. 17, 2017)— Defendants' motion should be denied.

### D.    The Complaint Sufficiently Pleads the Second Cause of Action.

The Second Cause of Action contends that the HBUHSD's Civility Policy is unconstitutionally (1) overbroad, (2) vague, and (3) viewpoint discriminatory in violation of the First Amendment. A First Amendment challenge to a prospective restriction on employee speech (such as the Civility Policy) is governed by the balancing test set forth *Pickering v. Bd. of Ed. of Twp. High Sch. Dist.,* 391 U.S. 563 (1968) and *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 475 (1995) ("NTEU"). *See Barone v. Springfield*, 902 F.3d 1091, 1102 (9th Cir. 2018); *Moonin v. Tice*, 868 F.3d 853, 861 (9th Cir. 2017); *Aids Healthcare Found. v. Cal. Dep't of Health Care Servs.*, 2023 WL 2721457, at *16 (C.D.Cal. Mar. 30, 2023) (*Pickering* balancing applies to both facial and as-applied challenges). This two-step test first requires plaintiffs to show that the employee speech restriction targets speech on topics of public concern that are outside their job duties. *Moonin*, 868 F.3d at 861. The burden of proof then shifts to the government employer to demonstrate that the speech restriction protects government interests that outweigh employees' free speech rights. *Id.* at 864-865.

The scope of the *Pickering/NTEU* test, however, differs based on the scope

of plaintiffs' claims. For example, in *Barone*, the city police department tried to force an officer to sign a disciplinary agreement that restrained her speech. She refused and was fired. 902 F.3d at 1101. Applying *Pickering* balancing, the court found that the overbroad, viewpoint discriminatory agreement was not justified by any legitimate interest by the police department. 902 F.3d at 1101-1106.

In *NTEU,* the Supreme Court created a broader approach to "as applied" challenges. There, the Court invalidated a general ban on all employees' ability to accept payment for off-duty, nonwork-related speech that was imposed to prevent the appearance of misuse of power. 513 U.S. at 465-477. It enjoined enforcement of the ban, however, only against the plaintiffs before it (who were lower level employees) due to the possibility that the ban could be lawfully applied to higher-level employees. 513 U.S. at 477-479; *see Guffey v. Mauskopf,* 45 F.4th 442, 450 (D.C.Cir. 2022) (finding that restrictions on off-duty political speech was unlawful as to nearly all employees but limiting injunction to just plaintiffs). *NTEU* did not espouse a "facial" or "as applied" standard. Rather, it blurred the distinction between the two. *Sanjour v. E.P.A.,* 56 F.3d 85, 92 & n.10 (D.C.Cir. 1995) (en banc); *Hernandez v. Phx.*, 482 F.Supp.3d 902, 916 n.4 (D.Ariz. 2020), *aff'd in part, rev'd in part and remanded*, 43 F.4th 966 (9th Cir. 2022). The *NTEU* test has been characterized as an "as applied challenge to a broad category of non-official employee speech." *Sanjour*, 56 F.3d at 93. It permits a facial attack—evaluated under *Pickering* rather than the "heavy burden" for succeeding on traditional facial attacks—with declaratory/injunctive relief focused on only the plaintiff and a similarly-situated subgroup. *See id.* at 91 n.8. Here, Kluwe asserts both a narrow (*Barone*) and broad (*NTEU*) "as applied" challenge to the Civility Policy.

The Complaint satisfies the first prong of the *Pickering/NTEU* test by alleging that the Civility Policy applies to employees' speech outside their job duties on matters of public concern. Compl.¶¶208,264,267,268.

In the second step, Defendants' bear the burden to justify the Civility Policy. A sliding scale analysis applies, such that the more tightly the First Amendment embraces the speech regulated by the Civility Policy, the weightier the HBUHSD's interests must be. *Connick v. Myers,* 461 U.S. 138, 150, 152 (1983). Evident from the Complaint is that the Civility Policy's sweeping reach includes highly-protected, off-duty political speech, requiring Defendants to satisfy a high burden for regulating it. *Dodge v. Evergreen Sch. Dist.*, 56 F.4th 767, 782 (9th Cir. 2022) (school official had "a particularly heavy burden under the *Pickering* test" to justify discipline for political expression); *Guffey*, 45 F.4th at 446 (government employer has "heavy burden" to justify political speech restrictions); *Mahanoy Area Sch. Dist. v. B.L.,* 594 U.S. 180, 205-211 (2021) (Alito, J., concurring) (a category of speech that is almost always beyond the regulatory power of a public school is off-premises speech that addresses matters of public concern such as politics that is not directed at the school, teachers, or students).

