ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Mark R. Bresee          State Bar No. 167346
    MBresee@aalrr.com
Brooklyn N. Robertson    State Bar No. 356391
    Brooklyn.Robertson@aalrr.com
Anthony P. De Marco      State Bar No. 217815
    ADeMarco@aalrr.com
20 Pacifica, Suite 1100
Irvine, California 92618-3371
Telephone:  (949) 453-4260
Fax:  (949) 453-4262

Attorneys for Defendants HUNTINGTON BEACH
UNION HIGH SCHOOL DISTRICT, CAROLEE
OGATA, SUSAN HENRY, DANIEL BRYAN,
DANIEL MORRIS, and EDWARD BEGANY,

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### ORANGE COUNTY DIVISION

| CHRISTOPHER KLUWE, | Case No.    8:25-CV-1648-FWS |
|---|---|
| Plaintiff, | **DEFENDANTS HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT, CAROLEE OGATA, SUSAN HENRY, DANIEL BRYAN, DANIEL MORRIS, AND EDWARD BEGANY'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFF'S SECOND AND THIRD CAUSES OF ACTION** |
| v. | |
| HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT et al., | |
| Defendants. | |
| | **[FRCP 8(A)(2); 12(B)(1); 12(B)(6)]** |
| | Judge:    Hon. Fred W. Slaughter |
| | Hearing Date:  October 23, 2025
    10:00 a.m.
    Courtroom 10D |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................10

II.   ARGUMENT .......................................................................................11

A.    Plaintiff's Damages Claims Against the District and the
Individual HBUHSD Defendants in their Official Capacities are
Barred by the Eleventh Amendment...................................................11

1.    Eleventh Amendment Immunity is Appropriately
Determined by Way of a Motion Under FRCP 12(b) ..............11

2.    This Court Should Follow Current Controlling Ninth
Circuit Precedent ...................................................................12

3.    Discovery is Not Necessary – Plaintiff's Delay Strategy is
Unavailing..............................................................................14

a.    The Entity-Based Approach Adopted in *Kohn* Does
Not Mean that Each of the Approximately 1,000
School Districts in California are Considered
Separately on the Issue of Eleventh Amendment
Immunity .....................................................................14

b.    Discovery is Not Necessary to Decide the Immunity
Issue............................................................................15

4.    There is a Good Reason Why Eleventh Ninth Circuit
Judges Said Their Decision in *Kohn* was Unlikely to Lead
to Different Results.................................................................18

a.    Plaintiff Has Put the Status of Ninth Circuit
Precedent and the Application of *Kohn* Before This
Court ...........................................................................18

b.    District Courts Deciding School District Eleventh
Amendment Immunity Post-*Kohn* are Correct .............20

i)    Intent of the State of California ...........................21

ii)   State Control Over the Entity...............................22

iii)  Effect on the State Treasury................................24

B.    Plaintiff's Complaint Fails to Comply with Rule 8's Pleading
Requirements .................................................................................26

C.    Plaintiff's Second Cause of Action Fails to Adequately Plead a
First Amendment Violation ..............................................................28

D.    Plaintiff's Third Cause of Action Fails to Adequately Plead a

2

# TABLE OF CONTENTS

**<u>Page</u>**

Deprivation of a Protected Liberty Interest .........................................30

III.     CONCLUSION ..............................................................................33

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*A.B. v. Hilton Worldwide Holdings, Inc.,*
   484 F.Supp.3d 921 (D. Or. 2020)......................................................................28

*A.W. v. Santa Rose City Schools,*
   2025 WL 1190725 (N.D. Cal. 2025).................................................................13

*AGK Sierra De Monserrat v. Comerica Bank,*
   109 F.4th 1132 (9th Cir. 2024).........................................................................19

*Armstrong v. Reynolds,*
   22 F.4th 1058 (9th Cir. 2022)...........................................................................26

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................27

*Belanger v. Madera Unified School Dist.,*
   1990 WL 359764 (E.D. Cal. 1990) ..................................................................16

*Belanger v. Madera Unified School Dist.,*
   963 F.2d 248 (9th Cir. 1992)......................................................................passim

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 ...............................................................................................27, 28

*Bishop v. Wood,*
   426 U.S. 341 (1976) ........................................................................................31

*Brazil v. Davison,*
   639 F.Supp.2d 1129 (C.D. Cal. 2009)..............................................................12

*Childs v. San Diego Family Housing, LLC,*
   22 F.4th 1092 (9th Cir. 2022)...........................................................................15

*Deschutes River Alliance v. Portland Gen. Elec. Co.,*
   1 F.4th 1153 (9th Cir. 2021).............................................................................11

*Diamond S.J. Enterprise, Inc. v. City of San Jose,*
   395 F.Supp.3d 1202 (N.D. Cal. 2019)..............................................................29

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

*Donaghe v. Sherman Heights Elementary*,
   2024 WL 3883510 (S.D. Cal. 2024) ............................................................... 13

*Eaglesmith v. Ward*,
   73 F.3d 857 (9th Cir. 1995) ............................................................................ 12

*Faison v. Alameda*,
   2025 WL 2198606 (N.D. Cal. 2025) ............................................................. 16

*Gilbrook v. Westminster*,
   177 F.3d 839 (9th Cir. 1999) .......................................................................... 26

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ........................................................................ 12

*Health Freedom Defense Fund, Inc., v. Carvalho*,
   104 F.4th 715 (9th Cir. 2024) ........................................................................ 13

*Hirsh v. Justs. of the Sup. Ct. of Cal.*,
   67 F.3d 708 (9th Cir. 1995) ............................................................................ 16

*Hunt v. City of Los Angeles*,
   638 F.3d 703 (2011) ........................................................................................ 28

*Huntsman v. Corporation of the President of the Church of Jesus*
   *Christ of Latter-Day Saints*,
   127 F.4th 784 (9th Cir. 2025) ........................................................................ 11

*Hydrick v. Hunter*,
   466 F.3d 676 (9th Cir. 2006) .......................................................................... 27

*Hydrick v. Hunter*,
   669 F.3d 937 (9th Cir. 2012) .......................................................................... 27

*Iqbal. Hunter v. Hydrick*,
   556 U.S. 1256 (2009) ...................................................................................... 27

*Jamgotchian v. Ferraro*,
   2024 WL 4249833 (C.D. Cal. 2024) ............................................................. 12

*K.J. by and through Johnson v. Jackson*,
   127 F.4th 1239 (9th Cir. 2025) ...................................................................... 13

- 5 -

*Kohn v. State Bar of Cal.*,
497 F.Supp.3d 526 (N.D. Cal. 2020)..........................................................passim

*Kohn v. State Bar of California*,
87 F.4th 1021 (9th Cir. Dec. 6, 2023) (en banc) .......................................passim

*Los Molinos Mutual Water Company v. Ekdahl*,
695 F.Supp.3d 1174 (E.D. Cal. 2023) ................................................. 11

*Lupert v. Cal. State Bar*,
761 F.2d 1325 (9th Cir. 1985)............................................................. 16

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) .............................................................. 12

*Oliveri v. Rodriguez*,
122 F.3d 406 (7th Cir. 1997)............................................................... 31

*P.R. Ports Auth. v. Fed. Mar. Comm'n*,
531 F.3d 868 (D.C. Cir. 2008) ................................................14, 17, 21

