William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
**FREEDOM X**
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018

Counsel for Defendant, *Christian Epting*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER KLUWE,<br><br>Plaintiffs,<br><br>vs.<br><br>HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT; ET AL.,<br><br>Defendants. | Case No. 8:25-cv-1648 FWS (JDEx)<br><br>*Hon. Fred W. Slaughter*<br><br>**DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)**<br><br>Date: October 23, 2025<br>Time: 10:00 a.m.<br>Ctrm: 10D<br><br>Compl. Filed: August 8, 2025 |

1  Case No. 8:25-cv-1648 FWS (JDEx)
**DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)**

I, William J. Becker, Jr., declare as follows:

1. I am counsel of record for Defendant Christian Epting in the above-captioned matter. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would competently testify thereto.

2. This declaration is submitted in support of Defendant Christian Epting's Counsel's Response To Order To Show Cause Regarding Sanctions (Dkt. No. 46).

### Limitations as a Sole Practitioner Without Support Staff

3. I am a sole practitioner and sole employee of Freedom X, a non-profit public interest law firm. I have been practicing law since admitted to the California bar in 1988. I have been a trial lawyer for 37. As a sole practitioner and Freedom X's only employee, with no legal assistants, paralegals, or associates, I manage all substantive, procedural, and administrative tasks personally. I personally research, draft, edit, and file all of my own pleadings and correspondence. To accomplish these tasks, I am self-trained in using various software. I format all of my work product, perform all electronic filing, prepare my physical filing, trial notebooks, appellate briefs and exhibits. My casework takes place in administrative, state, and federal courts in California and around the country pro hac vice. I have a busy caseload and no time to market my practice, much of which involves pro bono work. There are no middlemen. No one to pick up the phone or maintain my files.

**DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)**

What you see is what you get. While I strive for precision and professionalism, I cannot be expected to meet the standard of perfection that a large law firm with a full team of attorneys and support staff may be able to achieve.

## Legal Research Pattern

4. I pay an exorbitant monthly fee to Thomson Reuters West Publishing Corporation for the use of their legal research platform. It consists of a generative artificial add-on that I have found to have substantial shortcomings. For this reason, I also make use of other AI platforms to assist in speeding up my workflow and improving my work product. As I understand it, that's what it is designed for. I understand and acknowledge that every platform has its shortcoming and commits errors, also known as "hallucinations." This is an issue I pay close attention to.

5. My general practice when using AI is to first locate cases via independent research on Westlaw, then instruct AI to summarize them, and finally draft narrative around those summaries. However, due to the initial rush to file timely on August 27, 2025, and the subsequent focus on trial preparation, I neglected to follow this process fully for the amended filings. Specifically, I believe that I must have failed to review or verify the case citations after incorporating AI-assisted phrasing, resulting in the errors at issue. Even before this challenge, I recognized a need to associate with additional counsel and was fortunate to be put in touch with FROST LLP. I then left on a year-long planned 2-

**DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)**

week vacation to Greece and Turkey between September 24 to October 8, 2025. They have since filed notices of appearances.

6. As I stated in my M2S Reply declaration, any errors in my briefing were unintentional and reflect the reality of a solo practitioner preparing multiple filings under significant time constraints, including trial preparation and scheduled family obligations. I can only speculate as to how these citation errors would have happened. It could well have occurred by using authorities from other briefs, by misunderstanding the case, through sloppiness in some form, or for any other legitimate reason. It could also, and very likely, occurred because, after I initially rushed the filing of the original brief, I failed to revisit the citations when filing the amended brief. This explanation is no excuse for garbage work product. Merely an explanation to demonstrate that whatever I did or failed to do was not in bad faith or for any improper purpose.

## Contextual Background

7. Some background is necessary to further explain the circumstances leading to my errors. The Complaint in this action was filed on July 28, 2025, and served on my client, Mr. Epting, on August 8, 2025. I was retained on August 14, 2025. On August 19, 2025, I sent an 18-page letter to Plaintiff's counsel, demanding that the claims against Epting be dismissed on the grounds that they lacked merit, were barred by the anti-SLAPP statute, and failed under Rules

4    Case No. 8:25-cv-1648 FWS (JDEx)

**DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)**

12(b)(1) and 12(b)(6). On August 26, 2025—the deadline I set for a response—I received an email from Plaintiff's counsel, Mr. Sasse, that did not substantively address any of the arguments raised in the demand letter.

8. Consequently, the following day, on August 27, 2025, I filed Epting's initial Motion to Dismiss ("M2D") and Motion to Strike ("M2S," or anti-SLAPP motion). This filing was rushed to meet the August 29, 2025, responsive pleading deadline, with both motions prepared within approximately 24 hours. Let me emphasize that I, alone, prepared both motions in a day's time, drafting, editing, formatting, filing, etc. I had no one available to review them.

9. On August 29, 2025, I met and conferred with Mr. Sasse, who noted that the motions had failed to set a hearing date in conformance with the Court's scheduling order. We agreed that I could withdraw, amend, and refile the motions by September 4, 2025.

