ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Mark R. Bresee        State Bar No. 167346
    MBresee@aalrr.com
Brooklyn N. Robertson   State Bar No. 356391
    Brooklyn.Robertson@aalrr.com
Anthony P. De Marco    State Bar No. 217815
    ADeMarco@aalrr.com
20 Pacifica, Suite 1100
Irvine, California 92618-3371
Telephone: (949) 453-4260
Fax: (949) 453-4262

Attorneys for Defendants HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT, CAROLEE OGATA, SUSAN HENRY, DANIEL BRYAN, DANIEL MORRIS, and EDWARD BEGANY,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ORANGE COUNTY DIVISION

| | |
|---|---|
| CHRISTOPHER KLUWE,<br><br>    Plaintiff,<br><br>v.<br><br>HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT et al.,<br><br>    Defendants. | Case No.   8:25-CV-1648-FWS<br><br>**DEFENDANTS HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT, CAROLEE OGATA, SUSAN HENRY, DANIEL BRYAN, DANIEL MORRIS, AND EDWARD BEGANY'S RESPONSE TO THE MERITS OF PLAINTIFF'S SUPPLEMENTAL MATERIALS AND ARGUMENTS**<br><br>Judge:   Hon. Fred W. Slaughter<br><br>Hearing Date:  October 23, 2025<br>          10:00 a.m.<br>          Courtroom 10D |

-1-

DEFENDANTS' RESPONSE TO SUPPLEMENTAL MATERIALS AND ARGUMENTS

U.S.D.C. Case No. 8:25-cv-1648-FWS

55017236.1/005807.00221

## I. INTRODUCTION

Counsel for Plaintiff conceded, prior to requesting to file supplemental materials with the Court, that Defendants' Motion raised five (5) issues related to Eleventh Amendment immunity, including that *Belanger* held that school districts are arms-of-the state, that the new *Kohn* test should reach the same conclusion as *Belanger*, and that that six district courts that have held that school districts remain arms of the state under Ninth Circuit precedent were correct. Also, and needless to say, raising Eleventh Amendment immunity in a Rule 12(b) motion – an extremely common occurrence authorized by the Ninth Circuit and California District Courts including this Court[1] – is, by definition, an assertion that discovery is not necessary to decide the issue. None of the authorities cited and argued by Plaintiff in his Supplemental Authorities substantiate his claim that this Court – but no other courts addressing the issue of California school district Eleventh Amendment immunity before and after *Kohn* – should conclude that discovery is necessary to decide the immunity question.

As described more fully herein, Plaintiff cites cases finding discovery necessary in instances where courts had not considered the application of the Eleventh Amendment to the entity claiming it, or where a specific exception to immunity turning on the specific claims at issue was at play, circumstances not applicable in this case. Moreover, Plaintiff cites to additional authority in support of his assertions Defendants raised "new issues" in their Reply that merely reassert uncontested issues, and fail to support the crux of Plaintiff's objections to the Reply.

In sum, Plaintiff's Supplemental Authority does little—if anything—to

---

[1] See, e.g. *Sato v. Orange County Dept. of Educ.*, 861 F.3d 923, 927 (9th Cir. 2017); *Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints*, 127 F.4th 784, 812 (9th Cir. 2025); *Los Molinos Mutual Water Company v. Ekdahl*, 695 F.Supp.3d 1174, 1184, n. 4 (E.D. Cal. 2023); *S.B. by and through Kristina B. v. California Department of Education*, 327 F.Supp.3d 1218, 1234, n. 3 (E.D. Cal. 2018); *Kohn v. State Bar of Cal.*, 497 F.Supp.3d 526, 531-532 (N.D. Cal. 2020); *T.L. v. Orange Unified School District*, 2024 WL 305387 *8 (C.D. Cal. 2024).

meaningfully add to the discussion of Eleventh Amendment immunity in this case.

