UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                           Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| <u>Rolls Royce Paschal</u> | <u>        N/A        </u> |
|:---:|:---:|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|:---:|:---:|
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [28] AND DENYING DEFENDANT'S MOTION TO STRIKE [26]**

This case concerns Plaintiff Christopher Kluwe's termination from his coaching job at Edison High School ("EHS") for criticizing the Make America Great Again ("MAGA") movement and the following defamatory statements targeted at him. (*See generally* Dkt. 1 ("Complaint" or "Compl.").) Plaintiff alleges claims against several defendants: (1) Defendant Huntington Beach Union High School District ("HBUHSD"); (2) Defendant Carolee Ogata ("Ogata"), Defendant Susan Henry, Defendant Daniel Morris ("Morris"), Defendant Daniel Bryan, and Defendant Edward Begany ("Begany") in their individual and official capacities with HBUHSD (collectively "HBUHSD Individual Defendants" when referring to the school officials, and "HBUHSD Defendants" when referring to both school officials and the school district); and (3) Defendant Christian Epting ("Epting"). (*See generally id.* ¶¶ 31-50.) Before the court are (1) HBUHSD Defendants' Motion to Dismiss Plaintiff's Second and Third Claims, (Dkt. 28 ("Motion to Dismiss" or "MTD")), and (2) Epting's Motion to Strike Plaintiff's Fourth Claim, (Dkt. 26 ("Motion to Strike" or "MTS")). Both motions are fully briefed. (Dkts. 31, 37, 42-43, 49, 54.) The court held a hearing on the Motion to Dismiss and Motion to Strike on October 23, 2025. (Dkt. 55.) Based on the state of the record, as applied to the applicable law, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** and Motion to Strike is **DENIED**.

**I.      Motion to Dismiss**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

### A.     Summary of the Complaint's Allegations[1]

#### 1.     Plaintiff's Background

Plaintiff grew up in Seal Beach and attended Los Alamitos High School before playing college football for the University of California, Los Angeles ("UCLA") Bruins.  (Compl. ¶ 30.)  At UCLA, he received "All Pac-10 honors" and "was a finalist for the Ray Guy award (awarded to the top college punter)."  (*Id.* ¶ 55.)  After college, he played for the National Football League as a punter for the Minnesota Vikings for eight seasons and set multiple individual team records.  (*Id.* ¶¶ 2, 54.)

Outside his football career, Plaintiff worked was a civil rights activist and has stood up for marginalized people such as members of the LGBTQ community.  (*Id.* ¶ 64.)  For example, Plaintiff was vocal about his support for marriage equality in 2012-13, published letters supporting marriage equality, submitted an amicus brief in *Hollingsworth v. Perry*, and appeared on *The Ellen DeGeneres Show* to discuss his support for marriage equality.  (*Id.* ¶¶ 65-66.)

Starting with the 2019 football season, Plaintiff was hired by HBUHSD to be an assistant coach for EHS's freshman football team.  (*Id.* ¶ 51.)  Due to his impressive background and excellent performance as a coach, HBUHSD kept Plaintiff as a paid assistant coach each year through the 2024 season.  (*Id.* ¶ 52.)  Typically in the spring, Plaintiff spoke with Head Coach of EHS football program Jeff Grady and Freshman Head Coach Shaun Colamonico about his continued interest in coaching.  (*Id.* ¶ 59.)  Both coaches asked Plaintiff if he planned to return for the 2025 season and appeared pleased when he said yes.  (*Id.* ¶ 60.)

#### 2.     Huntington Beach City Council Protest

---

[1] For purposes of the Motion to Dismiss, the court "accept[s] factual allegations in the [C]omplaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

Central to this case is the Huntington Beach City Council's targeting of the Huntington Beach Library. (*Id.* ¶ 75.) The City Council has sought to reduce accessibility by teens to disfavored books, especially with puberty and LGBTQ themes, to install a review board to approve books, and to privatize the library to eliminate public transparency and influence. (*Id.* ¶ 76.) The hotly contested Huntington Beach Library politics has garnered significant community attention and was an article topic for the *Los Angeles Times*, the *Orange County Register*, and other media outlets. (*Id.* ¶¶ 77-78.)

In February 2025, the City Council proposed the installation of a plaque to commemorate the 50th anniversary of the city's public library, describing the library as "**M**agical **A**lluring **G**alvanizing **A**dventurous." (*Id.* ¶ 79.) This design was intended as an acrostic to reference MAGA and caused uproar among many liberal and anti-Trump Republican residents. (*Id.* ¶¶ 79-80.) The City Council's vote on installation was set for a meeting on February 18, 2025. (*Id.* ¶ 102.) Plaintiff registered to speak at the meeting. (*Id.*)

Plaintiff decided it was important to mount an impactful protest at the meeting because he believed that the City Council was not listening to objections about the library and other MAGA agenda items. (*Id.* ¶ 103.) He read a pre-written script at the meeting which vocalized his discontent with MAGA and the City Council's failure to listen to the objections to the plaque. (*Id.* ¶ 104.) After reading from the script, Plaintiff stated, "I will now engage in the time-honored American tradition of peaceful, civil disobedience." (*Id.* ¶ 105.) Plaintiff walked around the podium and took a few steps toward the City Council members, who were seated on a dais behind desks. (*Id.* ¶ 106.) Plaintiff stopped, put his hands behind his back, and was immediately tackled by five officers. (*Id.*) The officers carried Plaintiff out and arrested him. (*Id.* ¶ 107.) The story of Plaintiff's protest and arrest received significant media attention with major news outlets publishing a story or interviewing him, including the *Los Angeles Times*, *Orange County Register*, *The New York Times*, *Sports Illustrated*, CBS, NBC, ABC, Fox News, CNN, and MSNBC. (*Id.* ¶ 111.)

Conservatives harshly criticized Plaintiff for his speech at the City Council meeting. (*Id.* ¶ 114.) For example, Denise Kavanaugh published a post on the conservative Huntington Beach Community Forum, stating that community members were "applaud[ing] a speaker screaming Nazi at the podium who then rushed the council members at the Dias [sic]," and that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                          Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

"[t]his is what half of our community has devolved into, base line thuggery and condoning it." (*Id.* ¶ 118.)  Epting added a comment on the post in which he referred to Plaintiff as threatening and suggested he was lucky to be alive.  (*Id.* ¶ 120.)  In another comment, Epting mocked the idea of Plaintiff being a candidate for City Council.  (*Id.* ¶ 121.)  For background, Epting is well-known in Huntington Beach for his conservative political activities and personal controversies.  (*Id.* ¶ 84.)  For example, an announcement on the City of Huntington Beach Facebook page had an event where Epting would be speaking in January 2025.  (*Id.* ¶ 89.)  In the discussion thread, critics stated that Epting "attacks and attacks and threatens," that he would "gang up" on people he disagreed with in social media, and that he was "mean and nasty."  (*Id.* ¶¶ 90-94.)