Additionally, the *NTEU* test imposes a heightened burden on employers to justify prospective speech restraints due to their wider impact and tendency to chill speech before it happens. *NTEU*, 513 U.S. at 467-68; *accord Barone*, 902 F.3d at 1091; *Moonin*, 868 F.3d at 861. Therefore, a speech regulation must be well tailored to the legitimate interest it seeks to protect. *Barone*, 903 F.3d at 1106.

*Pickering/NTEU* balancing considers overbreadth, vagueness, and viewpoint discrimination as factors weighing against employers. *Damiano v. Grants Pass Sch. Dist.*, 140 F.4th 1117, 1149 (9th Cir. 2025) ("both the First Amendment retaliation and the as-applied, content- and viewpoint-based discrimination claims are subject to the *Pickering* analysis"); *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 650 (9th Cir. 2006) ("the *Pickering* balancing approach applies regardless of the reason an employee believes his or her speech is constitutionally protected"); *Adamian v. Jacobsen,* 523 F.2d 929, 933-35 (9th Cir. 1975) (applying *Pickering* balancing to claims that a university's staff civility policy was unconstitutionally overbroad and

CROWELL
& MORING LLP
ATTORNEYS AT LAW

vague); *Johnson v. L.A. Fire Dep't,* 865 F.Supp. 1430, 1436-1442 (C.D.Cal. 1994) (that a fire department's sexual harassment policy included a content-based regulation of speech was a "particularly weighty" factor against defendant in *Pickering* balancing); *Sanjour,* 56 F.3d at 97 ("in the context of *Pickering* balancing," unbridled discretion afforded to the government in a speech regulation "justifies an additional thumb on the employees' side of our scales").

Thus, the greater the value of the speech regulated, the heavier the burden on the HBUHSD to show a correspondingly strong interest and that the Policy is well-tailored to that interest (not overbroad), clear (not excessively vague), and viewpoint/content neutral (not discriminatory, unless well-justified).

Here, citing cases outside the public employment context, Defendants relied on the wrong standard to challenge the Second Cause of Action. They do not mention *Pickering/NTEU* and made no effort to justify the Civility Policy. Such an argument would have been improper in any event. *Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025) (*Pickering* balancing typically improper on 12(b)(6) motion). The Court's analysis should end here. Even if it proceeds, the deficiencies in the Civility Policy are sufficiently pled.

First, the Complaint sufficiently alleges that the Civility Policy is unconstitutionally **overbroad** because it purports to govern a large amount of speech that falls well outside any legitimate interest the HBUHSD has in school operations. Compl.¶¶256-269. Even if the Civility Policy could lawfully curtail high-level employees' engagement in uncivil speech that was disruptive of school operations, it has little applicability to Kluwe and similarly-situated staff and none to off-campus, political speech. Notably, Defendants do not specifically challenge the allegations of overbreadth, arguing (incorrectly p. 23) that overbreadth and vagueness challenges are coterminous. *See Hernandez,* 43 F.4th at 980-983 (finding social media policy overbroad but not vague under *Pickering/NTEU* balancing); *Adamian,* 523 F.2d at 933 (applying "the closely related first amendment doctrines

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    of vagueness and overbreadth").

2        Second, the Complaint sufficiently alleges that the Civility Policy is

3    unconstitutionally **vague**. Compl.¶¶270-275. Because vague speech regulations

4    interfere with employees' free speech rights through their chilling effects, the

5    vagueness factor weighs against constitutionality. *Hernandez,* 43 F.4th at 980-983.

6    Speech restraints are unconstitutionally vague if they (1) "fail to afford employees a

7    reasonable opportunity to understand what conduct they prohibit" or (2) "permit

8    arbitrary and discriminatory enforcement." *Id.* at 982; *see Cohen v. San Bernardino*

9    *Valley Coll.*, 92 F.3d 968, 972 (9th Cir. 1996) (university's sexual harassment

10   policy was unconstitutionally vague as applied to a professor's teaching methods in

11   an "entirely ad hoc" manner that constituted "legalistic ambush").