*Padre v. MVM*,
768 F.Supp.3d 1111 (S.D. Cal. 2025) ............................................... 15

*Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*,
479 F.3d 1175 (9th Cir. 2007)......................................................26, 27

*Price v. Tamalpais Union High School District*,
2025 WL 1046644 (N.D. Cal 2025)............................................13, 20

*Ramirez v. Oakland Unified School District*,
2025 WL 1507092 (N.D. Cal. 2025)..........................................13, 20

*Regents of the Univ. of Cal. v. Doe*,
519 U.S. 425 (1997) ........................................................................... 18

*Riley's American Heritage Farms v. Elsasser*,
2024 WL 1756101 ............................................................................. 15

*S.B. by and through Kristina B. v. California Department of Education*,
327 F.Supp.3d 1218 (E.D. Cal. 2018)................................................ 11

*Sato v. Orange County Dept. of Educ.*,
861 F.3d 923 ......................................................................................passim

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
U.S.D.C. Case No. 8:25-cv-1648-FWS

54850437.1/005807.00221

*Sollberger v. Wachovia Sec., LLC*,
    2010 WL 2674456 (C.D. Cal. 2010)................................................................28

*T.L. v. Orange Unified School District*,
    2024 WL 305387 (C.D. Cal. 2024).........................................................11, 13

*United States ex rel. Giles v. Sardie*,
    191 F.Supp.2d 1117 (C.D. Cal. 2000)...........................................................18

*Wasson v. Sonoma County Jr. College Dist.*,
    4 F.Supp.2d 893 (N.D. Cal. 1997).................................................................31

*Weiland v. Palm Beach Cty. Sherriff's Office*,
    792 F.3d 1313 (11th Cir. 2015)......................................................................28

*Yearsley v. W.A. Ross Construction Co.*,
    309 U.S. 18 (1940) .........................................................................................15

*Zuniga v. United Can Co.*,
    812 F.2d 443 (9th Cir. 1987)..........................................................................12

**STATE CASES**

*Butt v. State of California*,
    4 Cal.4th 668 (1992)...........................................................................23, 24, 25

*Fawcett v. Ball*,
    80 Cal.App. 131 (1926)..................................................................................22

*Hall v. City of Taft*,
    47 Cal.2d 574 (1956)......................................................................................22

*Phelps v. Prussia*,
    60 Cal.App.2d 732 (1943)..............................................................................24

*Piper v. Big Pine School Dist.*,
    193 Cal. 664 (1924)........................................................................................22

*San Francisco Unified School Dist. v. Johnson*,
    3 Cal.3d 937 (1971)........................................................................................22

*Serrano v. Priest*,
    18 Cal.3d 728 (1976) (*Serrano II*).................................................................25

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

54850437.1/005807.00221

*Serrano v. Priest,*
    5 Cal.3d 584 (1971) (*Serrano I*) ................................................................23, 25, 26

*Vergara v. State of California,*
    246 Cal.App.4th 619 (2016) ................................................................23, 24

**FEDERAL CODES/STATUTES**

42 U.S.C. § 1983 ................................................................................................27

ADA ................................................................................................25

**STATE CODES/STATUTES**

Cal. Code Regs., Title 5, §§ 1–23005 ................................................................24

Cal. Educ. Code § 35100 *et seq.* ................................................................22

Cal. Educ. Code §§ 35160.1, 35160 ................................................................22

California Government Code § 820.8 ................................................................16

Ed. Code, §§ 14000, 35160, 35160.1 ................................................................23

Education Code § 35161 ................................................................22

Gov. Code §§ 3540–3549.3 ................................................................24

**OTHER AUTHORITIES**

First Amendment ................................................................28, 29

Eleventh Amendment ................................................................passim

Cal. Const. Article IX, § 5 ................................................................21

Cal. Const. Article IX, § 14 ................................................................21, 23

California Constitution ................................................................22, 23

California Constitution Article IX ................................................................21

FRCP 8 ................................................................26, 28

FRCP 12(b) ................................................................11

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

- 8 -

FRCP 12(b)(1) ................................................................................. 11

FRCP 12(b)(6) ................................................................................. 11

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
U.S.D.C. Case No. 8:25-cv-1648-FWS

54850437.1/005807.00221

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

# I.   <u>INTRODUCTION</u>

Plaintiff makes numerous claims regarding the issue of California school district "arm of the state" immunity under the Eleventh Amendment, asking this Court to defer the issue and at the same time to decide the issue. None of Plaintiff's claims have merit. The Huntington Beach Union High School District ("HBUHSD") and the individual Defendants sued in their official capacities are immune from Plaintiff's claims for monetary damages under the Eleventh Amendment.

Regarding the damage claims against the individual Defendants sued in their individual capacities, Plaintiff fails to adequately confront the deficiencies in the pleadings.

Regarding the second cause of action challenging the District's Civility Policy as unconstitutionally vague, Plaintiff offers an argument/legal theory that is not present in or arising from the allegations in the Complaint, mischaracterizes Defendants' argument, mischaracterizes the relevant law, and relies on speculation.

Regarding the third cause of action, alleging due process violations, when addressing his liberty interest claim Plaintiff ignores – and asks this Court to ignore – that he, and only he, intentionally and strategically publicized his termination to large swaths of the population and to media outlets in order to draw attention to himself, proclaiming an incorrect motivation for the HBUHSD's action prompting a brief response from HBUHSD, does not confront the authorities cited by Defendants, and asks the Court to ignore the documents attached to his Complaint that undermine his liberty interest claims.

And, as expected, Plaintiff concedes that there was no basis in the law for the property interest aspect of his due process cause of action – it never should have been in the Complaint to begin with.

Defendant's Motion should be granted.

/ / /

/ / /

## II.  ARGUMENT

**A.  PLAINTIFF'S DAMAGES CLAIMS AGAINST THE DISTRICT AND THE INDIVIDUAL HBUHSD DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT**

### 1.  Eleventh Amendment Immunity is Appropriately Determined by a Motion Under FRCP 12(b)

Initially, Plaintiff contends that Eleventh Amendment immunity is "outside the purview of 12(b)(6)." (ECF 42, p. 10.) Putting aside the fact that the caption of Defendants Notice of Motion cited both FRCP 12(b)(1) and FRCP 12(b)(6), the law is abundantly clear that "[a] sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Sato v. Orange County Dept. of Educ.*, 861 F.3d 923, 927; *Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints*, 127 F.4th 784, 812 (9th Cir. 2025); *Los Molinos Mutual Water Company v. Ekdahl*, 695 F.Supp.3d 1174, 1184, n. 4 (E.D. Cal. 2023); *S.B. by and through Kristina B. v. California Department of Education*, 327 F.Supp.3d 1218, 1234, n. 3 (E.D. Cal. 2018). Eleventh Amendment immunity is decidedly not "outside the purview of 12(b)(6)." Indeed, *Kohn* was decided at the district court level by a motion under Rule 12(b). *Kohn v. State Bar of Cal.*, 497 F.Supp.3d 526, 531-532 (N.D. Cal. 2020), and once Eleventh Amendment immunity is raised the Ninth Circuit views "sovereign immunity [as a] threshold jurisdictional issue" no different than Article III standing. *Deschutes River Alliance v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1158 (9th Cir. 2021). It is wholly appropriate for this Court to decide Eleventh Amendment immunity now, through a Rule 12(b) motion, as it did in *T.L. v. Orange Unified School District*, 2024 WL 305387 *8 (C.D. Cal. 2024).[1]