10. In the days following, I was largely focused on preparing for a trial in the United States District Court for the Central District of California (Riverside Division) before Judge Jesus Bernal (Case No.: 5:18-cv-02185-JGB-SHK), which commenced on September 15, 2025. This preparation was intensive, as I had to handle all aspects alone—including gathering evidence, preparing my witness, and assembling trial notebooks—while also preparing for a pre-planned family wedding trip to Oklahoma City from September 11 to 14, 2025. During this period,

5   Case No. 8:25-cv-1648 FWS (JDEx)
**DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)**

I concluded it would be appropriate to delay filing an amended M2D but proceeded with the amended M2S.

**My Errors Don't Alter The Motion's Merit**

11. While I acknowledge that I used artificial intelligence, I am nevertheless confident in the merits of the Anti-SLAPP Motion. I read most of the cases cited, including cases which artificial intelligence subsequently manipulated the citations on, resulting in their citations being used for the wrong purpose. I did my own independent, traditional research using Westlaw, and then used artificial intelligence to supplement that research, without realizing that it would modify his existing research and citation.

12. For clarity, my citation to *Chamndany v. Harding* was intended to support the uncontroversial Rule 12(b)(6) point that, when an anti-SLAPP motion in federal court challenges only legal sufficiency at step two, the court applies the Rule 12(b)(6) standard and does **not** credit bare, conclusory allegations; any suggestion about "information-and-belief" pleading was imprecise phrasing and is withdrawn. *See Chamndany* (adopting the step-two Rule 12(b)(6) framework); and *Chamndany*'s recitation of Ninth Circuit pleading rules that courts "need not … accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," citing *Sprewell* and *Twombly/Iqbal*.

13. Additionally, my reference to *Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002), was intended for discrete propositions it squarely addresses: (1) a speaker cannot sanitize defamatory implications by labeling them 'opinion' or by parroting disputed news; repetition can still be actionable, and opinion built on false or disputed facts is not protected (*see Flowers*, 310 F.3d at 1129–30 (explaining that a 'defamatory statement isn't rendered nondefamatory merely because it relies on another defamatory statement,' and discussing when purported reliance on news does **not** defeat liability)); (2) for a public-figure plaintiff, the case recites the *New York Times v. Sullivan* 'actual malice' standard (knowledge or reckless disregard), which was adequately alleged in *Flowers* and cannot typically be resolved on a Rule 12(b)(6) motion, (*Flowers,* at 1130–31 (discussing malice standard and pleading; caution against dismissing at the pleadings stage)); and (3) on false light, *Flowers* distinguishes Nevada from California—California treats false light as "in substance equivalent to libel," but Nevada allows false-light recovery for mental distress apart from reputational injury (*Flowers,* at 1132–33 (citing *Selleck* for the California rule and explaining Nevada's broader false-light damages)). To the extent my earlier text suggested California-style elements or an 'accurate republication' defense, that was imprecise; I sought to rely on *Flowers* only for the foregoing, well-supported propositions.

**DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)**

### I Acknowledge Making These Mistakes …

14. This is the first time I've been confronted with this as a legal and professional responsibility issue and was completely unaware of it as a matter of significant court scrutiny. My review of case precedent has been an eye-opener and I expect to take a CLE course on the matter. Large firms have the advantage of circulating trends in the law that I lack operating alone.

15. Having been enlightened, I readily acknowledge the unprofessional and unbecoming nature of my actions and continue to suffer the highest level of embarrassment I have ever professionally suffered because of these error.  I am painfully aware of my mistake, and will not make it again. Moreover, to further remedy the circumstances that led to this issue, and to ensure it does not happen again, I am now working with co-counsel, FROST LLP.

16. In thirty-seven years of practice, I have never made such an egregious mistake and have an otherwise unblemished record as a trial attorney.  I recognize that there is no excuse for this sloppy work product and unprofessional use of artificial intelligence. Having said that, I am still finding errors in my Master's Thesis written in 1978, some 47 years ago.

### … And Humbly Apologize For Them

17. I wish to emphatically apologize to this Honorable Court, to Plaintiff, to Plaintiff's counsel, and to my client, Chris Epting, whose interests I am trying to

8   Case No. 8:25-cv-1648 FWS (JDEx)

DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)

serve to the best of my ability and who should not have to find his case burdened with this distraction.

18. To the Court, I revere this institution and am proud to be admitted to practice before it. My actions demean the pursuit of justice and I therefore fall on the Court's mercy to accept my sincere apology, consider this mistake in the context of my otherwise diligent advocacy, and permit me the opportunity to correct the error without imposing sanctions that would unduly penalize my client for my own lapse in judgment.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 17, 2025, at Scottsdale, Arizona.

/s/ William J. Becker, Jr.
William J. Becker, Jr., Esq., Declarant

9  Case No. 8:25-cv-1648 FWS (JDEx)

**DECLARATION OF WILLIAM J. BECKER, JR., IN SUPPORT OF DEFENDANT CHRISTIAN EPTING'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SANCTIONS (DKT. NO. 46)**