## II. RESPONSE OF HBUHSD DEFENDANTS

Defendants respond to each of the alleged "New Issues" asserted by Plaintiff as follows:

**A. "NEW ISSUE NO. 1 -- FOR THE FIRST TIME ON REPLY, DEFENDANTS ARGUE THE MERITS OF WHY THEY SATISFY THE NEW *KOHN* TEST FOR ELEVENTH AMENDMENT IMMUNITY (PP. 21-26) WHILE ALSO ARGUING (PP. 14-18) THAT PLAINTIFF SHOULD NOT BE ALLOWED DISCOVERY ON THOSE VERY SAME MERITS."**

In Plaintiff's Opposition he described the three-pronged test in the Ninth Circuit's decision in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2024):

> The *Kohn* test has only three factors: intent, control, and treasury. 87 F.4th at 1030. The **intent factor** turns on how the state characterizes and treats the entity and the nature of its functions. *Id*. at 1030, 1032-1034. The **control factor** focuses on how the governing body is appointed or removed and whether the state directly supervises and controls the entity's operations. *Id*. at 1030, 1035-1036. The treasury factor seeks to "protect[] the state's financial solvency" by focusing on the entity's overall effects on the state treasury. *Id*. at 1030. The court also adopted an entity-based test for analyzing immunity rather than the activity-based test evident in many prior cases. *Id*. at 1031.

(See ECF 42, pp. 15-16.) This is consistent with the *Kohn* court's recitation of the three factors:

> [T]he D.C. Circuit distilled the developments in the Supreme Court's more recent caselaw into a three-factor test: "(1) the [s]tate's intent as to the status of the entity, including the functions performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the state treasury."

*Kohn*, 87 F.4th at 1030. Thus, *Kohn* and Plaintiff's Opposition reinforced that the issue is the *state's* intent, the *state's* control, and the effect on the *state* treasury. Plaintiff claims that "factual disputes abound" (ECF 42, p. 13) regarding the intent of the state of California, California's control over school districts, and the California treasury, but does not and cannot identify what discovery will reveal about California law.

Plaintiff cites six (6) cases for the proposition that discovery is needed to address immunity. All but one of them was decided before *Kohn*. Several involve specific exceptions to immunity, and even more were cases of first impression for the entities sued. None of them support the assertion that discovery is needed in *this* case.

Plaintiff cites *Hutton v. Blaine Cnty. Sch. Dist. #61*, 2020 WL 1339120 (D. Idaho Mar. 23, 2020) for its denial of a school district's 12(b)(6) motion on Eleventh Amendment immunity grounds. However, as the Idaho court acknowledged, "A school district's status as an arm of the state has not been clearly decided in Idaho." *Id.* at *6. Thus, in order to determine Eleventh Amendment immunity, the court required additional facts to fully analyze the question under the then-applicable *Mitchell* factors. *Id.* at *8. This is not required in the instant case.

In *Gilmore v. Beveridge*, 2022 WL 1102641 (D. Kan. Apr. 13, 2022), the court considered the question of immunity on an entirely different procedural posture: a request for leave to file an amended answer. *Id.* at *1. There, the only case relied upon by the defendant in support of possible Eleventh Amendment immunity "raised serious concerns about whether Eleventh Amendment immunity would apply to [the board of education], but expressly declined to decide that issue." *Id.* at *4. Thus, the question of immunity was effectively one of first impression, and the court permitted amendment of the answer to include it, finding the plaintiff did not "show the defense would not survive a Rule 12(f) motion to strike and that allowing the defense would be futile." *Id.*

Next, Plaintiff cites *Cal. River Watch v. Daggett Cmty. Servs. Dist.*, 2024 WL 5673227 at *11-14 (C.D. Cal. Dec. 10, 2024) for its denial of a 12(b)(6) motion on Eleventh Amendment immunity grounds. As an initial note, this case does not suggest a need for discovery on its own facts, and it is unclear why Plaintiff has included it in support of that argument. To the extent Plaintiff intends to rely on the court's analysis of the *Kohn* factors prior to determining the community services district was not entitled to Eleventh Amendment Immunity, there is no indication that the question of

- 4 -

immunity had already been determined for the district, as it has been for California public school districts. *Id.* A case requiring discovery prior to deciding an issue of first impression does not support Plaintiff's claim that discovery is necessary to uphold an already-decided question of law. Plaintiff's citation to *ITSI TV Prods v. Agric. Ass'n*, 3 F.3d 1289, 1291-92 (9th Cir. 1993) is unsupportive for the same reasons.

Other cases Plaintiff cites are unsupportive for similar reasons. In *Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763 (11th Cir. 2020), the question before the court was "whether Congress had the power to effectuate its intent to abrogate Eleventh Amendment immunity" for Title II claims. *Id.* at 770. Specifically, the Court explained:

> "Under the Rehabilitation Act, a state waives its sovereign immunity if it received federal financial assistance. *Garrett v. Univ. of Ala. Birmingham Bd. of Trs.*, 344 F.3 1288, 1290-91 (11th Cir. 2003) (per curiam); 42 U.S.C. § 2000d-7. Plaintiffs' complaint alleges the Legislative Defendants receive federal financial assistance. The Legislative Defendants responded with a Rule 12(b)(1) motion raising a 'factual challenge' to District Court's jurisdiction over the Rehabilitation Act claim—namely that they did not receive federal funding. … In their opposition brief, Plaintiffs argued discovery was necessary to determine whether the Legislative Defendants had waived sovereign immunity."