### 3.    Plaintiff's Post About Review Bombing

Following the City Council meeting, people began calling the library to complain about the decision regarding the MAGA plaque.  (*Id.* ¶ 124.)  A library representative reached out to Pride at the Pier, a non-profit supporting the LGBTQ community in Orange County, to ask if the organization could clarify the ongoing issue so people would stop calling the library.  (*Id.* ¶ 125.)  Kanan Durham, Executive Director of Pride at the Pier, invited Plaintiff to record a video for social media.  (*Id.* ¶ 126.)  In the recorded video, Durham asked residents to stop "review bombing" the library because the library staff was not responsible for the MAGA plaque.  (*Id.* ¶ 127.)  Plaintiff said, "If you want to do something, find out where the council members work, go review bomb that."  (*Id.* ¶ 128.)  The online Merriam-Webster Dictionary defines "review bomb" as follows: "To post a usually negative online review of (a product, business, etc.) especially as part of a coordinated campaign."  (*Id.* ¶ 129.)

On February 23, 2025, Pride at the Pier published a post on Bluesky with the recorded video attached along with the following message: "We've heard that the HB librarians are getting attacked over the MAGA plaque.  Please don't do this!  They are not in control of what the HB City Council does.  If you care about this issue, please direct your concerns to the council members."  (*Id.* ¶ 130.)  Bluesky is a liberal-leaning social media platform with a "quote post" feature that allows users to share someone else's content while adding their own text or commentary.  (*Id.* ¶¶ 132-33.)  On the same day, Plaintiff quote posted Pride at the Pier's post ("Plaintiff's PSA Post") and added the following message: "Also, PSA, and I can't believe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

I have to say this: Stop fucking with the library.  That's what the city council is doing.  The
library is great, as are the people who work there.  Go fuck with the city council.  Find where
they work, and blow *those* places up." (*Id.* ¶¶ 134-35.)  The online Merriam-Webster
Dictionary gives multiple definitions of "blow up," including "to overwhelm (something, such
as a phone) with calls, messages, alerts, etc." (*Id.* ¶ 136.)

On February 23, 2025, Epting published a post on HB Insider reflecting that he was
monitoring Plaintiff and seeking to discredit him.  (*Id.* ¶ 138.)  He repeatedly mischaracterized
Plaintiff's statements, pushed for people to drop Plaintiff as their "hero," and cast him as an
extremist not fit to run for City Council.  (*Id.* ¶ 141.)  Then, on February 26, 2025, Epting
posted in the comments section ("Epting's Comment") of his February 23 post.  (*Id.* ¶ 146.)  In
Epting's Comment, he attached an image that appears to be a screenshot of a cropped version of
Plaintiff's PSA Post.  (*Id.*)  In the cropped version, Epting only included Plaintiff's message
without Pride at the Pier's video or message.  (*Id.*)  About 90 minutes later, Epting published a
new, original post on HB Insider ("Epting's Post") with the same cropped screenshot but added
the following message: "I hope the library renounces this kind of language and behavior." (*Id.*
¶¶ 148-49.)

Epting's Post triggered many disparaging attacks on Plaintiff.  (*Id.* ¶ 157.)  Multiple
people accused Plaintiff of threatening violence, said that the police should be contacted, and
said Plaintiff should be fired from his coaching job.  (*Id.* ¶ 158; *see also id.* ¶ 159 ("Chris
Young commented on Epting's HB Insider post, saying 'I would think HBPD would like to see
that.'").)  On February 26, 2025, a Huntington Beach police detective Mona Klaibe contacted
Plaintiff about Plaintiff's PSA Post which suggested violence.  (*Id.* ¶ 160.)

On February 27, 2025, EHS Athletic Director Rich Boyce called Plaintiff to schedule a
meeting along with Begany.  (*Id.* ¶ 172.)  At the meeting, Begany told Plaintiff he was being let
go because of the current attention the school was getting.  (*Id.* ¶ 173.)  Plaintiff announced on
Bluesky that EHS had fired him on the same day.  (*Id.* ¶ 176.)  He expressed his belief that his
discharge was politically-motivated and serves as an example of "what MAGA does to
communities" and how they "don't care about what helps people," but only "about trying to
hurt people." (*Id.* ¶ 177.)  The story of Plaintiff's discharge received significant local and
national media attention, including the *Los Angeles Times*, *Orange County Register*, *The*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

*Washington Post*, *Sports Illustrated*, *The Guardian*, *USA Today*, ABC, NBC, CNN, and Fox News.  (*Id.* ¶ 179.)  United States Representative Dave Min, representing California's 47th congressional district, sent a letter to Morris and Ogata expressing his deep concern about Plaintiff's discharge for political speech.  (*Id.* ¶¶ 181-83.)

On March 3, 2025, HBUHSD and EHS issued a press release that was distributed to media outlets and on Parent Square, an electronic platform for school-parent communications, to all students, parents, and staff at EHS.  (*Id.* ¶ 192.)  The press release stated that Plaintiff's discharge was unrelated to his public comments at the City Council but "based on a public social media post made by Plaintiff, which included a statement suggesting violence."  (*Id.* ¶ 194 ("Press Release").)  The Press Release stated, in pertinent part:

> This post, which since has been deleted, was in direct violation of the district's *standards for professionalism and appropriate conduct* for staff members. While [Plaintiff] removed the post, he has not acknowledged that the post was the reason for his separation from the school. Due to personnel matters, HBUHSD is unable to elaborate further. While HBUHSD values the right to free speech, the district does not condone or tolerate language that promotes or suggests violence in any form. HBUHSD and Edison High School remain committed to maintaining a safe, respectful, and professional environmental for all students, staff, and community members.

(*Id.* ¶ 196) (emphasis added).

HBUHSD Defendants have never contacted Plaintiff to inform him that Plaintiff's PSA Post was the reason for his discharge or to ask him for his side of the story.  (*Id.* ¶ 197.)  On June 4, 2025, Plaintiff submitted a Public Records Act request to the HBUHSD for a copy of the "standards for professionalism and appropriate conduct" that was referenced in the Press Release.  (*Id.* ¶ 207.)  The HBUHSD responded to the request by citing a policy titled "BP 1315–Civility Policy."  (*Id.*)  The Civility Policy provides as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

> Members of the Huntington Beach Union High School District staff
> will treat parents and other members of the public with respect and
> expect the same in return.  The district is committed to maintaining
> orderly educational and administrative processes, in keeping schools
> and administrative offices free from disruptions and preventing
> unauthorized persons from entering school or district grounds.
> The Huntington Beach Union High School District seeks to promote
> mutual respect, civility, and orderly conduct among district employees,
> parents and the public.  This policy is not intended to deprive any
> person of his/her right to freedom of expression but only to maintain,
> to the extent possible and reasonable, a safe, harassment-free workplace
> for our students and staff.  In the interest of presenting district
> employees as positive role models to the children of this district, as well
> as in the community, the Huntington Beach Union High School District
> encourages positive communication and discourages volatile, hostile or
> aggressive actions.  The district seeks public cooperation with this
> endeavor.

(*Id.* ¶ 208 ("Civility Policy").)