12       The Complaint alleges that the Civility Policy's ban on any disrespectful or

13   uncivil speech (apparently whether expressed on- or off-duty) offers no discernible

14   standard from which employees could determine what types of speech would

15   subject them to discipline and no explicit standards to prevent arbitrary and

16   capricious application. Compl.¶¶274-75. Thus, the Complaint sufficiently pleads

17   vagueness as a factor that weighs in Kluwe's favor in *Pickering/NTEU* balancing.

18       In an effort to counter this conclusion, Defendants first contend that the

19   Civility Policy is not subject to constitutional challenge because it "does not

20   prohibit any conduct" (p. 24)—apparently trying to frame it as a mere aspirational

21   guideline that does not restrict speech. The "most powerful (or at least most

22   dramatic) support" for the opposite conclusion is that the HBUHSD explicitly

23   relied upon it here to fire Kluwe. *See Coll. Republicans v. Reed,* 523 F.Supp.2d

24   1005, 1017 (N.D.Cal. 2007) (school's claim that civility policy was only

25   aspirational belied by school official's reliance on it as a basis for discipline). This

26   point may be further confirmed by other policy documents obtainable through

27   discovery. *See id.* (construing Student Handbook with the civility code to determine

28   that the code was not aspirational).

Citing no cases (p. 24), Defendants next argue that, because at-will employees are not entitled to *any* reason for their discharge, Kluwe was not entitled to notice that Defendants could discipline him under the Civility Code for engaging in off-campus political speech. The confusion evident in this argument likely stems from the Complaint's citation to the Fourteenth Amendment, which was cited for two reasons. First, the First Amendment applies to states via the Fourteenth Amendment. Second, First Amendment cases draw on it for notions of fair notice. But a *speech* regulation's excessive vagueness is independently unlawful under the First Amendment. *Reno v. Am. C.L. Union,* 521 U.S. 844, 870 (1997) (declining to decide vagueness under the due process clause because the speech-related regulation's ambiguities rendered it unconstitutional under the First Amendment); *id.* at 871-72 ("vagueness of such a [communications decency] regulation raises special First Amendment concerns because of its obvious chilling effect on free speech"); *Minn. Voters All. v. Mansky*, 585 U.S. 1, 16-22 (2018) (regulation banning political expression in polling places violated First Amendment due to excessive vagueness that permitted "virtually open-ended interpretation"). The Second Cause of Action is based on the Civility Policy's chilling effects on speech protected by the First Amendment, which has no exception for at-will employees. *Mt. Healthy v. Doyle*, 429 U.S. 274, 283-84 (1977) (decision not to rehire at-will employee cannot be based on his exercise of First Amendment rights); *Hyland v. Wonder,* 972 F.2d 1129, 1136 (9th Cir. 1992) (at-will employment "does not diminish his First Amendment claim").

Defendants further contend that the Civility Policy was not vague as applied to Kluwe because his speech "on its face, was reasonably interpreted as a school employee promoting violence." (p. 25). On its face, even Epting's cropped version of Kluwe' PSA post alluded to the well-publicized controversy surrounding the city council and the library. Compl.¶135,265. ***At a minimum,*** the post was ambiguous, and its reference to the library and city council put Defendants on notice that an

investigation was needed to explore whether it constituted First Amendment protected speech. *Waters,* 511 U.S. at 677-78; *Bauer v. Sampson,* 261 F.3d 775, 784 n.5 (9th Cir. 2001).

<u>Third</u>, the Complaint sufficiently alleges that the Civility Policy facilitates unconstitutional **viewpoint discrimination**. Compl.¶¶276-284. Defendants' sole challenge to this factor (pp. 25-26) is that the allegations are "speculative."

The language of the Civility Policy regulates uncivil or disrespectful speech about anyone, including members of the public. Compl.¶¶208,264. This aspect of the Policy "single[s] out a subset of messages for disfavor based on the views expressed" (*Matal v. Tam,* 582 U.S. 218, 248 (2017) (Kennedy, J., concurring)) because any decision regarding whether speech violates those provisions requires a viewpoint determination. *See Flores v. Bennett,* 635 F.Supp.3d 1020, 1035-37 (E.D.Cal. 2022); *Mama Bears v. McCall*, 642 F.Supp.3d 1338 (N.D.Ga. 2022).