/ / /

---

[1] The motion to dismiss in *T.L.* was brought under FRCP 12(b)(6). *Id.* at pp. 5-6.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

### 2.    <u>This Court Should Follow Current Controlling Ninth Circuit Precedent</u>

Plaintiff scolds Defendants, accusing them of addressing Eleventh Amendment immunity "in the most superficial way" because in their Points and Authorities Defendants "simply assert the defense and cite cases." In other words, in their Points and Authorities Defendants made a point, and cited authority to support that point, over two-and-a-half pages of text. The point Defendants made is accurate – *Belanger v. Madera Unified School Dist.*, 963 F.2d 248 (9th Cir. 1992) and its progeny is still the law of this Circuit, and it was neither superficial nor error to cite the law and ask this Court to follow it.

District courts are bound to follow Ninth Circuit precedent. *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987); *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority, for example, has no choice but to follow it, even if convinced that such authority was wrongly decided"); *Jamgotchian v. Ferraro*, 2024 WL 4249833 (C.D. Cal. 2024); *Brazil v. Davison*, 639 F.Supp.2d 1129, 1142, fn. 9 (C.D. Cal. 2009) ("[T]his Court is bound by its Circuit's precedent in the absence of an intervening and contrary Supreme Court decision"). Where Ninth Circuit authority has been called into question by an intervening Supreme Court decision, or an intervening decision on controlling state law by a state court of last resort, and "the reasoning or theory of … prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003). Clearly, that is not the case here.

Plaintiff clearly knows that the law of the Ninth Circuit, since the 1992 decision in *Belanger*, is that California school districts are "arms of the state" and therefore entitled to Eleventh Amendment immunity. (See also, *Eaglesmith v. Ward*, 73 F.3d 857 (9th Cir. 1995); *Sato v. Orange County Dep't of Education*, 861 F.3d 923, 934

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

(9th Cir. 2017); *T.L. v. Orange Unified School District*, 2024 WL 305387 *8 (C.D. Cal. 2024); *K.J. by and through Johnson v. Jackson*, 127 F.4th 1239, 1251 n.8 (9th Cir. 2025); *Ramirez v. Oakland Unified School District*, 2025 WL 1507092 *6 (N.D. Cal. 2025); *Price v. Tamalpais Union High School District*, 2025 WL 1046644 *2 (N.D. Cal 2025); *A.W. v. Santa Rosa City Schools*, 2025 WL 1190725 *5 (N.D. Cal. 2025); *Donaghe v. Sherman Heights Elementary*, 2024 WL 3883510 *6 n. 5 (S.D. Cal. 2024). Confronting this law from 1992 to the present, Plaintiff adopts flowery language to contend that this is a "defunct … line of cases," including a decision by this very Court, based on "dramatic changes to controlling law" that "demonstrates that [*Belanger* and its progeny] has been dismantled." (ECF 42, pg. 13.)

To get to these self-serving conclusions Plaintiff asks this Court to ignore thirteen Ninth Circuit judges who have confirmed, all but two of them explicitly, that *Belanger* remains the law of the Ninth Circuit and that California school districts are arms of the state. Specifically, eleven Ninth Circuit judges sitting en banc – Judges Murguia, Rawlinson, Ikuta, Owens, Bress, Forrest, Bumatay, Sung, Sanchez, Thomas and Mendoza – rendered the majority decision in *Kohn*. The majority opinion adopted a new framework for arm-of-the state analysis, and all eleven of them agreed "this new framework" "is unlikely to lead to different results in cases that previously applied the *Mitchell* factors and held an entity entitled to immunity," and that there was "no reason to believe that [*Kohn*] will substantially destabilize past decisions granting sovereign immunity to state entities within the Ninth Circuit." 87 F.4th at 1031-1032. In a subsequent Ninth Circuit decision, *Health Freedom Defense Fund, Inc., v. Carvalho*, 104 F.4th 715 (9th Cir. 2024), which was reversed en banc, one Ninth Circuit judge stated in a concurring opinion that "another issue not at issue in this appeal, but perhaps relevant as this case progresses on remand" is whether *Kohn* "raises the question whether the district court's holding below that the Los Angeles Unified School District (LAUSD) is entitled to sovereign immunity should be revisited." Neither of the other two judges on the panel endorsed the concurrence.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

According to Plaintiff, this single judge's statement that *Kohn* "raises a question" about California school district immunity under the Eleventh Amendment, should be treated as "an intervening Supreme Court decision, or an intervening decision on controlling state law by a state court of last resort" when it is nothing of the sort.[2]

Under current Ninth Circuit precedent the HBUHSD is an arm of the state under the Eleventh Amendment, and this Court should grant the Motion on that basis alone.

**3.  Discovery is Not Necessary – Plaintiff's Delay Strategy is Unavailing**

**a.  The Entity-Based Approach Adopted in *Kohn* Does Not Mean that Each of the Approximately 1,000 School Districts in California are Considered Separately on the Issue of Eleventh Amendment Immunity**

A fundamental premise in Plaintiff's Opposition is the assertion that *Kohn* established a test dictating "that the immunity inquiry should focus *specifically on the HBUHSD* ...." (ECF 42, p. 16.) Stated differently, it appears that Plaintiff's position is whether any one of the approximately 1,000 school districts in California is an arm of the state for purposes of the Eleventh Amendment must be decided individually, on a case-by-case basis, after extensive discovery about *that* school district. If that is Plaintiff's position, Defendants disagree. *Kohn* noted its intent to adopt a test that "better promotes consistency, predictability, and finality because it settles an entity's immunity 'unless and until there are relevant changes in the state law governing the entity,'" rather than "'the coercive process of judicial tribunals at the instance of private parties,' undermining the very purpose of immunity." *Kohn*, 87 F.4th at 1031, quoting *P.R. Ports Auth. v. Fed. Mar. Comm'n,* 531 F.3d 868, 873 (D.C. Cir. 2008)

---

[2] Indeed, and properly, the Westlaw page for *Belanger* does not indicate that it has been even called into question, let alone reversed or abrogated, by any subsequent Ninth Circuit or Supreme Court decision.

and *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy*, Inc., 506 U.S. 139, 146 (1993). Even authority cited by Plaintiff contradicts this assertion. See *Riley's American Heritage Farms v. Elsasser*, 2024 WL 1756101 ("It is not clear that *Belanger*'s and *Sato*'s conclusions about *California school boards* being arms of the state remain good law after *Kohn*").

### b.   Discovery is Not Necessary to Decide the Immunity Issue

Plaintiff contends that "factual disputes abound," and therefore "discovery is needed to evaluate whether the HBUHSD can satisfy the new test under [*Kohn*]." (ECF 42, p. 10.) Plaintiff erroneously implies that discovery of HBUHSD officials and employees is necessary because the issue before this Court is whether *HBUHSD* alone is an arm of the state, when the issue is whether every school district in California is an arm of the state for purposes of the Eleventh Amendment. *Belanger* and its progeny – the law of the Ninth Circuit – answer that question in the affirmative.