*Id.* at 774-775.

Similarly, in *United Sates v. Yonkers Bd. of Educ.*, 893 F.2d 498, 502-503 (2nd Cir. 1990), the Second Circuit denied Eleventh Amendment immunity prior to discovery where there was a factual question arising from the pleadings about whether the challenged conduct was ongoing. The court noted that "[e]ach of the new pleadings requests declaratory and injunctive relief, as well as State participation in implementing remedies for the violations." *Id.* at 501. The district court explained, "at this stage of the proceedings, prior to full discovery, the Court cannot say that as a matter of law, respondents will not be able to establish a cause of action which, because of its continuing nature, is not barred by the doctrine of sovereign immunity." *U.S. v. City of Yonkers*, 1989 WL 88698 (S.D. New York 1989). On appeal, the

Second Circuit affirmed, stating, the contention of the State defendants that only past conduct is at issue is not sustainable from the face of the new pleadings, for in addition to allegations of wrongful acts that occurred at specified times in the past, there are allegations that the State defendants are engaging in continuing segregative conduct." *Yonkers Bd. of Educ.*, 893 F.2d at 503. Here, Plaintiff's claims are entirely about past conduct and there is no issue related to actual or potential prospective injunctive relief which is an exception to Eleventh Amendment immunity.

Finally, Plaintiff's reliance on authority supporting jurisdictional discovery is similarly inapplicable to this case. In *Laub v. U.S. Department of Interior*, 342 F.3d 1080 (9th Cir. 2003), the Ninth Circuit court explained "a decision 'to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant.'" *Id.* at 1093 (quoting *Hallett v. Morgan*, 287 F.3d 1193, 1212 (9th Cir. 2002). "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Laub*, 342 F.3d at 1093. Where, as here, existing law of the Ninth Circuit and the district courts in California supports immunity, and Plaintiff will suffer no prejudice from a denial of discovery.

These cases are inapplicable in this case, where there is no question about whether a waiver or an exception to Eleventh Amendment immunity applies, and the only question is whether California public school districts, including HBUHSD, are entitled to Eleventh Amendment immunity under existing law.

**B.    "NEW ISSUE NO. 2: THE REPLY (PP. 15-18) ARGUES FOR THE FIRST TIME THAT PLAINTIFF SHOULD BE DENIED DISCOVERY BECAUSE IT WILL NOT AFFECT THE DECISION ON DEFENDANTS' IMMUNITY."**

Plaintiff references the allegedly "massive changes created by California's adoption of the Local Control Funding Formula (LCFF)" in his effort to prompt this Court to delve into the intent regarding the status of school districts, the functions performed by school districts, the control over school districts, and the overall effects

on the state treasury, in every other state in the United States. (ECF 49-1, p. 2.) He claims that "discovery may very well show that … the HBUHSD now resembles the overwhelming majority of U.S. school districts that do not qualify for immunity," and "[d]iscovery is essential when pertinent facts are in defendants' possession." (ECF 49-1, pp. 2, 3.)

To arrive at the conclusion that Plaintiff's argument is unavailing one need look no further than multiple aspects of the Ninth Circuit's decision in *Sato v. Orange County Dept. of Education*, 861 F.3d 923 (9th Cir. 2017). In *Sato*, the court thoroughly examined the language, intent, and impact of the legislation changing the funding system in California from the state-centered "revenue limit" system to the state-centered LCFF, and *all* of the court's analysis undermines Plaintiff's assertion that discovery is needed for this Court to decide the immunity question. *Sato* noted that the legislation, AB 97, "reformed education funding and governance in California in two key respects."

> First, it replaced the old mechanism by which the state funded public education, which relied on a combination of "revenue limits" funding and "categorical funding grants," with the [LCFF]. The LCFF streamlined the number of state funding sources and increased K-12 spending, particularly for low-income and English-language-learner (ELL) student populations. Second, AB 97 required that school districts and COEs develop Local Control and Accountability Plans (LCAPs) to measure progress toward state and district goals for student achievement.