Plaintiff alleges claims against HBUHSD and HBUHSD Individual Defendants, in their
individual and official capacities, for (1) retaliation in violation of First Amendment,
(2) violation of the First and Fourteenth Amendment: "as applied" challenge to the Civility
Policy ("Second Claim"), and (3) deprivation of property and liberty interest without due
process in violation of the Fourteenth Amendment ("Third Claim").  (*See generally id.*
¶¶ 209-314.)  Plaintiff also alleges a false light defamation claim ("Fourth Claim") against
Epting.  (*See generally id.* ¶¶ 315-54.)

**B.    Legal Standard**

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a
claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[C]ourts must consider the
complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

**C.    Analysis**

HBUHSD Defendants move to dismiss claims against (1) HBUHSD and HBUHSD Individual Defendants, sued in their official capacity, on the basis that they are entitled to Eleventh Amendment immunity, and Plaintiff's Second and Third Claims for (2) failure to provide fair notice as to the theories of liability and state a claim for punitive damages, (3) failure to adequately allege that the application of the Civility Policy violated his First or Fourteenth Amendment Rights, and (4) failure to adequately allege a deprivation of a property or liberty interest in violation of due process.  (MTD at 16-29.)  The court addresses each argument in turn.[2]

**1.    Eleventh Amendment Immunity**

_____

[2] HBUHSD Defendants argue that Plaintiff does not have a property interest in his employment with the HBUHSD and cannot state a claim arising out of such interest.  (MTD at 21-22.) Plaintiff "agreed to drop the property interest theory in the Third [Claim]" during the meet and confer process and stated that the Third Claim "is the sole cause of action for which a property interest is relevant." (Dkt. 42 at 35.)  Because the parties do not dispute that Plaintiff does not have property interest relevant to the Second and Third claims, the Motion to Dismiss is **GRANTED** as to Plaintiff's Second and Third Claims to the extent they rely on a property interest theory.  *See Zhang v. Twitter Inc.*, 2023 WL 5493823, at *7 (N.D. Cal. Aug. 23, 2023), *aff'd*, No. 23-16125, 2025 WL 66050 (9th Cir. Jan. 10, 2025) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate.") (citation modified); *Shull v. Ocwen Loan Servicing, LLC*, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) (same) (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                              Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

HBUHSD Defendants argue that HBUHSD and HBUHSD Individual Defendants, sued in their official capacity, are entitled to Eleventh Amendment immunity under *Belanger*.  (MTD at 16-18.)  Plaintiff responds that determining whether the Eleventh Amendment immunity applies is premature at this stage of the proceedings.  (Dkt. 42 at 13-19.)

The Ninth Circuit has held that California school districts are "arms of the state" entitled to sovereign immunity under the Eleventh Amendment.  *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 253 (9th Cir. 1992) ("Under California law, [public] school districts are agents of the state that perform central governmental functions."); *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1122 (9th Cir. 2007) ("[A] California school district and county office of education are arms of the state for purposes of Eleventh Amendment sovereign immunity."); *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 926 (9th Cir. 2017) ("School districts and COEs in California remain arms of the state and cannot face suit.").  Both school district superintendents and other school district employees sued in their official capacities are entitled to Eleventh Amendment immunity.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."); *Eaglesmith v. Ward*, 73 F.3d 857, 859-860 (9th Cir. 1995) (holding school district superintendent was entitled to Eleventh Amendment immunity); *Ogando v. Natal*, 2023 WL 8191089, at *5 (N.D. Cal. Nov. 27, 2023) (stating that the "[school] district and [four school officials] sued in their official capacities are immune from damages liability under Section 1983").

In *Kohn v. State Bar of California*, the Ninth Circuit adopted the D.C. Circuit's test to determine whether an entity was an arm of the state.  87 F.4th 1021, 1031-32 (9th Cir. 2023).  However, the Ninth Circuit noted that they "have no reason to believe that [this] decision [would] substantially destabilize past decisions granting sovereign immunity to state entities within the Ninth Circuit."  *Id.* at 1032.  Following *Kohn*, the Ninth Circuit has expressed uncertainty as to whether "*Belanger*'s and *Sato*'s conclusions about California school boards being arms of the state remain good law."  *Riley's Am. Heritage Farms v. Elsasser*, 2024 WL 1756101, at *1 n.1 (9th Cir. Apr. 24, 2024).  Recently, the Ninth Circuit has explicitly taken no position on whether the prior holding that "California public school districts are to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity" should be revisited in light of the newly adopted test.  *K. J. by & through Johnson v. Jackson*, 127 F.4th 1239, 1251

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

n.8 (9th Cir. 2025). Accordingly, the Ninth Circuit's holdings that California public school districts have Eleventh Amendment immunity in *Belanger* and *Sato* remain undisturbed. The court also observes other district courts have determined that a California school district was a state entity entitled to Eleventh Amendment immunity post-*Kohn*. *See, e.g.*, *Price v. Tamalpais Union High School District*, 2025 WL 1046644, *2 (N.D. Cal. Apr. 8, 2025) (finding that defendant school district is entitled to Eleventh Amendment immunity as "[t]he court's rationale in *Sato* applies under the *Kohn* framework to school districts"); *A. W. v. Santa Rosa City Sch.*, 2025 WL 1180725, at *5 (N.D. Cal. Apr. 22, 2025) ("In California, school districts are state agencies that are afforded Eleventh Amendment immunity."); *Ramirez v. Oakland Unified Sch. Dist.*, 2025 WL 1507092, at *4-6 (N.D. Cal. May 27, 2025) (concluding that a California school district was an entity entitled to sovereign immunity under *Kohn* because (1) "California intended the district to be an arm of the state," (2) the district "is controlled by the state," and (3) "the state is responsible for funding the district and paying its debts and judgments"); *T.L. v. Orange Unified Sch. Dist.*, 2024 WL 305387, at *8 (C.D. Cal. Jan. 9, 2024) (concluding that a California school district was entitled to sovereign immunity under the Eleventh Amendment). Because the court is persuaded by the other courts' determination that California School Districts are entitled to Eleventh Amendment immunity and the Ninth Circuit has not disturbed its holdings in *Belanger* and *Sato*, the court concludes that a California school district is an entity entitled to Eleventh Amendment immunity.