For example, restricting employee speech that does not "promote mutual respect, civility, and orderly conduct" with no explicit guardrails permits personally-biased determinations that politically-favored speech is appropriate (e.g., Trump-supportive speech) while politically-disfavored speech is inappropriate (e.g., speech criticizing MAGA). To apply the Civility Policy, Defendants must review the content of employees' speech to determine whether it is sufficiently civil. But the Policy provides no criteria for making that judgment—giving school officials unbridled discretion to decide whether to discipline employees for the content of their speech. *Rosenbaum v. S.F.,* 484 F.3d 1142, 1159-60 (9th Cir. 2007) (a regulation that affords government officials "unbridled discretion to determine whether or not to enforce limitations on First Amendment activity may support the inference of viewpoint discrimination").

The context of Kluwe's discharge further bolsters the inference that the boundless discretion permitted by the Civility Policy, in fact, facilitates viewpoint discrimination. The Complaint alleges that MAGA loyalists were excoriating

Kluwe before his discharge (Compl.¶¶114-121,137-145,158-59,165-171) and that they complained to EHS about Kluwe's PSA post and other issues (Compl.¶¶158-159,168). These allegations plausibly imply that Defendants felt pressured to discipline Kluwe by MAGA loyalists. Weighting such complaints in the discharge decision constitutes content- and potentially viewpoint-discrimination. *Ctr. for Bio-Ethical Reform v. L.A. Sheriff Dep't*, 533 F.3d 780, 788-89 & n.6 (9th Cir. 2008): "If *listeners* react to speech based on its content and the government then ratifies that reaction by restricting the speech in response to *listeners' objections,* then the restriction is content-based." *Id.* at 789.

Additional facts probative of viewpoint discrimination include: (1) a chronology of events suggestive of discriminatory motive (*Cantu v. Portland,* 2020 WL 2952972, at *7 (D.Or. June 3, 2020) and (2) selective enforcement (*Marshall v. Amuso,* 571 F.Supp.3d 412, 422 (E.D.Pa.2021). Kluwe's discharge chronology (Compl.¶¶281-82) and allegations that Defendants have not applied the Civility Policy to punish conservative speech (id. at ¶¶283-284) further supports this claim. Accordingly, the Complaint sufficiently pleads viewpoint discrimination as a factor favoring Kluwe in *Pickering/NTEU* balancing.

For all these reasons, the Second Cause of Action is sufficiently pled.

**E.    The Complaint Sufficiently Pleads the Third Cause of Action.**

Kluwe also sufficiently pleads the Third Cause of Action for deprivation of liberty without due process. The claim has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of adequate process. *Jensen*, 131 F.4th at 699.

During the meet and confer process, Plaintiff's counsel agreed to drop the property interest theory in the Third Cause of Action. Because this is the sole cause of action for which a property interest is relevant, Defendants' preoccupation with this issue (pp. 21-22,24-26) is a pointless distraction.

The question for the Third Cause of Action is only whether Kluwe has

CROWELL
& MORING LLP
ATTORNEYS AT LAW

sufficiently pled that Defendants deprived him of a liberty interest in his good name, reputation, honor, and integrity without due process. This so-called "stigma-plus" due process theory has four elements: (1) defendants publicly disclosed a stigmatizing statement, (2) plaintiff contests the accuracy of the statement, (3) the statement was made in connection with plaintiff's discharge, (4) defendants did not afford plaintiff sufficient process before depriving him of his liberty interest in his reputation. *Chaudhry v. Aragon*, 68 F.4th 1161, 1170-71 (9th Cir. 2023); *Ulrich v. S.F.*, 308 F.3d 968, 981-83 (9th Cir. 2002).

Defendants' argument that Kluwe has not sufficiently pled this claim may be most notable for what it does **not** say: They admit all elements but try to manufacture an issue about causation for the first element of public disclosure of a stigmatizing statement. Boiled down, their sole contention is that Kluwe forced Defendants to falsely accuse him of being a violent liar by complaining that MAGA pressured EHS to fire him for his city council protest. Therefore, they argue, Defendants did not *cause* Kluwe's deprivation of rights—he made them do it.