Plaintiff's attempt to kick the proverbial can down the road lacks merit, highlighted on a cursory review of the cases Plaintiff cites in support. Plaintiff cites *Padre v. MVM*, 768 F.Supp.3d 1111, 1118-1119 (S.D. Cal. 2025), claiming the court refused "dismissal based on sovereign immunity" because there were disputed facts. (EFC 42, p. 13.) *Padre* was a *derivative* sovereign immunity case, not an Eleventh Amendment case. The *Padre* court noted that "[a]s the name indicates, derivative sovereign immunity 'extend[s]' the *federal government's* immunity from liability, *in narrow circumstances*, to government agents carrying out the federal government's directions.'" 768 F.Supp. at 1119, quoting *Childs v. San Diego Family Housing, LLC*, 22 F.4th 1092, 1097 (9th Cir. 2022). The *Padre* court went on to state that for derivative sovereign immunity to apply, three elements must be satisfied: 1) the federal government must be immune from the claims asserted; 2) the federal government must have authorized the defendant's actions; and 3) the federal government must have "'validly conferred' that authorization, meaning it acted within its constitutional power." *Id.* at 1119, quoting *Yearsley v. W.A. Ross Construction Co.*,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

309 U.S. 18, 20-21 (1940). Whether a federal contractor is entitled to derivative sovereign immunity is clearly a different, fact-driven inquiry in *every* case where it is raised, whereas *Kohn* (discussed further below) confirmed that agencies in a state, such as school districts, either are or are not arms of the state in every case, or in no case. Plaintiff analogizes apples to oranges.

Similarly, citing to *Faison v. Alameda*, 2025 WL 2198606 (N.D. Cal. 2025), Plaintiff asks this Court to treat the question of Eleventh Amendment immunity under the U.S. Constitution as the equivalent of California state law immunity from torts, in the California Government Code. (EFC 42, p. 13.)  For example, one of the issues in *Faison* was whether immunity under California Government Code section 820.8 applied to various tort claims, an immunity statute providing "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person," but "[n]othing in [the] section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Obviously, this is a fact-intensive affirmative defense, completely unrelated to the Eleventh Amendment.[3]

In addition to citing authority on the need for discovery that is wholly inapposite, and failing to elaborate on the nature of the discovery in *Belanger*, *Kohn* also thoroughly undermines Plaintiff's contention that this Court should abstain from a decision while discovery proceeds. In *Kohn*, the Ninth Circuit en banc noted that "[f]or nearly forty years, the California State Bar has enjoyed Eleventh Amendment immunity in federal court." 87 F.4th at 1023, citing *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985), and *Hirsh v. Justs. of the Sup. Ct. of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995). It goes without saying that this immunity determination dating

---

[3] Plaintiff asserts *Belanger* was decided by after extensive discovery (ECF 42, p. 15), but a review of the *actual* discovery reveals that it was all based on expert witness deposition testimony simply describing the funding status of all school districts under state law. (See *Belanger v. Madera Unified School Dist.*, 1990 WL 359764, *3 (E.D. Cal. 1990) ("defendants' expert witness describing in his deposition testimony the funding methodology for elementary and secondary school districts in California").

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
U.S.D.C. Case No. 8:25-cv-1648-FWS

54850437.1/005807.00221

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

back forty years was made under a different test than the one the court was about to

adopt: "Consistent with every other circuit, we reaffirm that the State Bar enjoys

Eleventh Amendment protection in federal court and update our arm of the state

jurisprudence to better reflect the Supreme Court's most recent guidance." *Ibid.* In

other words, having decided that a different test should be applied, did the Court

remand the case for discovery under the new test adopted in *Kohn*? No, because

discovery is not necessary. The *Kohn* court adopted the rule that "[u]nder the three-

factor test, an entity either is or is not an arm of the [s]tate: The status of an entity

does not change from one case to the next based on the nature of the suit, the [s]tate's

financial responsibility in one case as compared to another, or other variable factors."

*Id.* at 1031, quoting *P.R. Ports Auth.,* 531 F.3d at 873. As is asserted above, either all

of California's approximately 1,000 school districts are arms of the state for purposes

of the Eleventh Amendment, in every case regardless of the facts, allegations, and

cause of action, or none of them are. Thus, in *Kohn*, the Ninth Circuit adopted a test

that "distilled the developments in the Supreme Court's more recent caselaw into a

three-factor test:"

> (1) the state's intent as to the status of the entity, including the functions performed by the entity; (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury. [Citations]
>
> The first factor of intent turns on whether state law expressly characterizes the entity as a governmental instrumentality rather than as a local governmental or non-governmental entity; whether the entity performs state governmental functions; whether the entity is treated as a governmental instrumentality for purposes of other state law; and state representations about the entity's status. The second factor depends on how members of the governing body of the entity are appointed and removed, as well as whether the state can "directly supervise and control [the entity's] ongoing operations." And, the third factor, though relevant, is not dispositive.

*Id.* at 1030. None of these factors, all dependent on the *state's* intent, the *state's*

control, and the *state* treasury, turn on discovery seeking facts from HBUHSD

officials and employees about HBUHSD funding and operations. The arm of the state

determination for all school districts in California was and is based on state law, how

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
U.S.D.C. Case No. 8:25-cv-1648-FWS

54850437.1/005807.00221

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

the state characterizes school districts, whether school districts perform state governmental functions, etc.

Thus, whether school districts are an entity is an arm of the state within the meaning of the Eleventh Amendment is a question of federal law, not discovery in an individual case. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, n. 5 (1997) ("Ultimately, of course, the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore "one of the United States" within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character"). Eleventh Amendment immunity is appropriately determined now, through this Motion, and Plaintiff's attempt to artificially delay the issue should not be sanctioned by this Court.

4.    **There is a Good Reason Why Eleventh Ninth Circuit Judges Said Their Decision in *Kohn* was Unlikely to Lead to Different Results**

a.    **Plaintiff Has Put the Status of Ninth Circuit Precedent and the Application of *Kohn* Before This Court**

Plaintiff attempts to block Defendants from responding to assertions he makes in his Opposition, without justification, citing and quoting from *United States ex rel. Giles v. Sardie*, 191 F.Supp.2d 1117, 1127 (C.D. Cal. 2000): "It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."

First, Plaintiff asks this Court to ignore the stipulation of the parties which the Court approved:

> While the HBUHSD contends that California school districts qualify for Eleventh Amendment immunity, the standard for qualified immunity was changed from the standard applied in *Belanger v. Madera Unified School Dist.*, 963 F.2d 248 (9th Cir. 1992) by *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. Dec. 6, 2023) (en banc), and Plaintiff contends that, under the new standard in *Kohn*, HBUHSD no longer qualifies for Eleventh Amendment immunity. Consideration of the applicability of Eleventh Amendment immunity for California school districts is an important, complex issue. The issue, or at least the word

- 18 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1
2
3

count, should be considered separately from Defendants' other arguments. Both the Plaintiff in its opposition brief and the HBUHSD defendant in its reply brief anticipate dedicating significant space to helping the Court understand these issues.

4   (ECF 38, p. 3.) Second, Plaintiff's position is tantamount to saying that when a

5   moving party argues in its moving papers that there is controlling precedent that

6   governs an issue, and the party opposing the motion asserts in its opposition that the

7   precedent cited should no longer control the question, the moving party cannot

8   address that argument in reply. By stipulation presented to and approved by this Court

9   "Plaintiff contends that, under the new standard in *Kohn*, HBUHSD no longer

10  qualifies for Eleventh Amendment immunity," in his Opposition declares *Belanger*

11  and *Sato* and several other decisions dead, and submits to the Court multiple

12  documents regarding the Local Control Funding Formula ("LCFF").[4]

13      Although Defendants contend *Belanger* and *Sato* have not been overturned, and

14  that those precedents should be applied here (see Section II(A)(2), *infra*), to the extent

15  this Court may consider Plaintiff's contention that *Kohn* and the assertion of a single

16  Ninth Circuit judge render *Belanger* and *Sato* extinct, and that "HBUHSD no longer

17  qualifies for Eleventh Amendment immunity," Defendants are entitled to respond and

18  do respond.

19  / / /

20

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

21  _____
4 Plaintiff's means of addressing *Sato* is to deem it "patently crabbed (if not error
22  ridden)," "putting the thumb heavily on the scale of affirming *Belanger*." Ironically,
    in addition to speculating about their intentions and chastising their work with scant
23  analysis, Plaintiff states that the three judges deciding *Sato* "likely felt bound to" not
    overturn *Belanger*. Plaintiff cites *AGK Sierra De Monserrat v. Comerica Bank*, 109
24  F.4th 1132, 1136 (9th Cir. 2024) for the proposition that "3-judge panels are bound
    by precedent (even if clearly wrong) unless the Ninth Circuit en banc has clearly
25  undermined it." Here, far from "clearly undermining" *Sato* or *Belanger*. eleven Ninth
    Circuit judges sitting en banc "clearly undermined" *the position Plaintiff* is taking
26  here, stating *Kohn* "is unlikely to lead to different results in cases that previously
    applied the *Mitchell* factors" and that there was "no reason to believe that [*Kohn*] will
27  substantially destabilize past decisions granting sovereign immunity to state entities
    within the Ninth Circuit." Despite this, Plaintiff boldly proclaims that these eleven
28  judges "rendered *Belanger* and *Sato* largely obsolete" when, in fact, they conveyed
    the opposite conclusion.

54850437.1/005807.00221

**b.**    **District Courts Deciding School District Eleventh
Amendment Immunity Post-*Kohn* are Correct**

Plaintiff provides a chart (ECF 42-10) confirming that three (3) post-*Kohn* Ninth Circuit decisions have done nothing more than say the status of *Belanger* and *Sato* "is not clear," that they "seems to conflict" with *Kohn*, and that the panel "takes no position" on the subject. As is noted above, these statements fly in the face of the judicial confirmation that there is "no reason to believe that [*Kohn*] will substantially destabilize past decisions granting sovereign immunity to state entities within the Ninth Circuit." The chart describes how district courts have addressed California school district immunity post-*Kohn*, which Plaintiff describes with varying degrees of accuracy, but all of them support the conclusion that California school districts are entitled to Eleventh Amendment immunity.

Some have simply applied *Belanger* and *Sato* because they remain controlling precedent, and rightfully so. In *Ramirez v. Oakland Unified School Dist.*, *supra,* over three pages of analysis the court applied the three *Kohn* factors and concluded:

> In sum, all three *Kohn* factors indicate that the district is a state entity. In addition, the court's holding is consistent with prior treatment of school districts under the *Kohn* factors, as it should be under the entity-based approach. *Price v. Tamalpais Union High Sch. Dist.*, No. 24-CV-08033-JSC, 2025 WL 1046644, at *2 (N.D. Cal. Apr. 8, 2025) (all three *Kohn* factors suggested that California school district was a state entity).

2025 WL 1507092, *4-6 ("The first factor favors sovereign immunity because California intended the district to be an arm of the state;" "The second factor favors sovereign immunity because OUSD is controlled by the state;" "The third factor favors sovereign immunity because the state is responsible for funding the district and paying its debts and judgments"). Plaintiff's chart states that the analysis was brief and heavily reliant on *Belanger*, which does not make it wrong – it was correct. Perhaps more importantly, what an analysis of the *Kohn* factors reveals is: 1) citing to *Belanger* and *Sato* is appropriate because the *Kohn* factors and *Mitchell* factors are not polar opposites – far from it – and the analysis of how *state law* treats school

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

districts discussed and applied in *Belanger* and *Sato* is highly relevant to application of the *Kohn* factors.[5] Also, importantly, the fundamental principles of state law applied in *Belanger* and *Sato* and relevant to the *Kohn* factors – the intent of state law, state control over school districts, and impact on the state treasury – *have not changed* since *Belanger* or *Sato*. The correctness of the decision in *Ramirez v. Oakland Unified School Dist.* is reinforced by the following, brief analysis.

i)    Intent of the State of California

The court in *Kohn* determined an entity would be considered an arm of the state based on the intent of the state towards the entity based on the state government's characterization of the entity and state court treatment of the entity. 87 F.4th 1021 at 1032. Government characterization concerns "[w]hether [state] law expressly characterizes [an entity] as a governmental instrumentality rather than as a local governmental or non-governmental entity." *Puerto Rico Ports Authority v. Federal Maritime Com'n* 531 F.3d 868, 874 (D.C. Cir. 2008). Likewise, how state courts discuss an entity in terms of whether it is a governmental instrumentality or not also helps determine legislative intent.

Dating back to the 19th century, Article IX of the California Constitution declares the government's rules and intentions regarding education. Article IX states "[t]he *Legislature shall provide* for a system of common schools. Cal. Const. Art. IX, Sec. 5, emphasis added. It is the state Legislature that has "power, by general law, to provide for the incorporation and organization of school districts, high school districts, and community college districts, of every kind and class, and may classify such districts." Cal. Const. Art. IX, Sec. 14. California courts have held:

> Education, including the assignment of pupils to schools, is *plainly a state function*. (Citation) 'The education of the children of the state is an obligation which the state took over to itself by the adoption of the Constitution.' (Citation.) To carry out this responsibility the state has

---

[5] If the *Mitchell* factors and the *Kohn* factors were significantly different, it would have defied logic for the Ninth Circuit to declare that it expected no change to prior Eleventh Amendment determinations using the *Mitchell* factors.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

created local school districts, *whose governing boards function as agents of the state.*"

*San Francisco Unified School Dist. v. Johnson*, 3 Cal.3d 937, 951-52 (1971); see also *Fawcett v. Ball*, 80 Cal.App. 131, 134 (1926) (holding "[t]he maintenance of public schools is a purely governmental function"); *Hall v. City of Taft*, 47 Cal.2d 574, 577 (1956) (local school districts are the State's agents for the local operation of the common school system, citing five previous cases holding the same thing); *Piper v. Big Pine School Dist.*, 193 Cal. 664, 669 (1924) (the education of the children of the state is an obligation which the state took over by the adoption of the Constitution, and is exclusively a function which cannot be delegated to any other agency).

Ultimately, because the California Constitution codified kindergarten through 12th grade public education as an essential part and function of the state government, and because courts have consistently throughout the decades and for over a century treated school districts as state instrumentalities rather than local ones, the intent factor of the *Kohn* test weighs decidedly in favor of school district Eleventh Amendment immunity.

ii)    State Control Over the Entity

The *Kohn* test considers how directors and officers are appointed, as well as other ways in which the state exercises control over the entity. 87 F.4th at 1035.

California school board members are selected via local election, who then may appoint the superintendent and other officers of the school district. Cal. Educ. Code § 35100 *et seq*. Further, the Education Code gives broad authority, "liberally construed," to boards of education in administering programs, activities, and other actions as they may see fit, so long as they follow the relevant laws and are generally in line with the "purposes for which school districts are established." Cal. Educ. Code §§ 35160.1, 35160. Education Code section 35161 states, in relevant part, "[t]he governing board of any school district may execute any powers delegated by law to it or to the district of which it is the governing board." These provisions weigh against

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

- 22 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1  California school districts being deemed arms of the state.

2  However, longstanding case law holds that "[m]anagement and *control of the*
3  *public schools is a matter of state*, not local, care and supervision." *Vergara v. State*
4  *of California*, 246 Cal.App.4th 619, 628 (2016), emphasis added, internal quotes
5  omitted.) In *Butt v. State of California*, 4 Cal.4th 668 (1992), the California Supreme
6  Court assessed whether the state had an obligation, under the state constitution, to
7  provide additional funding to ensure that a single school district did not shut its doors
8  due to financial constraints six week prior to the end of the school year. The California
9  Supreme Court concluded that the state control of public schools required it to
10 intervene:

11     It therefore appears well settled that the California Constitution makes
12     public education uniquely a fundamental concern of the State and
       prohibits maintenance and operation of the common public school
13     system in a way which denies basic educational equality to the students
       of particular districts. The State itself bears the ultimate authority and
14     responsibility to ensure that its district-based system of common schools
       provides basic equality of educational opportunity.

15 4 Cal.4th at 685. The Court rejected the argument that the state's "financial obligation
16 … is limited to the equalized system of interdistrict funding required by our *Serrano*
17 decisions." *Id.* at 688. And when addressing the issue of local control and funding,
18 the California Supreme Court emphasized and reinforced the overwhelming level of
19 state control over local public schools:

20     Moreover, though the Constitution and statutes encourage maximum
       local program and spending authority consistent with State law (Cal.
21     Const., art. IX, § 14; Ed. Code, §§ 14000, 35160, 35160.1), the degree
       of supervision voluntarily retained by the State over the common school
22     system is high indeed. The volume and scope of State regulation indicate
       the pervasive role the State itself has chosen to assume in order to ensure
23     a fair, high quality public education for all California students.

24     School finance aside, the statutes address at length such matters as
       county and district organization, elections, and governance (§§ 4000–
25     5450, 35000–35780); educational programs, instructional materials, and
       proficiency testing (§§ 51000–62008); sex discrimination and
26     affirmative action (§§ 40–41, 200–263, 44100–44105); admission
       standards (§§ 48000–48053); compulsory attendance (§§ 48200–48416);
27     school facilities (§§ 39000–40048); rights and responsibilities of
       students and parents (§§ 48900–49079); holidays (§§ 37220–37223);
28     school health, safety, and nutrition (§§ 32000–32254, 49300–49570);

- 23 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

> teacher credentialing and certification (§§ 44200–44440); rights and duties of public school employees (§§ 44000–44104, 44800–45460; see also Gov. Code §§ 3540–3549.3 (organizational and bargaining rights); and the pension system for public school teachers (§§ 22000–24924). The statutory scheme has spawned further voluminous regulations administered by the State's Department of Education and the [Superintendent of Public Instruction] (Cal. Code Regs., tit. 5, §§ 1–23005.) This long-established level of State involvement in the public education system undermines any claim that local control is a paramount and compelling State policy for all purposes.

*Id.* at 689. This was in 1992, the same year *Belanger* was decided, and none of the above has changed since.[6]

"It has never been held… that the Legislature, in approving municipal charters, or in conferring power and authority on local boards, bodies, districts, or political subdivisions, in relation to school matters, divested itself of the power of ultimate control, vested in it by the [California] Constitution." *Phelps v. Prussia*, 60 Cal.App.2d 732, 739 (1943). "Where the Legislature delegates the local functioning of the school system to local boards, districts or municipalities, it does so, always, with its constitutional power and responsibility for ultimate control for the common welfare in reserve." *American Indian Model Schools*, 227 Cal.App.4th 258, 265-66 (2014) (internal quotes omitted).

As such, the control factor ultimately conclusively in favor of California school districts being arms of the state entitled to Eleventh Amendment immunity.

### iii)    Effect on the State Treasury

"In analyzing the third factor ... the relevant issue is a [s]tate's overall responsibility for funding the entity or paying the entity's debts or judgments, not whether the [s]tate would be responsible to pay a judgment in the particular case at issue." *Kohn*, 87 F.4th at 1036. The question therefore is whether the current financing system for public schools in the state, as dictated by LCFF, shows that the state is

---

[6] The reality of ultimate state control over local school districts is reinforced by cases like *Vergara* and *Butt*, addressed above, and other cases like it, where lawsuits related to issues in a specific school district were filed against the state and not the local school district(s).

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
U.S.D.C. Case No. 8:25-cv-1648-FWS

54850437.1/005807.00221

1  generally "responsib[le] for funding the entity or paying the entity's debts or
2  judgments." (*Ibid*.) The answer is yes.

3         In addition to this state funding obligation reinforced in *Butt*, above, the LCFF
4  program, specifically, has "a relatively small number of component parts:"

   1.    Per-pupil base grants, differentiated across four grade spans;

   2.    Adjustments to base grants for the cost of lower average class sizes in
         grades transitional kindergarten/kindergarten (TK/K), and for career
         technical education (CTE) in grades 9-12;

   3.    A weighted percentage increase to each adjusted base grant for the
         unduplicated proportion of students enrolled who are [English
         Learners], from low-income families or foster youth [footnote];

   4.    Additional funding for [local educational agencies] with higher
         concentrations of eligible students;

   5.    Additional per-average daily attendance (ADA) funding based on a
         school district or charter school's TK ADA.

AGUINALDO ET AL., SCHOOL FUNDING AND ACCOUNTABILITY IN CALIFORNIA: A
GUIDE TO K-12 PUBLIC SCHOOL FINANCE IN CALIFORNIA (2023), p. 41. But, as Sato
thoroughly discussed, California school district finances are apportioned through
base grants, and through the LCFF the legislature granted some increased flexibility
in how LCFF dollars are *spent*, but funds from LCFF ultimately come from the state
in the same way they did before:

>    [The LCFF] left in place the fundamental elements of *Belanger*:
>    equalization of per-pupil spending and centralized control over local
>    education budgets. Because the LCFF keeps in place a maximum per-
>    pupil funding formula, state and local funds are still "hopelessly
>    intertwined," and "any change in the allocation of property tax revenue
>    has a direct effect on the allocation of state funds."

*Sato,* 861 F.3d at 932, quoting *Belanger*, 963 F.2d at 252. *Belanger* discussed the
seminal California Supreme Court decisions in *Serrano v. Priest*, 5 Cal.3d 584 (1971)
(*Serrano I*), and *Serrano v. Priest*, 18 Cal.3d 728 (1976) (*Serrano II*), and confirmed

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

that under *Serrano II* "the state must prevent wealthier districts from raising too much local revenue, enabling California to equalize school district budgets through state spending," and that "[t]he result of the *Serrano* decisions and Proposition 13 (in 1978) has been strict state control of public school funding." 963 F.2d 248. *None* of the LCFF materials Plaintiff provided in opposition undermines the fact that, since *Serrano I* in 1971, and the *Serrano* decisions mandated and still mandate, as a matter of state constitutional law, "strict state control of public school funding." *Ibid.* This remains evident in how, among other things, "fluctuations in state General Fund revenues will directly impact funding for schools." AGUINALDO, SCHOOL FUNDING AND ACCOUNTABILITY, p. 10.

The reasoning in *Sato* regarding its analysis of the treasury—though it was under the *Mitchell* factors—is still sound, and school financing through LCFF has not changed since *Sato*, so the perpetuation of the state's funds being "hopelessly intertwined" with local funding renders the third factor in favor of California school districts being arms of the state.

**B.    P̲L̲A̲I̲N̲T̲I̲F̲F̲'̲S̲ ̲C̲O̲M̲P̲L̲A̲I̲N̲T̲ ̲F̲A̲I̲L̲S̲ ̲T̲O̲ ̲C̲O̲M̲P̲L̲Y̲ ̲W̲I̲T̲H̲ ̲R̲U̲L̲E̲ ̲8̲'̲S̲ ̲P̲L̲E̲A̲D̲I̲N̲G̲ R̲E̲Q̲U̲I̲R̲E̲M̲E̲N̲T̲S̲**

Plaintiff explains that a plaintiff must establish individual defendants either "(1) did an affirmative act … that caused the constitutional injury or (2) set in motion a series of acts by others which defendants knew or should have known would cause the constitutional injury." ECF 42, p. 20 (citing *Armstrong v. Reynolds*, 22 F.4th 1058, 1069 (9th Cir. 2022); *Gilbrook v. Westminster*, 177 F.3d 839, 858 (9th Cir. 1999)). Yet Plaintiff asserts the Complaint's speculative, conclusory assertions attributing no requisite individual act or knowledge to Individual District Defendants nevertheless meets this standard.

In support of this assertion, Plaintiff relies on the statement in *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) that a Complaint "does not need to show with great specificity how each defendant contributed to the

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

violation of [plaintiff's] constitutional rights." (ECF 42, p. 20). *Preschooler II*, however, was decided before the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and relied primarily on case law later overturned on reconsideration in light of *Iqbal*'s guidance. Specifically, *Preschooler II* cites *Hydrick v. Hunter*, 466 F.3d 676, 698-90 (9th Cir. 2006), which permitted the plaintiffs to maintain allegations of individual liability based on inferences drawn from defendants who "played an instrumental role in policy-making and enforcement" in the workplace. However, judgment was later vacated and remanded for further consideration in light of *Iqbal*. *Hunter v. Hydrick*, 556 U.S. 1256 (2009). On remand, the Ninth Circuit reversed course on its earlier decision, explaining:

> The absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, *"a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal*, 129 S.Ct. at 1948. Even under a "deliberate indifference" theory of individual liability, the *Plaintiffs must still allege sufficient facts to plausibly establish the defendant's "knowledge of" and "acquiescence in" the unconstitutional conduct of his subordinates. Starr*, 652 F.3d at 1206–07. In short, Plaintiffs' "bald" and "conclusory" allegations are insufficient to establish individual liability under 42 U.S.C. § 1983. See *Iqbal*, 129 S.Ct. at 1950–53; cf. *Starr*, 652 F.3d at 1216–17.

*Hydrick v. Hunter*, 669 F.3d 937, 939 (9th Cir. 2012) (emphasis added). Plaintiff's attempt to allege individual liability against Individual District Defendants is premised merely on his speculation that "the decisions about Plaintiff's discharge and related press release central to all claims were … all-hands-on-deck events for District and EHS senior officials." (ECF 42, p. 22, emphasis original). The "plausibility" requirement "asks for more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556).

Plaintiff objects to Defendants' shotgun pleading argument on the basis that "lumping" defendants together does not necessarily deprive them of the notice required under section 1983. Plaintiff's interpretation of shotgun pleading is overly restrictive. While "lumping" defendants together may be permissible where the complaint does indeed plead facts from which it can be readily deciphered what the

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

allegations against each individual consist of, the kind of "everyone did everything" allegations that fail to identify any specific conduct of individual defendants forming the basis for liability, as are present in the Complaint, are impermissible. *Sollberger v. Wachovia Sec., LLC,* 2010 WL 2674456, at *4 (C.D. Cal. 2010); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F.Supp.3d 921, 943 (D. Or. 2020); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

Finally, Plaintiff's punitive damage claims fail for similar reasons. While Rule 8 does govern the pleading standard for punitive damages, a plaintiff must still include allegations raising the plausibility of entitlement to the relief requested "above the speculative level." *Twombly*, 550 U.S. at 555. In the absence of facts plausibly establishing individual defendants engaged in any unlawful conduct, bare allegations that the individuals acted with "malice" fail to establish punitive damages are warranted.

## C. PLAINTIFF'S SECOND CAUSE OF ACTION FAILS TO ADEQUATELY PLEAD A FIRST AMENDMENT VIOLATION

In his opposition, Plaintiff hastily asserts District Defendants have applied the wrong standard in challenging the claims in his Second Cause of Action. Yet Plaintiff appears to assert, for the first time, a theory of liability found nowhere in the Complaint. Plaintiff's argument claims District Defendants failed to analyze his Second Cause of Action under the legal standard applying to claims that a policy is unconstitutional as constituting a prior restraint. While Plaintiff attempts to spin his overbreadth, vagueness, and viewpoint discrimination claims as being merely explaining factors that may be considered in a prior restraint analysis, Plaintiff does not acknowledge that the Complaint does not challenge the Civility Policy as a prior restraint. Rather, his Complaint is clear: it asserts liability under the distinct legal doctrines of (1) overbreadth, (2) vagueness, and (3) viewpoint discrimination. Despite Plaintiff's apparent interpretation, he cites no case law indicating that these claims are in fact one in the same, nor do Defendants find case law to that effect. *See, e.g., Hunt*

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

*v. City of Los Angeles*, 638 F.3d 703, 714-718 (2011) (analyzing claims of vagueness and prior restraint independently); *Diamond S.J. Enterprise, Inc. v. City of San Jose*, 395 F.Supp.3d 1202, 1218 (N.D. Cal. 2019) (declining to address theories of vagueness and overbreadth where defendant's only challenge was to plaintiff's prior restraint claim).

To the extent Plaintiff's Opposition does respond to District Defendants' position the Civility Policy was not, and could not be, "overbroad" as applied to him, Plaintiff misconstrues District Defendants' argument, asserting it is incorrect to conclude overbreadth and vagueness are "coterminous." Defendants do not argue that overbreadth and vagueness are one-in-the-same, but rather that the *only* cases Defendants find acknowledging an *as-applied* claim of overbreadth do such in conjunction with their consideration of an as-applied claim of vagueness. Plaintiff does not contend otherwise or offer any authority in support of their as-applied overbreadth claim.

With respect to his vagueness claim, Plaintiff argues the PSA post was at minimum "ambiguous," and that District Defendants were "on notice that an investigation was needed to explore whether it constitutes First Amendment protected speech." It cannot go unnoticed that this does not attempt to explain how the Civility Policy was unconstitutionally vague as applied to Plaintiff. Plaintiff's repeated emphasis on "investigating" his speech is misplaced and ultimately irrelevant to the instant Motion. The law does not require an "investigation" before an employer takes employment action based on an employee's speech. Plaintiff relies on *Waters* to support this supposed "investigation" requirement, which explains:

> If an employment action is based on what an employee supposedly said, and a reasonable supervisor would recognize that there is a substantial likelihood that what was actually said was protected, the manager must treat with a certain amount of care … Of course, there will often be situations in which reasonable employers would disagree about who is to be believed, or how much investigation needs to be done, or how much evidence is needed to come to a particular conclusion. In those situations, many different courses of action will necessarily be reasonable. Only

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1    procedures outside the range of what a reasonable manager would use
2    may be condemned as unreasonable.

3    Nothing in the cases Plaintiff cites indicates that any formal investigation was
4    required, as he appears to imply. Rather, the need for "investigation," which, as
5    *Waters* recognizes, may depend on the specific facts of the case, arises where there is
6    some dispute or question of what was actually said. This is not at issue here, where
7    the contents Plaintiff's PSA post are undisputed.

8        Finally, Plaintiff makes no attempt to identify non-speculative allegations
9    supporting his claim of viewpoint discrimination. Plaintiff rather bases his argument
10   on the premise that the policy "permits personally-biased determinations that
11   politically-favored speech is appropriate (e.g., Trump-supportive speech) while
12   politically-disfavored speech is inappropriate (e.g., speech criticizing MAGA)." (ECF
13   42, p. 34.) Even taking this assertion as true, it provides no support of Plaintiff's claim
14   that the District's *application* of the Civility Policy *in Plaintiff's case* was in fact
15   discriminatory on this basis. Plaintiff relies only on the speculative assertions in his
16   Complaint that Defendants have not and would not use the Civility Policy to punish
17   conservative speech, allegations insufficient to state a claim that the Civility Policy
18   was viewpoint discriminatory as applied.

19   **D.    PLAINTIFF'S THIRD CAUSE OF ACTION FAILS TO ADEQUATELY PLEAD A
20          DEPRIVATION OF A PROTECTED LIBERTY INTEREST**

21       In response to District Defendants' challenge to his Third Cause of Action,
22   Plaintiff takes a narrow view of his allegations, ignoring the greater context in which
23   his claim arises. Plaintiff admits, throughout both his Complaint and his Opposition,
24   that his termination became a highly-public "hot topic" issue, which Plaintiff created
25   intentionally and strategically, yet asserts that the idea District Defendants only
26   published the press release as a result of a substantial amount of media attention
27   reflecting Plaintiff's incorrect stated reasons for his termination is "absurd." (ECF 42,
28   p. 37.)

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
U.S.D.C. Case No. 8:25-cv-1648-FWS

54850437.1/005807.00221

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

Even assuming the press release implies charges sufficient to potentially implicate a liberty interest, Defendants' primary contention, which Plaintiff does not address, is that the concerns surrounding publication of a stigmatizing statement that give rise to a liberty interest claim are not present in a circumstance where the cause of termination is published only after the plaintiff himself puts the cause for his termination at issue in the public eye. *See Oliveri v. Rodriguez* 122 F.3d 406, 409 (7th Cir. 1997) ("[t]he public employer who goes out of his way to publicize the ground of the dismissal is deliberately taking measures to make it difficult or impossible for the employee to obtain comparable employment, and is thus acting with intent to infringe on a constitutionally protected liberty"); *Wasson v. Sonoma County Jr. College Dist.*, 4 F.Supp.2d 893, 907 (N.D. Cal. 1997) (employee's liberty interest implicated "by her own publication of the charges against her where she was not "forced to go public" with the allegations, could have remained silent, and defendants did not publish the charges until she put them at issue). "In the absence of any claim that the public employer was motivated by desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and if erroneous, can best be corrected in other ways." *Bishop v. Wood*, 426 U.S. 341, 349 (1976). While Plaintiff asserts the publication of the press release was "vindictive," the Complaint as a whole, even construed in his favor, does not indicate the press release was made for any reason other than to correct the erroneous narrative Plaintiff placed in the public light.

Plaintiff's proposed "alternative options" fail to provide any support for his claim the District's press release offended his liberty interest. As noted above, Plaintiff's preoccupation with the supposed "investigation" requirement is unfounded, and as Defendants have previously explained, they had no notice or reason to believe it would later become necessary to publish the reasons for Plaintiff's discharge.

Similarly, Plaintiff's assertion the District's statement he was being terminated

- 31 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

1  "because the school was getting too much attention" raises several questions. In

2  addition to the fact that Plaintiff again admits the press release would not have

3  occurred but for his own publications of inaccurate reasons for his termination, both

4  Plaintiff's Complaint and Opposition appear to recognize that public attention

5  surrounding EHS and Plaintiff's employment was gained *because of his PSA post*.

6  Plaintiff does not assert he was not permitted to ask for clarification, further

7  information, or dispute the District's reasons for his termination during his meeting

8  with Edison High School staff members.

9        Finally, Plaintiff asserts it would have been acceptable for the District to issue

10  a press release similar to that at issue, merely omitting reference to Plaintiff's PSA

11  post. In doing so, Plaintiff argues, in effect, that the inclusion of the PSA post—his

12  own public statement—in the press release is what "labeled" Plaintiff as a "violent

13  liar."

14        Defendants acknowledge that this case is unique. It is not typical for an

15  individual who prides himself on vigorous debate in the proverbial public square to

16  make and publicize public, piercing comments about his employer then cower behind

17  the due process clause when the employer briefly corrects the record with speech of

18  its own. Even so, Defendants maintain that consideration of this issue is proper at the

19  motion to dismiss stage where, even construing the facts in Plaintiff's favor, his claim

20  does not implicate the concerns underlying a cause of action for deprivation of liberty

21  without due process.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

- 32 -

54850437.1/005807.00221

1

### III.  <u>CONCLUSION</u>

For the reasons articulated above, District Defendants respectfully request the
Court grant their Motion to Dismiss.


Dated: October 6, 2025            ATKINSON, ANDELSON, LOYA, RUUD &
                                  ROMO


                                  By: _____
                                      Mark R. Bresee
                                      Brooklyn N. Robertson
                                      Anthony P. De Marco
                                      Attorneys for Defendants

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
U.S.D.C. Case No. 8:25-cv-1648-FWS

54850437.1/005807.00221

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 7,971 words, which complies with the Order Granting the Application Extending the word limit for Defendants' Reply to Plaintiff's Opposition to the Motion to Dismiss. (ECF 41.)

Dated: October 6, 2025          ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: _____
Mark R. Bresee
Brooklyn N. Robertson
Anthony P. De Marco
Attorneys for Defendants

54850437.1/005807.00221