*Id.* at 929.

> "[T]he legislation's objectives were twofold: (1) increase education funding, particularly for low-income and ELL students, and (2) simplify what many considered an "overly complex, inefficient, and outdated" education finance system. To achieve these ends, the LCFF streamlined the numerous, piecemeal sources of state funding under the old revenue limits system. Base grants, supplemental grants, and concentration grants replaced revenue limits funding and almost all of the dozens of categorical funding grants under the old funding mechanism.

*Id.* at 931. The *Sato* court went on to describe multiple aspects of what the change from "revenue limits" to LCFF did and did not do, *all* of them based on how California law treats school districts and county offices of education, and *none* of it dependent

on or based on discovery or "pertinent facts … in [the Orange County Department of Education's] possession;"

- "As we noted in *Belanger*, equalization of per-pupil spending in California is not simply a matter of policy, but of state constitutional law. [Citation.] In two decisions from the 1970s—*Serrano v. Priest* (*Serrano I*), 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971), and *Serrano v. Priest* (*Serrano II*), 18 Cal.3d 728, 135 Cal.Rptr. 345, 557 P.2d 929 (1976) —the California Supreme Court declared that disparities in per-pupil spending, driven by differences in districts' ability to generate local property tax revenues, violated the equal protection guarantees of the state constitution. [Citations]. Nowhere in AB 97 does the California legislature attempt to amend the state constitution's equal protection provisions, and thus we assume that the constitutional precepts announced in *Serrano I* and *Serrano II* remain good law." *Id.* at 930.

- "As explained by the California Legislative Analyst's Office, the combination of base, supplemental, and concentration grants ensures that '[d]istricts serving the same number of students in the same grade spans with the same characteristics receive the same amount of funding.' Moreover, the state calculates its funding share to districts and COEs in the same manner as under the revenue limits system: the state's contribution is equal to the state-determined LCFF funding target minus local property tax revenue. [Citations.]" *Id.* at 931.

- "In *Belanger*, we found that 'California law treats public schooling as a statewide or central governmental function.' [Citation] The California Supreme Court has said that '[s]ince its admission to the Union, California has assumed specific responsibility for a statewide public education system open on equal terms to all.' [Citation] Examples of the state's assumption of public education as a state responsibility appear throughout the California Constitution. [Citations.]" *Id.* at 932.

- "AB 97 did not eliminate the 'centralized' system of 'strict state control' over local districts' funding we discussed in *Belanger*. … In *Belanger*, we noted that the enactment of Proposition 13 by statewide ballot initiative in 1978 'ensured that the state, rather than local school districts, would control funding for public schools.' … Proposition 13 capped local property tax rates at 1% of assessed value, and transferred the authority to collect and redistribute local property tax revenues to the state. [Citation.]" *Id.* at 932.

- "In sum, we find that AB 97 left in place the fundamental elements of *Belanger*: equalization of per-pupil spending and centralized control over local education budgets. Because the LCFF keeps in place a maximum per-pupil funding formula, state and local funds are still 'hopelessly intertwined,' and 'any change in the allocation of property tax revenue has a direct effect on the allocation of state funds.'" *Id.* at 932.

- "Under the state constitution, the provision of public education in California remains a central government function." *Id.* at 933.

- "[E]ven through the LCAP process, the state still exercises significant control over school districts and COEs. Under the LCAP provisions of AB 97, districts and COEs 'shall' address eight areas of priority identified by the state, and 'may' also address local priorities. [Citations] The far-reaching areas of state

priority include such fundamental issues as '[i]mplementation of the academic content and performance standards adopted by the state board,' For each area of state priority, districts and COEs must set goals for state-identified subgroups of students, and they must use state-provided templates and submit the final LCAP to the California Department of Education." *Id.* at 933.[2]

- "On the whole, AB 97 granted districts and COEs some measure of autonomy and discretion in goal-setting, but it did not delegate primary responsibility for providing public education. We therefore find that the passage of AB 97 did not disturb our longstanding precedent that 'California law treats public schooling as a statewide or central governmental function.'" *Id.* at 933.

- "The California Supreme Court has stated that '[l]ocal districts are the State's agents for local operation of the common school system.' [Citation.]" *Id.* at 934.

The *Sato* decision and many others before and since *reinforce* that the question before this Court is based solely on state law. Through *Sato*, the Ninth Circuit has already definitively determined what "changes [were] created by California's adoption of the Local Control Funding Formula (LCFF)," and for obvious reasons there was no hint that the defendant in that case had or might have had information relevant to the issue of the status of school districts and county offices of education under California law. The three-part test in *Kohn*, none of which refers to anything other than how the state treats the entity, reinforces the conclusion that state law dictates the immunity issue and there were no "pertinent facts … in defendants' possession" that the district court or the Ninth Circuit needed to apply the three prongs

---

[2] During the meet and confer process, the undersigned counsel conveyed Defendant's position that after the enactment of the LCFF and the *Kohn* decision, there is a *stronger* argument for Eleventh Amendment immunity than under the old "revenue limit" system and the *Mitchell* factors. This passage explains part of the reason why. The LCFF provided more flexibility in how state funds are spent, but it did not change *any* of the law cited in the *Belanger* and *Sato* decisions that are relevant to the *Kohn* factors, and it imposed *new*, significant top-down requirements on school districts – the legislation dictates that districts must address state-dictated areas of priority in far-reaching areas, that for each area districts must set goals for state-identified subgroups of students, that districts must use state-provided templates, and that evidence of their local compliance with these state mandates must be submitted to the California Department of Education ("CDE"). The state has also made non-compliance with these requirements within the purview of the Uniform Complaint Procedures, a state mandate for every school district to allow for complaints in certain areas, which requires investigation and response, and those responses are appealable to the CDE which makes a binding decision. See Cal. Educ. Code § 33315(a)(1)(L); Title 5, Cal. Code of Regs. § 4600 et seq.

to the entity.

Defendants decline to delve into Plaintiff's 38-page chart citing and providing tidbits of information about Eleventh Amendment immunity decisions in other states (ECF 49-2), because how the law in other states treats their public school system does not dictate how California law treats its public school system.[3] Additionally, Plaintiff's claim that "discovery may very well show that … the HBUHSD now resembles the overwhelming majority of U.S. school districts that do not qualify for immunity" is also foreclosed by *Sato*. In *Sato* the plaintiff argued that the adoption of the LCFF made California more like Alaska, Arizona, and Nevada. 861 F.3d at 930-931. In addition to finding plaintiff's arguments "without merit," and that "*Sato's* focus on semantics ignores the strictures of the California Constitution expressed in *Serrano I* and *Serrano II*," the Ninth Circuit addressed this argument by focusing on California law, not even hinting that the defendant Orange County Department of Education might possess "pertinent facts" that the court needed to decide the issue.

## C. "NEW ISSUE NO. 3: THE REPLY CITES NEW EVIDENCE (PP. 25 & 26)—A BOOK (AGUINALDO ET AL., *SCHOOL FUNDING AND ACCOUNTABILITY IN CALIFORNIA*) TO PROVE FACTS ABOUT CALIFORNIA'S LCFF, WHICH GOVERNS SCHOOL DISTRICT FUNDING."

Plaintiff asserts Defendants' citation to a book in their Reply is not allowed as it constitutes information beyond the pleadings, and, separately, that it "confirms that discovery is necessary because material facts are in dispute about the LCFF."

---

[3] An example of the lack of depth and therefore lack of value of the chart is in Plaintiff's selective quoting of the California Constitution. Article IX, § 6, for example, *also* includes that "'[n]o school or college or any other part of the Public School System shall be, directly or indirectly, transferred from the Public School System or placed under the jurisdiction of any authority other than one included within the Public School System," that "[t]he Legislature shall add to the State School Fund such other means from the revenues of the State as shall provide in said fund for apportionment in each fiscal year," and "[t]he entire State School Fund shall be apportioned in each fiscal year in such manner as the Legislature may provide, through the school districts and other agencies maintaining such schools, for the support of, and aid to, kindergarten schools, elementary schools, secondary schools, and technical schools…."

Setting aside Plaintiff's disagreement with Defendants' citation to a book, while noting Plaintiff has not filed an objection to that citation, Plaintiff's contention the citation "confirms discovery is necessary" is unsupported. Plaintiff cites no authority suggesting a citation to outside authority establishes a need for discovery on the question of immunity, nor does he make any attempt to expand on this single, bare, conclusion.

### D. "NEW ISSUE NO. 4: THE REPLY (PP. 14-15) ARGUES FOR THE FIRST TIME THAT *KOHN*'S NEWLY-ADOPTED ENTITY-BASED TEST DOES NOT APPLY TO SCHOOL DISTRICTS."

As Defendants' have previously indicated (see ECF 50, p. 3) while *Kohn* indicates the Ninth Circuit's intent that Eleventh Amendment immunity is evaluated "at the level of the entity," this does not suggest the court should individually determine the application of the Eleventh Amendment to each individual school district in California as Plaintiff so argues. In discussing the "entity-based" approach, the Ninth Circuit explained "an entity-based approach complies better with the D.C. Circuit's test, which builds an analysis of an entity's functions *into* its intent prong …." *Id.* at 1031. To use this as an illustrative example, Plaintiff's interpretation would suggest each individual school district in the state serves a different function, a contention that has obvious faults. The relevant question is how state law treats California school districts, and HBUHSD is subject to the same law as every other school district in the state, and is treated no differently than any other school district in the state on the law the drives the immunity inquiry.

### E. "NEW ISSUE NO. 5: THE REPLY (PP. 12-14) ERRONEOUSLY ARGUES THAT DEFENDANTS CARRY THEIR BURDEN TO DEMONSTRATE THEIR IMMUNITY AFFIRMATIVE DEFENSE (AS A MATTER OF LAW WITHOUT DISCOVERY) SIMPLY BY CITING *BELANGER* AND ITS PROGENY."

Plaintiff cites *Miller v. Gammie*'s holding that "where the reasoning or theory of [the Ninth Circuit's] prior circuit authority is clearly irreconcilable with the

reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." 335 F.3d 889, 893 (9th Cir. 2003). The key words "clearly irreconcilable" impose a substantial qualification directly applicable to the question of Eleventh Amendment immunity in this case. *Kohn* explicitly expressed an intent not to disrupt prior authority despite the shift away from the *Mitchell* factors. *Id.* at 1031-32. And, as various courts have recognized, the *Kohn* factors are not so significantly different from the *Mitchell* factors that earlier cases decided under the *Mitchell* factors cannot be reconciled, a proposition Defendants' consideration of the *Kohn* factors in their Reply illustrated. *See, e.g., Ramirez v. Oakland Unified School District*, 2025 WL 1507092 *6 (N.D. Cal. 2025).

Further, Plaintiff's reliance on the Ninth Circuit in *Crowe v. Oregon State Bar* (*Crowe II*), 112 F.4th 1218 (9th Cir. 2024) overturning its earlier decision in *Crowe v. Oregon State Bar* (*Crowe I*), 989 F.3d 714 (9th Cir. 2021) does little to suggest *Belanger* should be overturned. In *Kohn*, the Ninth Circuit explained "[t]he one circuit court decision that bucks" the trend of circuit courts finding state bars to be arms of the state" was its own decision in *Crowe I*. *Id.* at 1037. The Ninth Circuit stated [a]ny future case brought against the Oregon State Bar will need to be analyzed under the new test we articulate in this decision." *Id.* Plaintiff's attempt to extend this clear intent to specifically reconsider the status of the Oregon State Bar as diminishing Ninth Circuit's stated intent not to disturb other findings of immunity is meritless.

F.  **"NEW ISSUE NO. 6: THE LANGUAGE AND TONE OF THE REPLY SUGGESTS THAT *PLAINTIFF* HAS THE BURDEN TO DISPROVE DEFENDANTS' IMMUNITY— WHICH THEIR ARGUMENTS TREAT AS PRESUMED."**

Defendants have not argued Plaintiff is the party bearing the burden of proof on Eleventh Amendment immunity, and Plaintiff does not identify any specific portion of Defendants' Reply beyond Plaintiff's interpretation of its "language and tone" that indicates so. Plaintiff's claim that this "language and tone" constitutes a

"new issue" is baseless, and Plaintiff's citations to various cases merely bolster an uncontested point. Plaintiff's contention that Defendants treat immunity as "presumed" is a direct conclusion from the fact that *Belanger* has not been overturned, *Sato* has not been overturned, and that more than 10 Ninth Circuit judges have opined that the "new *[Kohn]* framework" "is unlikely to lead to different results in cases that previously applied the *Mitchell* factors and held an entity entitled to immunity," and that there was "no reason to believe that [*Kohn*] will substantially destabilize past decisions granting sovereign immunity to state entities within the Ninth Circuit." 87 F.4th at 1031-1032. Plaintiff cites no authority suggesting Defendant's "tone" is legally improper.

Respectfully submitted,

Dated: October 21, 2025

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: /s/ Mark R. Bresee
Mark R. Bresee
Brooklyn N. Robertson
Anthony P. De Marco
Attorneys for Defendants