The court finds HBUHSD and HBUHSD Individual Defendants, in their official capacities, are entitled to Eleventh Amendment immunity because HBUHSD is a California school district and HBUHSD Individual Defendants, in their official capacities, are employees of HBUHSD. *See Sato*, 861 F.3d at 926; *Hafer*, 502 U.S. at 25. Here, Plaintiff alleges that "HBUHSD is a school district that comprises six comprehensive high schools in Huntington Beach, including EHS." (Compl. ¶ 31.) Plaintiff further alleges that HBUHSD Individual Defendants are employees of HBUHSD. (*See id.* ¶ 33 ("Defendant Carolee Ogata is the Superintendent of HBUHSD."); *id.* ¶ 36 ("Defendant Susan Henry is the President of the Board of Trustees of HBUHSD and has been a Board member since 2000.); *id.* ¶ 40 ("Defendant Daniel Bryan is the Assistant Superintendent, Human Resources at HBUHSD."); *id.* ¶ 43 ("Defendant Daniel Morris is the Principal of EHS."); *id.* ¶ 46 ("Defendant Edward Begany is the Assistant Principal, Supervision at EHS.").) Accordingly, the Motion to Dismiss is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

**GRANTED** as to claims against HBUHSD and HBUHSD Individual Defendants, in their
official capacities.

### 2.    Fair Notice and Punitive Damages

HBUHSD Defendants argue that Plaintiff fails to provide fair notice of his claims
because Plaintiff engages in shotgun pleading and fails to sufficiently allege a claim for
damages. (MTD at 18-21.)  Plaintiff responds that claims against HBUHD Defendants are
sufficiently alleged. (Dkt. 42 at 19-27.)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the
claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of
what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citation
modified).  "A complaint which lumps together multiple defendants in one broad allegation
fails to satisfy the notice requirement of Rule 8(a)(2)." *Adobe Sys. Inc. v. Blue Source Grp.,
Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (citation modified).  "A plaintiff must identify
what action each defendant took that caused plaintiffs' harm, without resort to generalized
allegations against defendants as a whole." *Id.* (citation modified); *Webb v. Cnty. of San
Bernadino*, 2023 WL 11999208, at *3 (C.D. Cal. June 26, 2023) (same).  "Put another way, a
plaintiff's allegations must provide sufficient notice to all of the Defendants as to the nature of
the claims being asserted against them, including what conduct is at issue." *Adobe Sys.*, 125 F.
Supp. 3d at 964 (citation modified).

The court finds Plaintiff sufficiently alleges his Second and Third claims such that
HBUHSD Defendants have fair notice because Plaintiff does not impermissibly lump together
HBUHSD Defendants. *See Adobe Sys.*, 125 F. Supp. 3d at 964.  Here, Plaintiff alleges the
distinct roles and duties of the HBUHSD Individual Defendants. (*See* Compl. ¶¶ 33, 36, 40, 43,
46.)  Plaintiff further alleges that his arrest for his library-related protest, (*id.* ¶¶ 102-112), and
the controversies around Huntington Beach Library, such as access restrictions to books,
surrounding the library-related protest, (*id.* ¶¶ 75-80), were highly publicized in multiple media
outlets.  As mentioned earlier, *see* Section I.C.1, *supra*, many of the HBUHSD Defendants have
senior positions at HBUHSD such that they would have knowledge of the alleged controversy
surrounding Plaintiff given its publicity.  Given the alleged circumstances around Plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

protest, Huntington Beach Library's controversies, and the Press Release about Plaintiff's termination, and the fact that discovery will provide more information regarding HBUHSD Individual Defendants' exact involvement, the court finds that Plaintiff provides fair notice of his Second and Third claims based on HBUHSD Individual Defendants' alleged knowledge and participation. *See Adobe Sys.*, 125 F. Supp. 3d at 964-65 (construing allegations in the light most favorable to plaintiff when determining whether complaint lumped together defendants); *see also, e.g.*, *Webb*, 2023 WL 11999208, at *4 (finding complaint does not impermissibly lump defendants together where plaintiff alleges the conduct defendants allegedly committed that result in the claims and "many of the facts [d]efendants request are information that they would already know or be able to ascertain as the employers"); *Wright v. City of Santa Cruz*, 2014 WL 217089, at *3 (N.D. Cal. Jan. 17, 2014) ("The Court agrees that at this stage of the litigation Plaintiffs cannot reasonably be expected to identify the exact nature of any City employee's involvement in the arrest and incarceration of Haley Wright, and that therefore dismissal is not warranted for failure to identify the involvement of City employees with greater precision."). Accordingly, the Motion to Dismiss is **DENIED** as to HBUHSD Defendants' fair notice argument.

HBUHSD Defendants argue that Plaintiff fails to adequately allege entitlement to punitive damages because Plaintiff makes conclusory allegations of malice. (MTD at 20-21.) Plaintiff responds that punitive damages are sufficiently alleged through allegations of HBUHSD Defendants reckless conduct. (Dkt. 42 at 27-28.) Punitive damages are available against defendants under § 1983 when the conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Mora v. City of Chula Vista*, 2021 WL 4220633, at *6 (S.D. Cal. Sept. 16, 2021) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983) and *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005)). The court finds Plaintiff adequately alleges an entitlement to punitive damages because Plaintiff alleges misconduct and the reckless indifference for Plaintiff's rights in light of the controversy. *See Dang*, 422 F.3d at 807. As discussed above, Plaintiff alleges HBUHSD Defendants were aware of the controversy surrounding Plaintiff's speech, terminated him because of Plaintiff's PSA Post, and issued the stigmatizing Press Release without inquiring about Plaintiff's PSA Post. (*See, e.g.*, Compl. ¶¶ 75-80, 102-12, 196, 211.) Accordingly, the Motion to Dismiss is **DENIED** as to HBUHSD Defendants' punitive damages argument. *See Dang*, 422 F.3d at 807; *see also, e.g.*, *Webb*, 2023 WL 11999208, at *5 (finding plaintiff sufficiently alleged reckless

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

disregard where plaintiff alleged defendant should have known or knew their policies would cause harm).

### 3.    Second Claim: Civility Policy's Constitutionality

HBUHSD Defendants moves to dismiss the Second Claim, arguing that Plaintiff fails to adequately allege the Civility Policy, as applied to Plaintiff, is (1) overbroad, (2) vague, or (3) constitutes viewpoint discrimination in violation of Plaintiff's First and Fourteenth Amendment rights.  (MTD at 22-26.)  The court addresses each argument in turn.[3]

### a.    Overbreadth

"A constitutional challenge based on overbreadth is a challenge to the facial validity of a statute or regulation."  *United States v. Szabo*, 760 F.3d 997, 1003-04 (9th Cir. 2014).  Here, Plaintiff alleges that "as applied to [Plaintiff], the Civility Policy is unconstitutionally overbroad."  (Compl. ¶ 256.)  Because Plaintiff is not challenging the facial validity of the Civility Policy, the Motion to Dismiss is **GRANTED** to the extent the Second Claim is based on an as-applied overbreadth theory.  *See Szabo* 760 F.3d at 1003-04; *see also Diaz v. Messer*, 742 F. App'x 250, 253 (9th Cir. 2018) ("[A] litigant cannot make an as-applied overbreadth argument; an overbreadth challenge must be addressed to the *facial* validity of a statute.").

---

[3] The court observes that HBUHSD Defendants do not address *Pickering*/*NTEU* as it relates to the Second Claim.  (*See generally* Mot.)  Because HBUHSD Defendants do not address the applicable *Pickering*/*NTEU* balancing test, and such balancing is generally not appropriate at this stage of the proceedings, the court finds Plaintiff's Second Claim survives to the extent it relies on *Pickering*/*NTEU*.  *See Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025) ("In many cases, factual development is necessary, so the balancing cannot be performed on a 12(b)(6) motion.  Where the facts alleged do not decisively indicate that the state's interest outweighs the plaintiff's, the *Pickering* balancing is generally deferred at least to the summary judgment stage.").  However, the court will address the HBUHSD Defendants' arguments regarding the sufficiency of Plaintiff's allegations of the Civility Policy's overbreadth, vagueness, and viewpoint discrimination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                              Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

### b.    Vagueness

HBUHSD Defendants argue that the Civility Policy is not vague because HBUHSD was not required to have a written policy justifying its termination of Plaintiff and that the application of the Civility Policy to Plaintiff was not unconstitutionally vague.  (MTD at 23-25.)  Plaintiff responds that the Civility Policy's ban on disrespectful and uncivil speech offers no discernable standard from which employees could determine what types of speech would subject them to discipline or arbitrary and capricious application.  (Dkt. 42 at 32-34.)

To challenge a policy for vagueness, the plaintiff "must show (1) a deprivation of a constitutionally protected interest, and (2) that the deprivation was achieved by means of the constitutionally vague policy or procedure."  *Young Am.'s Found. v. Napolitano*, 2018 WL 1947766, at *10 (N.D. Cal. Apr. 25, 2018).  A vagueness challenge requires the plaintiff to "show either that the challenged provisions fail to afford employees a reasonable opportunity to understand what conduct they prohibit, or that the provisions permit arbitrary and discriminatory enforcement."  *Hernandez v. City of Phoenix*, 43 F.4th 966, 982 (9th Cir. 2022) (citation modified).  "The question in an as-applied challenge is whether the statute is unconstitutional when applied in a particular case, and therefore, specific facts are critical."  *Alo v. Goldsmith*, 2023 WL 4239066, at *14 (E.D. Cal. June 28, 2023) (citation modified).

The court finds Plaintiff adequately alleges the Civility Policy was unconstitutionally vague as applied to him.  *See Napolitano*, 2018 WL 1947766, at *10; *see also Hernandez*, 43 F.4th at 982.  Here, Plaintiff alleges that the Civility Policy's "ban on any disrespectful or uncivil speech" "that may detract from a safe, harassment-free workplace" provided Plaintiff "no discernible standard from which to determine what types of speech would subject him to discipline and no explicit standards to prevent arbitrary and capricious application."  (Compl. ¶ 274.)  Plaintiff further alleges that he had no notice that the "off-duty, off-campus, political speech about nonwork topics would subject him to discharge without notice, any hearing, or progressive discipline."  (*Id.* ¶ 275.)  The court finds these allegations sufficient to demonstrate the Civility Policy's vagueness, as applied to Plaintiff, because Plaintiff alleges a deprivation of his coaching job based on the Civility Policy's broad standards.  *See Napolitano*, 2018 WL 1947766, at *10; *see also Hernandez*, 43 F.4th at 982.  Accordingly, the Motion to Dismiss is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-01648-FWS-JDE                          Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

DENIED as to Plaintiff's Second Claim to the extent it is based on the Civility Policy's
vagueness.

### c.    Viewpoint Discrimination

To state a viewpoint discrimination claim, a plaintiff must plausibly allege: "(1) on its
face, a government restriction on speech 'distinguishes between types of speech or speakers
based on viewpoint expressed, or (2) though neutral on its face, the regulation is motivated by a
desire to suppress a particular viewpoint.'"  *White v. Sacramento Police Dep't*, 2022 WL
2052596, at *5 (E.D. Cal. June 7, 2022) (quoting *Moss v. U.S. Secret Serv.*, 711 F.3d 941, 959
(9th Cir. 2013)).

The court finds Plaintiff adequately alleges the Civility Policy's facilitation of viewpoint
discrimination against him.  *See Moss*, 711 F.3d at 959.  In this case, Plaintiff alleges that
"HBUHSD Defendants applied the Civility Policy in a way that violated [Plaintiff]'s First
Amendment rights by singling out his messages for disfavor because of the politically liberal
views expressed in those messages."  (Compl. ¶ 279.)  Plaintiff further alleges that HBUHSD
Defendants singled out Plaintiff's messages by "(1) conducting a sham investigation into
[Plaintiff]'s PSA social media post, (2) discharging [Plaintiff], and (3) publishing defamatory
statements that [Plaintiff] promoted violence."  (*Id.* ¶ 280.)  Plaintiff also alleges that the
context of his discharge raises an inference of viewpoint discrimination given the public
complaints regarding Plaintiff's PSA Post.  (*Id.* ¶¶ 158-59, 168.)  And finally, Plaintiff alleges
that "[u]pon information and belief, HBUHSD Defendants would not have taken the same
actions against an HBUHSD employee who criticized Democrats or other liberal-leaning
groups or who had spoken in favor of Trump or MAGA," (*id.* ¶ 283), and "never disciplined
any staff members for politically conservative speech that allegedly violated the Civility Policy
without an investigation, warning, or progressive discipline," (*id.* ¶ 284).  The court finds
Plaintiff sufficiently alleges the Civility Policy facilitates viewpoint discrimination because
Plaintiff alleges that the Civility Policy's vagueness facilitates viewpoint discrimination, and
that public complaints and the circumstances of Plaintiff's discharge create an inference of
discrimination based on his political speech.  *See Moss*, 711 F.3d at 959.  Accordingly, the
Motion to Dismiss is DENIED as to Plaintiff's Second Claim to the extent it is based on the
viewpoint discrimination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

### 4.    Third Claim: Deprivation of a Property or Liberty Interest

HBUHSD Defendants argue that Plaintiff's Third Claim fails to allege a deprivation of a liberty interest in violation of Due Process.  (MTD at 26-29.)  Plaintiff responds that he sufficiently alleged his Third Claim because the Press Release deprived him of his liberty interest.  (Dkt. 42 at 35-37.)

"The liberty protected by the due process clause of the . . . fourteenth amendment[] encompasses an individual's freedom to work and earn a living.  Thus, when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name."  *Bollow v. Fed. Rsrv. Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981) (citing *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)).  "To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities."  *Id.* at 1101 (quoting *Roth*, 408 U.S. at 573-74).  The Ninth Circuit has "described the stigma that infringes liberty interests as that which 'seriously damages a person's reputation or significantly forecloses his freedom to take advantage of other employment opportunities.'"  *Id.* (quoting *Jablon v. Trustees of California State Colleges*, 482 F.2d 997, 1000 (9th Cir. 1973)).  "To lodge such a stigma-plus due process claim, a plaintiff must show: (1) the public disclosure of a stigmatizing statement by the government; (2) the accuracy of which is contested; (3) *plus* the denial of some more tangible interest such as employment."  *Chaudhry v. Aragon*, 68 F.4th 1161, 1170 (9th Cir. 2023) (citation modified).  "[W]hether the stigma caused or was merely incidental to the relevant deprivation, a person acting under color of state law must have caused—either directly or by setting in motion a series of acts—the alleged deprivation of a protected right."  *Id.* at 1170 n.15.

The court finds Plaintiff adequately alleges HBUHSD Defendants' Press Release deprived him of his liberty interest in his good name, reputation, honor, and integrity without due process.  *See Chaudhry*, 68 F.4th at 1170.  Plaintiff alleges that "the HBUHSD Defendants publicly stated that [Plaintiff] was discharged for promoting violence."  (Compl. ¶ 295.)  Plaintiff further alleges that HBUHSD Defendants stated Plaintiff "has not acknowledged that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                            Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

the [Plaintiff's PSA Post] was the reason for his separation from the school." (*Id.* ¶ 296.) And finally, Plaintiff alleges that "HBUHSD Defendants' defamatory statements imposed a stigma of moral turpitude that has seriously damaged [Plaintiff]'s reputation as a desirable, safe football coach fit to work as a high school freshman coach and his community standing as a peaceful, credible community activist." (*Id.* ¶ 300.) The court finds these allegations sufficient to state Plaintiff's Third Claim because the Press Release allegedly harmed Plaintiff's reputation as a coach and activist by stating that he promoted violence. *See Chaudhry*, 68 F.4th at 1170. Accordingly, the Motion to Dismiss is **DENIED** as to Plaintiff's Third Claim to the extent it is based on a liberty interest.

**D.    Summary and Leave to Amend**

In summary, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The court **GRANTS** the Motion to Dismiss as to (1) Plaintiff's claims against HBUHSD and HBUHSD Individual Defendants, in their official capacities, (2) the Second Claim to the extent it is based on an as-applied overbreadth theory, and (3) the Third Claim to the extent it relies on a property interest. The court **DENIES** the Motion to Dismiss in all other respects.

The court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's claims against HBUHSD and HBUHSD Individual Defendants, in their official capacities, because they have Eleventh Amendment immunity. *See e.g.*, *Doe A.O. v. Temecula Valley Unified Sch. Dist.*, 2025 WL 2493764, at *8 (C.D. Cal. July 28, 2025) (dismissing claims against California school district and district employees, in their official capacities, without leave to amend because they have Eleventh Amendment immunity); *see also Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (stating "[a]lthough leave to amend 'shall be freely given when justice so requires,' it may be denied" where it "would not serve any purpose because to grant it would be futile in saving the plaintiff's suit") (quoting Fed. R. Civ. P. 15(a)). The court also **DISMISSES WITHOUT LEAVE TO AMEND** the Second Claim to the extent it is based on an as-applied overbreadth theory because it is barred as a matter of law. *See Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022) (explaining amendment is futile when "it is clear . . . that the complaint could not be saved by any amendment"); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (stating a court may deny leave to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                           Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").

## II.    Motion to Strike

### A.    Legal Standard

California's anti-SLAPP Statute allows for pre-trial dismissal of Strategic Lawsuits against Public Participation ("SLAPPs").  Cal. Civ. Proc. Code § 425.16; *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  The statute aims to identify, early in the litigation process, "meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation."  *Id.*  California's anti-SLAPP statute provides as follows:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1).

"To prevail on an anti-SLAPP motion to strike, the defendant must first make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech."  *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017); *see also Park v. Board of Trustees of Cal. State Univ.*, 217 Cal. Rptr. 3d 130, 132 (Cal. 2017) ("Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged.").  "An 'act in furtherance' includes, among other things, 'conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'"  *Jordan-Benel*, 859 F.3d at 1188 (quoting Cal. Code Civ. Proc. § 425.16(e)(4)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                          Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

If the defendant makes the prima facie showing, the burden shifts to the plaintiff to "demonstrate a probability of prevailing on the challenged claim." *Id.*; *see also Park*, 217 Cal. Rptr. 3d at 132 ("If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least minimal merit." (internal quotation marks omitted)). The plaintiff must "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). However, the plaintiff bears a relatively low burden at step two. *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) ("In the anti-SLAPP context, 'probability' is a low bar."); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) ("[T]he second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong."). If the plaintiff cannot make this showing, the claim is stricken pursuant to the statute. *Jordan-Benel*, 859 F.3d at 1188-89.

The parties dispute whether the Rule 56 or Rule 12(b)(6) provides the appropriate legal standard. Epting argues that Rule 56 provides the appropriate legal standard because the Motion to Strike challenges the sufficiency of Plaintiff's evidence, discovery has commenced, and Plaintiff's own filings use outside evidence. (MTS at 19, 20, 23; Dkt. 37 at 10-12.) Plaintiff responds that Rule 12(b)(6) provides the appropriate legal standard because the summary judgment standard should be applied after Rule 56's procedural safeguards have been fulfilled—including discovery. (Dkt. 31 at 15-16.)

The Ninth Circuit has held "that challenges to the legal sufficiency of a defamation claim made pursuant California's anti-SLAPP statute must be analyzed under the same standard as Rule 12(b)(6) motions to dismiss, and challenges to factual sufficiency under the same standard as Rule 56 motions for summary judgment." *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022). When an anti-SLAPP motion to strike challenges the factual sufficiency, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018).

The court finds that Rule 12(b)(6) provides the appropriate legal standard because discovery has just commenced and this case is in its early stages. (Dkt. 37-1 (Declaration of William J. Becker) ¶ 26 ("On September 18, 2025, Plaintiff served his first set of discovery,

---

**CIVIL MINUTES – GENERAL**                                              20

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

consisting of requests for production of documents and a notice of deposition.  Defendant's
responses to the document requests are due October 17, 2025, several days before the hearing
on this motion.")); *see Planned Parenthood*, 890 F.3d at 834; *see also, e.g.*, *Silverstein v.
E360Insight, LLC*, 2008 WL 1995217, at *2 (C.D. Cal. May 5, 2008) ("Because the
[anti-SLAPP motion] is made prior to the completion of discovery, the standards governing a
motion to dismiss pursuant to Rule 12(b)(6) apply."); *Gralow v. City of Palos Verdes Ests.*,
2024 WL 3001475, at *5 (C.D. Cal. May 22, 2024) (rejecting factual challenge based on a
declaration because "requiring a presentation of evidence without accompanying discovery
would improperly transform the motion to strike under the anti-SLAPP law into a motion for
summary judgment without providing any of the procedural safeguards that have been firmly
established by the Federal Rules of Civil Procedure").

B.     **Analysis**

Epting moves to strike Plaintiff's Fourth Claim, arguing (1) that Epting engaged in
protected activity by posting on Facebook and (2) that Plaintiff fails to demonstrate a
probability of prevailing on his Fourth Claim.  (MTS at 19-39.)  The court addresses each
argument in turn.

1.     **First Prong: Epting's Protected Activity**

Epting argues that he engaged in protected activity by reposting Plaintiff's words from
Plaintiff's PSA Post.  (MTS 21-23.)  Plaintiff "does not contest that Epting satisfied the first
step of the [a]nti-SLAPP analysis by articulating a protected activity under C.C.P. §425.16(e)."
(Dkt. 31 at 13.)

"'The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether
the [c]omplaint alleges activity protected by section 425.16 and (2) whether the cause or causes
of action alleged arise from those activities.'"  *Gunn v. Drage*, 65 F.4th 1109, 1120-21 (9th Cir.
2023) (citing *Contreras v. Dowling*, 208 Cal. Rptr. 3d 707, 717 (2016)).

The court finds Epting adequately demonstrates that the Fourth Claim "arises from an act
in furtherance of the [his] rights of petition or free speech."  *Jordan-Benel*, 859 F.3d at 1188.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

Here, Plaintiff alleges Epting published the cropped version of Plaintiff's PSA Post about the installation of the MAGA plaque on Facebook.  (Compl. ¶¶ 9, 14-16, 317.)  Plaintiff further alleges the Fourth Claim is based on Epting's Comment and Post.  (*Id.* ¶¶ 315-54.)  The court finds Epting satisfies the first prong of the anti-SLAPP analysis because Epting posted about the installation of the MAGA plaque, a matter of public interest, on Facebook.  *See Gunn*, 65 F.4th at 1109; *see also, e.g.*, *Jackson v. Mayweather*, 217 Cal. Rptr. 3d 234, 245 (2017), *as modified* (Apr. 19, 2017) (finding a post on a Facebook page sufficient to meet the definition of "public forum" under the California anti-SLAPP statute); *Mahoney v. Meta Platforms, Inc.*, 2025 WL 563459, at *5 (N.D. Cal. Feb. 20, 2025) (finding "Meta's decision to post a timely statement on its platform, a place open to the public, is an act that furthers the right to speak").  Because Epting has satisfied the first prong, the burden shifts to Plaintiff to demonstrate a probability of prevailing on the Fourth Claim.  *See Jordan-Benel*, 859 F.3d at 1188.

### 2.    Second Prong: Probability of Prevailing on Plaintiff's Fourth Claim

Epting argues Plaintiff fails to demonstrate probability of prevailing on Plaintiff's false light invasion of privacy claim.  (*See generally* MTS.)  Plaintiff responds that he is asserting a false light defamation claim, not an invasion of privacy claim.  (Dkt. 31 at 17.)  The court agrees with Plaintiff because Plaintiff explicitly asserts a false light defamation claim in the Complaint.  (Compl. ¶¶ 315-54.)

A false light defamation claim is the substantive equivalent of a libel claim and should meet the requirements of a libel claim.  *McCloskey v. Humboldt Cnty. Sheriff's Dep't*, 2023 WL 7597215, at *7 (N.D. Cal. Nov. 14, 2023); *Selleck v. Globe Int'l*, 166 Cal. App. 3d 1123, 1133-34 (1985); *Solano v. Playgirl*, 292 F.3d 1078, 1083 n.2 (9th Cir. 2002).  "Defamation involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage.  Public figures have the burden of proving both that the challenged statement is false, and that defendant acted with actual malice."  *Balla v. Hall*, 59 Cal. App. 5th 652, 675 (2021) (citation modified).

### a.    *Per Se* Defamatory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                              Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

Epting argues that Plaintiff fails to sufficiently allege falsity because there are no allegations Epting saw Plaintiff's PSA Post unaltered or intentionally omitted it. (MTS at 24-27, 38-39.) Epting further argues that he posted what appeared to be a screenshot of Plaintiff's words. (*Id.* at 25-27.) Plaintiff responds that he sufficiently alleges Epting's Post was *per se* defamatory because it created the false impression that Plaintiff promoted violence and Epting's audience had the same impression. (Dkt. 31 at 17-20.)

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "Statements constitute libel per se when 'a listener could understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter.'" *Balla*, 59 Cal. App. 5th at 686 (quoting *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (2007)).

When analyzing allegedly defamatory statements, the court first determines whether the statements are reasonably susceptible to a defamatory interpretation. *See MacLeod v. Trib. Pub. Co.*, 52 Cal. 2d 536, 546 (1959) ("Whether or not the article is reasonably susceptible of this interpretation is a question for the court and, if so, whether or not it was so understood is a question for the jury."); *see also Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 2023 WL 3568077, at *4 (N.D. Cal. Apr. 21, 2023) (similar). "The inquiry is not to determine whether the publication may have an innocent meaning but rather to determine if it reasonably conveys a defamatory meaning." *Id.* at *9 n.14 (citation modified); *Selleck*, 166 Cal. App. 3d at 1131 ("In reviewing the trial court's order sustaining the demurrer, our inquiry is not to determine whether the publication may have an innocent meaning but rather to determine if it reasonably conveys a defamatory meaning.").

The court finds Plaintiff adequately alleges his *per se* defamatory statement because Epting's Comment and Post create the false impression that Plaintiff promoted violence. *See MacLeod*, 52 Cal. 2d at 546. Plaintiff alleges that Epting altered Plaintiff's PSA Post such that it was susceptible to an interpretation that Plaintiff promoted violence. (*See e.g.* Compl. ¶ 15.) More specifically, Plaintiff alleges that Epting posted a cropped version of Plaintiff's PSA Post, without Pride at the Pier's message or video, where Plaintiff states, "Also, PSA, and I can't

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

believe I have to say this: Stop fucking with the library.  That's what the city council is doing.  The library is great, as are the people who work there.  Go fuck with the city council.  Find where they work, and blow *those* places up." (*Id.* ¶ 146.)  Shortly after Epting's Comment, Epting allegedly posted the same screenshot and added a short message stating, "I hope the library renounces this kind of language and behavior." (*Id.* ¶¶ 148-49.)  In addition, Plaintiff alleges that many people have commented on the post, accusing Plaintiff of threatening violence, saying that the police should be contacted, and saying Plaintiff should be fired from his coaching job. (*Id.* ¶¶ 157-59, 332.)  Plaintiff further alleges that a police detective contacted him, inquiring about Plaintiff's PSA Post that suggested violence. (*Id.* ¶ 160.)  The court finds Epting's Comment and Post are reasonably susceptible to a defamatory interpretation of promoting violence because they create the impression Plaintiff told people to commit violence where the city council members work, and allegedly, people have interpreted the statements in such a way. *See MacLeod*, 52 Cal. 2d at 546; *see also Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008) ("Statements which falsely impute the commission of a crime are libelous on their face.").  Accordingly, the Motion to Strike is **DENIED** as to Epting's argument regarding sufficiency of Plaintiff's allegations regarding a *per se* defamatory statement.

**b.    Falsity**

Epting argues that Plaintiff fails to sufficiently allege falsity. (MTS at 24-27.)  Plaintiff responds that falsity was adequately alleged through allegations of Epting's Comment and Post being different from Plaintiff's PSA Post which materially altered the meaning of Plaintiff's PSA Post. (Dkt. 31 at 20-24)

When evaluating falsity, courts "apply a totality of the circumstances test to determine whether a statement is fact or opinion, and whether a statement declares or implies a provably false factual assertion; that is, courts look to the words of the statement itself and the context in which the statement was made." *Balla*, 59 Cal. App. 5th at 678.

The court finds that Plaintiff adequately alleges falsity. *See id.*  Plaintiff alleges that Epting's Post and Plaintiff's PSA Post are different because Epting's Post does not contain Pride at the Pier's message or video from Plaintiff's PSA Post. (Compl. ¶¶ 134-35, 152-54.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                              Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

Plaintiff further alleges that, by excluding the messaged and video, Epting "changed [Plaintiff's PSA [P]ost from one that was unmistakably about non-violent 'review bombing' and 'blowing up' phone lines to one that was more susceptible to an interpretation that [Plaintiff] had literally promoted violence against the City Council." (*Id.* ¶ 325.) Similar to the court's analysis above, (*see* Section II.B.2.a), the court finds Plaintiff adequately alleges Epting falsely implied Plaintiff promoted violence because Epting excluded contextual information from Plaintiff's PSA Post, making it appear as if Plaintiff told people to bomb places where the city council members work. *See Balla*, 59 Cal. App. 5th at 678; *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 515 (1991) ("[A]n exact quotation out of context can distort meaning, although the speaker did use each reported word."); *see also, e.g.*, *Price v. Stossel*, 620 F.3d 992, 1000-03 (9th Cir. 2010) (holding that district court erred by dismissing plaintiff's defamation claim for lack of falsity where defendant took a video quotation of plaintiff's statement out of context, changing the meaning of plaintiff's words—even though the plaintiff's exact words were reproduced). Accordingly, the Motion to Strike is **DENIED** as to Epting's argument regarding falsity.

            **c.    Actual Malice**

Epting argues that Plaintiff fails to sufficiently allege actual malice because Epting merely reposted Plaintiff's words and Plaintiff does not provide evidence of actual malice. (MTS at 30-33.) Plaintiff responds actual malice was sufficiently alleged because Epting allegedly knew his post was different from Plaintiff's PSA Post, or acted with reckless disregard of whether they were different, and that Epting had ill-will towards Plaintiff. (Dkt. 31 at 24-28.)

"To prove actual malice, a plaintiff must show that statements were made with knowledge that they were false or with reckless disregard of whether they were false or not." *Balla*, 59 Cal. App. 5th at 682-83 (citing *Reader's Dig. Assn. v. Superior Ct.*, 37 Cal. 3d 244, 256-57 (1984)) (citation modified). "Actual malice can be proved by circumstantial evidence. Considerations such as anger and hostility toward the plaintiff, reliance upon sources known to be unreliable citations or known to be biased against the plaintiff, and failure to investigate may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication." *Id.* at 683 (citation modified).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

The court finds that Plaintiff adequately alleges actual malice. Plaintiff alleges that Epting commented on a post about Plaintiff's protest, referring to Plaintiff as threatening and lucky to be alive, (Compl. ¶ 120), and mocked the idea of Plaintiff being a candidate for City Council, (*id.* ¶ 121). Plaintiff further alleges Epting made a post reflecting that he was monitoring Plaintiff and seeking to discredit him. (*Id.* ¶¶ 138-45.) And finally, Plaintiff alleges that Epting "never thought that [Plaintiff] literally was threatening to blow up buildings." (*Id.* ¶¶ 191, 203, 335-36, 344). The court finds that Plaintiff adequately alleges actual malice because Epting allegedly harbors anger and hostility towards Plaintiff and knowingly or recklessly created the false impression that Plaintiff was promoting violence. *Balla*, 59 Cal. App. 5th at 683. Moreover, the court agrees with Plaintiff that the facts concerning knowledge of falsity would benefit from discovery because they are in Epting's control. (*See* Dkt. 31 at 27.) Accordingly, the Motion to Strike is **DENIED** as to Epting's argument regarding actual malice.

### d.    Causation

Epting argues that Plaintiff fails to sufficiently allege causation because Plaintiff was terminated due to Plaintiff's own words. (MTS at 33-36.) Plaintiff responds that he does not need to allege damages or proof of injury because actual malice was adequately alleged. (Dkt. 32 at 28-29.) The court agrees with Plaintiff. Here, Plaintiff brings a claim for per se defamatory statements seeking presumed damages, and the court finds Plaintiff adequately alleges actual malice, (*see* Section II.B.2.c). "[T]he only limitation placed on recovery of presumed damages was that the plaintiff must prove that the defamatory statements were published with knowledge of falsity or reckless disregard for the truth." *Weller v. Am. Broad. Companies, Inc.*, 232 Cal. App. 3d 991, 1015 (1991); *Ostella v. Taitz*, 2018 WL 6190598, at *4 (C.D. Cal. Oct. 5, 2018), *aff'd,* 807 F. App'x 666 (9th Cir. 2020) ("If a plaintiff in a defamation case involving a matter of public concern seeks presumed damages because the statements are libelous per se, as Ostella does here, the plaintiff must prove actual malice, i.e., that defendant knew the complained-of speech was false or acted with reckless disregard of whether it was false."). Because Plaintiff adequately alleges actual malice, the court finds no further allegations necessary at this stage of the proceedings. *Weller*, 232 Cal. App. 3d at 1015. Accordingly, the Motion to Strike is **DENIED** as to Epting's argument regarding causation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

       **e.**      **California Civil Code § 48(a)**

Epting argues that Plaintiff's damages claim is barred by California Civil Code § 48(a). (MTS at 36-38.)  Plaintiff responds that California Civil Code § 48(a) is inapplicable here because it only applies to publications in a daily or weekly news publication.  (Dkt. 31 at 29.) California Civil Code § 48(a) applies in "any action for damages for the publication of a libel in a daily or weekly news publication, or of a slander by radio broadcast."  Cal. Civ. Code § 48(a). The court finds that California Civil Code § 48(a) is inapplicable to Epting's Post because Plaintiff does not allege that Epting's Post was part of a daily or weekly news publication.  *See id.*; *see also, e.g.*, *Hicks v. Bradford*, 2022 WL 20689541, at *7 (C.D. Cal. Dec. 13, 2022) (finding that California Civil Code § 48(a) does not provide a basis for striking claims based on a Facebook post via anti-SLAPP motion).  Accordingly, the Motion to Strike is **DENIED** as to Epting's argument regarding California Civil Code § 48(a).

      **C.**      **Summary**

In summary, the court concludes that Plaintiff's Fourth Claim withstands the Motion to Strike.  Although the court finds Epting adequately demonstrates he engaged in protected activity, the court finds that Plaintiff carries his low burden of demonstrating a probability of prevailing on the Fourth Claim by adequately alleging the elements for false light defamation. Accordingly, the Motion to Strike is **DENIED.**

**III.**    **Disposition**

For the reasons stated above, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and the Motion to Strike is **DENIED**.  The court **GRANTS** the Motion to Dismiss as to (1) Plaintiff's claims against HBUHSD and HBUHSD Individual Defendants, in their official capacities, (2) the Second Claim to the extent it is based on an as-applied overbreadth theory, and (3) the Third Claim to the extent it relies on a property interest.  The court **DENIES** the Motion to Dismiss in all other respects.  Plaintiff's claims against HBUHSD and HBUHSD Individual Defendants, in their official capacities, and the Second Claim to the extent it is based on an as-applied overbreadth theory are **DISMISSED WITHOUT LEAVE**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01648-FWS-JDE                    Date: November 4, 2025
Title: Christopher Kluwe v. Huntington Beach Union High School District *et al.*

**TO AMEND**.  Defendants shall file an answer to the Complaint on or before December 1,
2025.