Conspicuously absent from this strained argument is any supporting authority. Defendants cite only *Llamas* and *Olivieri* (p. 28) in a convoluted, blame-shifting effort. There, plaintiffs argued that their own disclosures of defendants' defamatory statements on job applications satisfied the publication prong of the stigma-plus due process or defamation claims. The courts rejected the argument because it incentivized plaintiffs to republish the defamation to magnify damages. Here, *Defendants* are the only parties who published the false statement that Kluwe is a violent liar. *Kluwe's* statement was that EHS fired him under pressure from MAGA for his city council protest.

The issue ultimately is one of causation for disclosing the false, stigmatizing statement. To plead causation, Kluwe must only allege facts suggesting that Defendants "caused—either directly or by setting in motion a series of acts—the alleged deprivation" of his liberty interest. *Chaundry,* 68 F.4th at 1169-70 & n.12;

Crowell & Moring LLP
ATTORNEYS AT LAW

*Harper v. L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008) (proximate cause exists where an act played a substantial part in causing plaintiff's injury). The Complaint sufficiently alleges that all Defendants' conduct was a substantial factor in causing the publication of the false, stigmatizing press release. Their contrary contention that Kluwe forced them to do it is absurd. A few alternative options were:

- Investigate the First Amendment-implicating PSA post and ask Kluwe for his side of the story *before* discharging him,

- Honestly tell Kluwe that he was being fired for his PSA post rather than "because the school was getting too much attention" (Compl.¶306)—an apparently false explanation that caused Kluwe to believe he was fired for MAGA loyalists' objections to his city council protest,

- As the claim's fourth element advises, ask Kluwe for his side of the story *before* publishing a false, stigmatizing statement related to his discharge,

- Issue a press release that said that Kluwe was fired for an HBUHSD policy violation, not his city council appearance, and that further details are confidential personnel information.

Defendants appear to argue that, despite all their bad choices leading inevitably to Kluwe's constitutional injury, Kluwe was, in fact, its sole cause. That remarkable argument provides no basis for a 12(b)(6) dismissal. *Herrera v. L.A.*, 2013 WL 12121879, at *7 (C.D.Cal. Aug. 2, 2013) (proximate cause is generally a question of fact for the jury); *Jones v. Williams,* 297 F.3d 930, 937 n.6 (9th Cir. 2002) (when the conduct of two or more persons operates together or independently to cause injury or damage, each may be a proximate cause).

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. If the Court grants any portion of the Motion, Plaintiff requests leave to amend the Complaint.

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

OPPOSITION TO MOTION TO DISMISS;
CASE NO. 8:25-CV-1648

1 Dated: September 29, 2025     CROWELL & MORING LLP

2

3             By: */s/ Daniel A. Sasse*

4              Daniel A. Sasse
               David C. Griffith

5              Jazmine G. Buckley

6             *Attorneys for Plaintiff Christopher Kluwe*

7

8 Dated: September 29, 2025     LAW PRACTICE OF ANNE BRAFFORD

9

10            By: */s/ Anne M. Brafford*

11              Anne M. Brafford

12             *Attorneys for Plaintiff Christopher Kluwe*

13

14 Dated: September 29, 2025     ACLU Foundation of Southern California

15

16            By: */s/ Peter Eliasberg*

17              Peter Eliasberg
              Jonathan Markovitz

18

19             *Attorneys for Plaintiff Christopher Kluwe*

20             *Please be advised that the ACLU Foundation of Southern California*

21             *represents Plaintiff Kluwe solely in connection with his First-Third*

22             *Causes of Action asserted against the HBUHSD Defendants. The*

23             *ACLU does not represent Plaintiff Kluwe in connection with the Fourth*

24             *Cause of Action asserted against Defendant Epting.*

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Christopher Kluwe, certifies that this brief contains 8,885 words, which complies with the Order Granting the Application Extending the word limit for Plaintiff's Memorandum in Opposition to HBUHSD Defendants' Motion to Dismiss, ECF 41.

Dated: September 29, 2025              */s/ Daniel A. Sasse*
                                               Daniel A. Sasse

# **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-4.3.4(a)(2), I certify that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Daniel A. Sasse*
Daniel A. Sasse

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on September 29, 2025, I electronically filed the

3  foregoing with the Clerk of the Court using the CM/ECF system, which will send a

4  Notice of Electronic Filing to Counsel for all Parties, who are CM/ECF registrants.

5

6                        */s/ Daniel A. Sasse*

                      Daniel A. Sasse

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW